# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**FILED**

JUN 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Steven A. Hewitt,               :
13270 Main Avenue,              :
P.O. Box 401,                   :
Cobb Island, MD  20625,         :
301-259-2032,                   :
**COMPLAINANT**                 :
                                :
    VS.     :    Case: 1:07-cv-01097
                                :    Assigned To : Roberts, Richard W.
                                :    Assign. Date : 6/19/2007
                                :    Description: Employ. Discrim.
Condoleezza Rice,               :
    Secretary,          :
Department of State,            :
2201 C Street N.W.              :
Washington, DC 20520            :
**DEFENDANT**                   :

## COMPLAINT OF UNLAWFUL EMPLOYMENT DISCRIMINATION FROM AN ON THE JOB SUSTAINED INJURY AND BEING FIRED DUE TO MY DISABILITY

**Comes** now, the Complainant, Steven A. Hewitt, presently unrepresented *Pro-Se*, with a Motion attached hereto, praying for a Court Appointed Attorney as, Under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§2000e *et seq*,; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§791, 794 (c). to be appointed to the Complainant due to financial hardship caused by the firing of Mr. Hewitt, and being forced to file for Disability Retirement because of the on the job sustained injury.

**RECEIVED**

Page 1

MAY 2 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

*3*

This injury was sustained in a severe fall causing Ruptured Disc and extensive Sciatic Nerve Damage causing the loss of control in Mr. Hewitt's legs.

Please find an additional attachment of a Motion to Accept the P.O. Box 401 number, due to the fact that the Complainant lives on an island where there is no mail delivery. Please find also an attached letter to this Motion from the US Postal Service to confirm my Motion to Accept the use of a P.O. Box number signed by the Post Master, Sandra L. Bailey. The Complainant also prays for a Motion to Waive the Payment of Fees, Cost, or Other Securities due to reasons of financial hardship, having a (16) year old son in my sole custody to support, feed and clothe. We live on a $1,376.15 (exhibit #1) a month Disability pension out of which I pay $400.00 a month for a single room that my son and I have to share. His mother who lives in Florida has not contributed to his support since she left at his age of three and a half years old and because of her failing health and has now been Hospitalized with complications due to her having been diagnosed with Hepatitis C.

The Complainant as named above does hereby solemnly hold the following to be the whole truth with evidence to support everything stated hereinafter. That in Fact, the evidence will show, the Complainant was fired from his employment with the Department of State for Reasons stated in the Notification of Personnel Action, (Prayerfully to be presented by counsel), on Standard Form 50-B line 4, Effective Date 12-31-91 and on line 5-B Nature of Action (TERMINATION- INVOLUNTARY).

Line 7. From: Position Title and number, —00502-00 Motor Vehicle Operator. Under line 45. Remarks: Reason (S) for Termination: PHYSICAL INABILITY TO PERFORM THE DUTIES OF POSITION. (exhibit #2)

The Complainant was hired in 1975 as an Elevator Mechanic WG-8 with the General Services Administration, surpassing the 3 year trainee program due to the high score achieved on the testing. With in (10) months, the Complainant was recommended for his grade 11 which was turned down because the agency felt it would be unfair to the trainees and that Mr. Hewitt would have to wait until the 3 year trainee program was complete and then the complainant would receive his grade promotion. In 1983 the Complainant suffered a serious fall from an Elevator Penthouse down a steel toed stairwell and was pinned at the bottom of the stairway until a rescue squad could free the complainant and transport to a hospital. The Complaint suffered Ruptured Disc and damage to the Sciatic nerves which causes the loss of feeling and use of his legs. After much physical therapy the Complainant returned to his job with the General Services Administration under normal (8) hour a day working conditions.

Then on 7-21-85 the Complainant was Reassigned under a (RIF) Reduction in Force and was reassigned to the Department of State and was approved for a Top Secret Security Clearance (exhibit #3). On the date of 10/16/86 Mr. Hewitt suffered a recurrence of his injury while bending over at his locker to retrieve his tool bag weighing approximately 40 -50 pounds.

Mr. Hewitt felt pain shoot down through his legs causing him to collapse and fall to the ground in excruciating pain at 7:30 AM (exhibit #4). Mr. Hewitt was transported to the Hospital and again received physical therapy. During this time of leave of absence Mr. Hewitt had to be medicated for the severe pain and the muscle spasms that was constant day and night. After a period of time Mr. Hewitt wanted to return to work but under his doctors orders the conditions were that a change of the lifting requirements of his job requirements must be reduced from the required 75 pounds down to 50 pounds and Mr, Hewitt could return to work. At that time no other restrictions were required.

Somehow during his leave of absence, Mr. Hewitt's file was misplaced by Kathy Parrot, his representing official, and after many calls to her office he was told that the agency was working on his job restrictions and his return to work at the Department of State (hereafter referred to as (DOS)) as an Elevator Mechanic. Then Mr. Hewitt was called by an official at the DOS. He was told that an departmental error had occurred in the return of his employment with the DOS He was told that a meeting was needed to be scheduled for an appointment to discuss Mr. Hewitt's Job Status. When Mr. Hewitt (also referred to as, I, he, me or my) went in for the meeting, Mr. Hewitt was advised that due to an oversight by the Agency, he had been placed on the long term leave of absence role of the DOS. Since I had been out for such a long term, my Job had since been abolished. It is believed that the gentlemen's name was Mr. J. McGuire. Mr. Hewitt was told that he would not be able to return to his job as an Elevator Mechanic since his job was abolished.          Page 4

Mr. Hewitts job was not abolished as is seen in (Exhibit #5) dated: 01/19/90. Under the Federal Laws Prohibiting Job Discrimination under the Federal Equal Employment Opportunity Laws (hereafter referred to as the (EEO)) under Title VII, the ADA, and the ADEA of the Civil Rights Act of 1964 it is illegal to Discriminate in any aspect of employment, including:

- hiring and firing;
- compensation, assignment, classification of employees;
- transfer, promotion, layoff, or recall
- job advertisements;
- recruitment;
- testing;
- use of company facilities
- training and apprenticeship programs;
- fringe benefits;
- pay, retirement plans, and disability leave; or
- other terms and conditions of employment.

It was told to Mr. Hewitt that he would have to be tested by a qualified psychologist to see what Mr. Hewitt would be best at in a new position with the DOS. Mr. Hewitt did as was required of him and there were 3 listed positions that Mr. Hewitt would be qualified to which Mr. Hewitt would be interested in. The first was, Electronics and Computer Repair, the second was Horticulture, the third was Carpentry. I was told that I could choose which field I wanted to pursue with the DOS. I chose Electronics and Computer repair.

Page 5

Mr. Hewitt was approved by the agency to attend an Electronics and Computer College of my choice and the agency would pay for my retraining in that field, (exhibit #6). I was told by the agency that I had to maintain a good attendance record and good grades in order to be re-employed at the position of an Electronics Technician upon graduation. I attended TESST Computer College, an 18 month program and graduated with an above 95% attendance record and a 3.65 Grade Point Average with a high referral rating letter by the accredited College (exhibit #7). Upon my Graduation I called the agency and advised them that I had completed my training and was ready to return to work as a Electronics Computer Technicians job as was promised by the DOS.

The very first job that was offered to me was a Janitorial Inspectors job and I turned that job offer down and stated that it had nothing to do with my training. The second job offered was a Sound Recorders job, making copies of tapes of speech's to send abroad the many Nations that the DOS had relations with. I was told that I had to attend that interview the very next day as the closing date for that position closed the day after. I went on that interview and the gentlemen showed me around the place where I would be working, and again it did not have anything to do with what I was trained for. In fact the gentlemen showed me a small room where there was some test equipment, and there where 3 stacks of tape decks from the floor to ceiling that were broken. I was told that they did not do much repairing of any of the equipment.

Page 6

I was told that when things broke down, the agency would just buy new equipment to replace the defective equipment. Again, this was not what I had worked so hard to achieve and it was a downgrade to a grade 10 when I had been a Grade 11 step 5 nearly (17) years and this job had no possibility for promotional advancement or grade retention or grade increase.

The third job that was offered to me was a Motor Vehicle Operators Job. Driving a shuttle bus or Van to the various DOS Departments throughout Virginia. I declined that job because it had absolutely nothing to do with my training. I went to my doctor and he stated that there was no way that a driving job would be acceptable due to my condition and the medications I was taking(exhibit #8). A letter was sent back to my doctor by the Rehabilitation Perspectives on June 17,1991 from my case worker Debbie Moreau, stating that the job could be modified to accommodate the client's current disability (exhibit #9). Upon learning of my decline of that position by the DOS, I was called into the Agency for a meeting. I believe it was Mr. McGuire that I met with and he was extremely upset with me. He threatened me by stating that if I did not take this job offer that I would be downgraded to the grade of that position which was a WG-6 with the OWCP and that would be the pay I would receive through my Workman Compensation. He told me that, I needed to get with the program and take this job or else I would be down graded with OWCP to a Grade 6. I told him that I had to re-present this to my doctor to which he stated, that I had better get back with him promptly.

I went to my Doctor and told him what was said to me. He stated that they cannot do that to me and that driving would not be a safe job for my condition and especially with the Narcotic pain killers I was presently taking. My Doctor stated that he had filed a Work Restriction Evaluation on 5/12/89 and outlined what I would be able to perform and the amount of days/hours and that sitting for long periods of time was absolutely unacceptable(exhibit #10). My doctor inquired as to what kind of distances I would have to drive to which I had no answer. I told him I do not want to loose the possibility of my returning to work, please let me try because they threatened me. So my doctor signed off on my return to work with great reservations because I was being forced to do so. My doctor told me that I should contact someone about this, because it did not seem fair to do this to a person with the Severe Disabilities that I had. I called the EEO before I took the job and talked with a Dorothy Blacker. I explained what the Department was doing to me by forcing me to take this job, that I had been trained to be put in a Electronic's and Computer Repair job. She told me that I should contact my Congressman and file a grievance. I went in to see my Congressman Jim Moran, but was not able to talk with him directly, so I explained what was happening to a Mr. Tim Aiken, I told him that the DOS was forcing me to take this job or be downgraded to a Grade 6 and that would be my pay. As I explained everything to him as he took notes, then after our meeting, as I was walking towards the door, Mr. Aiken stated to me that he sure hoped this did not backfire on me.          Page 8

I immediately stopped and said, what do you mean by that statement? He told me, "Mr. Hewitt, the State Department is a very powerful agency and they don't like it when Congressmen get involved with their business." I told Mr. Aiken, I was not trying to start trouble I just wanted to be placed in the job that I was promised and would be more acceptable with my condition." He replied, "Mr. Hewitt we will do our best to see what we can do for you." That was on August 23, 1991. (exhibit #11)

I returned to the Department of State for work in the Motor Vehicle Operators position on August 27, 1991(exhibit #12). As it turned out I was put in a shuttle van driving position mostly up and down the Route 95 corridor, sometimes I would be required to drive the long distance to Hay Market Virginia to a Top Secret Site which was very exasperating to my condition for (8) hours a day. The whole time the Department knew I was under doctors prescribed orders taking the Narcotic Pain killers 10/650 Percodan and 10mg's of Valium as a muscle relaxer. Evidence (exhibit #8) of this dated in a letter sent out on September 19,1988. This was extremely dangerous, not just for myself but for the many passengers in the vehicle that I drove. The evidence will show that this was totally against my doctors recommendations as was outlined in my Doctors Work Restriction Evaluation dated 5/12/89 (exhibit #10). I was down graded to a WG-6, which was 5 grades lower than my previous position as an Elevator Mechanic WG-11 step 5.

Page 9

This being verified in evidence dated September 3,1991(exhibit #13). This also being 2 grades lower than what I came into the Federal Government in 1975. Then on September 16,1991, I had to call my supervisor to advise him that I had no feeling in my left leg and that I was unable to walk and I would not able to come into work that day, and that I would make an appointment to see my doctor and get back with him as soon as possible.

Then I received a letter from Congressmen Moran's office on October 23, 1991. They informed me that there was nothing that they could do to assist me in my getting placed in a job for which I was trained. Then I received a letter from Joseph McGuire dated October 24, 1991,(exhibit #14) stating, "The Bureau of Administration requests the removal of Mr. Steven A. Hewitt from our roles, for non-disciplinary reasons." In this letter Mr. McGuire stated that I was unable to return to my previous position as an Elevator Mechanic due to my injury which was totally untrue. It also states that I reluctantly accepted the Motor Vehicle Operator position. I was threatened into accepting that job, it was not an offer, it was a demand. I could not return to my job of many years as an Elevator Mechanic because I was told that my job had been abolished. Mr. Tim Aiken of Congressmen's Moran's office, was indeed correct in the statement that he made to me upon my leaving his office. On November 18,1991 a letter from the DOS from Mr. George Haas Director of Employee Relations (exhibit # 15).

He informed me that the DOS proposed to remove me from the roles of my employment with the Department of State as a Motor Vehicle Operator WG-6 for Non-Disciplinary Reasons. Reason: "Your physical inability to perform the duties of your positions." This letter goes on to say that I sustained a non-surgical back injury while employed as an elevator mechanic in the Bureau of Administration. This also is not accurate because the original accident occurred in 1983 and this was a recurrence of that accident as is documented by the evidence (exhibit #16).

On page (2) of this notification it states, "You will be allowed (10) calender days from the date on which you receive this notice to submit your written and/or personal answer." I was also informed that I could be represented by an attorney that did not create a conflict-of-interest or conflict-of-position as is prohibited by Federal Regulations. I attended many consultations with attorney's to represent me every day for a week but to no avail. In 1991 it was nearly impossible to get an attorney who would go up against the government.

Giving me only (10) days was a violation of my Civil Rights under the Code of Federal Regulations Pursuant to 29 C.F.R. § 1614.105 which states that I should have been given (45) days upon this agencies decision to remove me from my employment. I was never informed by anyone of my complete and total legal rights to appeal the decision to remove me from my employment. Then I received a letter dated December 2, 1991 from a Mr. Kenneth Hunter, Deputy Assistant Secretary for Personnel.                     Page 11

He informed me that he reviewed the available evidence and found that Mr. Haas recommendation to remove me was supported by the evidence and that it was his decision for me to be removed would be effective Tuesday, December 31, 1991. He then informed me that I could appeal to the Merit Systems Protection Board no later than (20) calender days after the effective date of the removal action (exhibit #17). Again I started to try an obtain counsel for representation and sought out as many attorneys as I could with many, many consultations to which I could find no one to help me with my dilemma. The very last attorney I consulted with gave me the straight story as to why I could not find an attorney, stating that it would be very costly and going up against the government, it could take as much as (5) years to get a resolution and no attorney wants to wait that amount of time to get paid.

I contacted the MSPB on January 21, 1992 to inquire about how to file a grievance, because  Mr. Haas was not returning my calls and the receptionist explained to me the difference between calender days and business days. She asked me what the date on the letter of termination was and I told her that it was December 31,1991. She went on to say that my deadline to file with the MSPB had passed by one day. She never told me that I had the right to contact the EEO Civil Rights Division. Under the terms set forth under 5 CFR part 536, subpart D, I was never informed of my right to appeal for my Grade Retention as well.

Page 12

Under the rules of Reasonable Offer, 5 CFR 536.104, the Job being offered to me should be equal to or Higher than the retained grade. Mr. Hewitt was downgraded from a WG-11-5 to a grade WG-6.

§1614.102 Agency program rules. (a) Each agency shall maintain a continuing affirmative program to promote equal opportunity and to identify and eliminate discriminatory practices and policies. In support of this program, the agency shall:

- The following are from the Code of Federal Regulations.

(8) Make reasonable accommodation to the known physical or mental limitations of qualified applicants and employees with handicaps unless the accommodation would impose an undue hardship on the operation of the agency's program;

- This option was not afforded to me as an Elevator Mechanic. At the time the only restriction were to lower my lifting restrictions from 75 pounds to 50 pounds.

(12) Provide the maximum feasible opportunity to employees to enhance their skills through on-the-job training, work-study programs and other training measures so that they may perform at their highest potential and advance in accordance with their abilities;

- I was retrained to be a Computer and Electronics Technician graduating with a 3.65 GPA, I was first offered a Janitorial Inspectors job. Then I was offered a Sound Recorder job which again was not in accordance with my training that the (DOS) approved and paid for.    Page 13

• Neither of these jobs were at the same grade level of a WG-11 step 5 nor did they have any potential of further advancement with the abilities that I had accomplished in my many years in my trade or in my Training in Computer and Electronics Schooling.

**(b) In order to implement its program, each agency shall:**

**(3) Designate a Director of Equal Employment Opportunity (EEO Director), EEO Officer(s), and such Special Emphasis Program Managers (e.g., People With Disabilities Program, Federal Women's Program and Hispanic Employment Program), clerical and administrative support as may be necessary to carry out the functions described in this part in all organizational units of the agency and at all agency installations. The EEO Director shall be under the immediate supervision of the agency head;**

**(5) Ensure that full cooperation is provided by all agency employees to EEO Counselors and agency EEO personnel in the processing and resolution of pre-complaint matters and complaints within an agency and that full cooperation is provided to the Commission in the course of appeals, including granting the Commission routine access to personnel records of the agency when required in connection with an investigation; and**

**(c) Under each agency program, the EEO Director shall be responsible for:**

Page 14

**(4) Providing for counseling of aggrieved individuals and for the receipt and processing of individual and class complaints of discrimination; and**

**(5) Assuring that individual complaints are fairly and thoroughly investigated and that final decisions are issued in a timely manner in accordance with this part.**

• Under these Rules; when I contacted Mrs. Dorothy Blacker in June of 1991, Mrs. Blacker should have assigned a EEO counselor to me. This was not done. I was calling the Civil Rights Division and notifying them (Mrs. Dorothy Blacker) that my rights to be placed in a position in the field that I was trained in, as well as equal pay and grade level, that was not being given to me. I was not assigned an EEO officer, nor was I advised to file a grievance with her office of Civil Rights nor the time limits by which I was to file a Grievance, was told to me. I did exactly what Mrs. Blacker told me to do, and that was to contact my Congressman and file a grievance with him.

**§1614.105 Pre-complaint processing.**

**(a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.**

• Mrs. Blacker did just the opposite by telling me to contact my Congressman, instead of assigning me a counselor from her office which the Federal Code of Regulations clearly states.

**(1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.**

- I was never informed of this time limit by anyone in the (DOS) or anyone that I talked with until I contacted the EEOC and informed them that I believed that I had been discriminated against due to my Job related injury. The people at the EEOC told me that I was supposed to be contacting the Employing Agency first. I told them that I did contact the Agency back when I felt I was being Discriminated against, for not putting me in a job that the DOS trained me for and spoke with a Dorothy Blacker. I was then asked, did the DOS assign me a counselor to look into the allegation of Discrimination when I called, to which I answered no, they did not assign me a counselor. Then she told me that I should be calling the EEO Civil Rights Division in that Agency and file a report within the agency before contacting the EEOC, that a counselor would then be assigned to me and an investigation would be started to see if indeed my Civil Rights were violated and I should contact them immediately. I contacted the EEO Civil Rights office the very same day 10/4/06 and told my story to the gentlemen that answered the call of how I was sent for training by the DOS and was never offered a job that had anything to do with my training, then after I contacted my Congressman as I was told by the Civil Rights officer Mrs. Dorothy Blacker to file a grievance with him, I was then later fired for doing that.

• I then was told by the gentlemen that I needed to speak with a Ms. Jacqueline Canton. He then transferred me to her and I got her voice mail and I explained that I needed to talk with her about the incident. She never returned my call, so I made another call to the EEO office on 10/10/06 and spoke with a Ms. Gloria Cunningham and was advised that I had an unresolved case and that I had been assigned a case worker, Mrs. Sheila Clemons, to which I was transferred to and Mrs. Clemons told me that she had just gotten my case that same day and that she would have to get back with me to set up an appointment date. Mrs. Clemons called me back on or about 10/17/06 after reviewing my file and she stated to me that we needed to meet before she left for a trip out of the United States which was on or about 11/24/06. I told Mrs. Clemons that we could meet on 10/19/06. It was at this meeting that I was given some paper work concerning Alternative Dispute Resolution with very little information about this process. I was told to look this over as a possibility, but due to the nature of the time between the incident and the time of this meeting she was not sure this would be an alternative or not. She also gave me a DOS Office of Civil Rights (S/OCR) packet that had the date 10/19/06 and a line marked Subject: Notice of Rights and Responsibilities, that I had to place a check mark that I did not choose to remain anonymous during counseling. She told me that if I chose to remain anonymous that it would tie her hands in that she would be limited to what she could do for me to resolve this matter.

Page 17

So I chose to <u>Not</u> to remain anonymous. It was my understanding that this meeting with Mrs. Clemons was the Alternative Dispute Resolution.

**(2) The agency or the Commission shall extend the 45-day time limit in paragraph:**

**(a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.**

- As the evidence shows that I was given only 20 days to appeal my removal of my employment with the DOS. I was never informed of having 45 days to appeal my Removal. It is my contention that I am within my time limits, being that I was advised of my timely filing requirements at the meeting with Mrs. Clemons which was the first time I ever heard the fact of a 45 day timely response was allowed. I have met all the timely requirements thus far with my complaint of Discrimination.

- (1) My first contact with the Department of State was in June of 1991 with Mrs. Dorothy Blacker, but this was for placing me in a position unsuitable, and was not inline with what was promised to me upon the DOS approval of my training.              Page 18

• (2) It was at a lower Grade and pay schedule and had nothing to do with my being fired. I had not been hired yet.

**(b) At the initial counseling session, Counselors must advise individuals in writing of their rights and responsibilities, including the right to request a hearing after an investigation by the agency, election rights pursuant to 1614.301 and 1614.302, the right to file a notice of intent to sue pursuant to 1614.201(a) and a lawsuit under the ADEA instead of an administrative complaint of age discrimination under this part, the duty to mitigate damages, administrative and court time frames, and that only the matter(s) raised in pre-complaint counseling (or issues like or related to issues raised in pre-complaint counseling) may be alleged in a subsequent complaint filed with the agency. Counselors must advise individuals of their duty to keep the agency and Commission informed of their current address and to serve copies of appeal papers on the agency. The notice required by paragraphs (d) or (e) of this section shall include a notice of the right to file a class complaint. If the aggrieved person informs the Counselor that he or she wishes to file a class complaint, the Counselor shall explain the class complaint procedures and the responsibilities of a class agent.**

• Under this rule I was not given an opportunity for a hearing after the investigation was completed. My case was simply Dismissed without any type of investigation done.

•       The report goes on to state that I contacted the Office of Special Counsel, Department of Justice, President's Committee on Employment of People with Disabilities, and the Equal Opportunity Commission all of which was done on October 4, 2006 as the evidence will show in (exhibit #18).

**(d) Unless the aggrieved person agrees to a longer counseling period under paragraph (e) of this section, or the agency has an established dispute resolution procedure under paragraph (f) of this section, the Counselor shall conduct the final interview with the aggrieved person within 30 days of the date the aggrieved person brought the matter to the Counselor's attention. If the matter has not been resolved, the aggrieved person shall be informed in writing by the Counselor, not later than the thirtieth day after contacting the Counselor, of the right to file a discrimination complaint. The notice shall inform the complainant of the right to file a discrimination complaint within 15 days of receipt of the notice, of the appropriate official with whom to file a complaint and of the complainant's duty to assure that the agency is informed immediately if the complainant retains counsel or a representative.**

•       All of these requirements were met and the Aggrieved Notified the DOS of his intent to file further notice of appeal to the EEOC with a Certificate of Service notifying the DOS of such intentions.

Page 20

§1614.106 Individual complaints.

(a) A complaint must be filed with the agency that allegedly discriminated against the complainant. (b) A complaint must be filed within 15 days of receipt of the notice required by 1614.105 (d), (e) or (f).

•    Here again this requirement of the Complainant was met as the evidence will show.

(d) The agency shall acknowledge receipt of a complaint in writing and inform the complainant of the date on which the complaint was filed. Such acknowledgment shall also advise the complainant that:

(1) the complainant has the right to appeal the final decision or dismissal of all or a portion of a complaint; and

(2) The agency is required to conduct a complete and fair investigation of the complaint within 180 days of the filing of the complaint unless the parties agree in writing to extend the period.

§1614.109 Hearings.

(a) When a complainant requests a hearing, the Commission shall appoint an administrative judge to conduct a hearing in accordance with this section. Upon appointment, the administrative judge shall assume full responsibility for the adjudication of the complaint, including overseeing the development of the record. Any hearing will be conducted by an administrative judge or hearing examiner with appropriate security clearances.

• The Complainant requested that a hearing be set before the EEOC and an Administrative judge so that the Mr. Hewitt could be heard on the merits of his case and that at no time was a counselor appointed unto him after he contacted Mrs. Dorothy Blacker of the DOS and was advised by her to contact my Congressman and to file a grievance with his office. The EEOC failed to give me my expressed Right to a Hearing before a Judge as an appropriate factual record which is one that allows a reasonable fact finder to draw conclusions as to whether discrimination occurred pursuant to §1614.108.

§1614.203 Rehabilitation Act.

(a) Definitions -- (1) Individual with handicap(s) is defined for this section as one who:

(I) Has a physical or mental impairment which substantially limits one or more of such person's major life activities;

(ii) Has a record of such an impairment; or

(iii) Is regarded as having such an impairment.

(2) Physical or mental impairment means:

(I) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: Neurological, musculoskeletal, special sense organs, cardiovascular, reproductive, digestive, respiratory, genitourinary, hemic and lymphatic, skin, and endocrine; or

- The evidence will show that the Complainant has (4) Herniated Discs and Damaged Sciatic nerves which causes the lose of the use in his legs due to numbness and severe Lower Lumbar pain associated with his Disc Degeneration Decease caused by the fall with doctor records to show such condition. And such documentation will further document by my doctor.

**(3) Major life activities means functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.**

**(4) Has a record of such an impairment means has a history of, or has been classified (or miss classified) as having, a mental or physical impairment that substantially limits one or more major life activities.**

- The Complainant has all documentation of the history of medical treatments from the beginning of his original accident in 1983. All medical history is current to date and shows that the condition of the Complainant has increasingly worsened through the years.

**(6) Qualified individual with handicaps means with respect to employment, an individual with handicaps who, with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others and who, depending upon the type of appointing authority being used:**

Page 23

•    The placement that the DOS ordered me to accept was extremely dangerous to myself and all those I transported in the vehicle I was assigned to drive. Reasonable accommodation could have been much better achieved by placing me back in my job as an Elevator Mechanic and would have saved the DOS a lot of money for the wasted training of sending me to Computer Electronics training.

**(b) The Federal Government shall become a model employer of individuals with handicaps. Agencies shall give full consideration to the hiring, placement, and advancement of qualified individuals with mental and physical handicaps. An agency shall not discriminate against a qualified individual with physical or mental handicaps.**

•    As the evidence will show the Federal Government failed miserably as being a model employer of individuals with handicaps or disabilities. Especially an individual whom had many years of service in the Federal Government and then was fired because of his disability, even after being retrained at the Governments expense with a 95% attendance and a 3.65 GPA.

**(2) Reasonable accommodation may include, but shall not be limited to:**

**(ii) Job restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices, appropriate adjustment or modification of examinations, the provision of readers and interpreters, and other similar actions.**

Page 24

- Mr. Hewitt should have been placed back in his life long employment as an Elevator Mechanic, but instead was told his job was abolished and he could not return to his job. The evidence shows that my job was not abolished.

**Sec. 1630.4 Discrimination prohibited. It is unlawful for a covered entity to discriminate on the basis of disability against a qualified individual with a disability in regard to:**

**(a) Recruitment, advertising, and job application procedures;**

**(b) Hiring, upgrading, promotion, award of tenure, demotion, transfer, layoff, termination, right of return from layoff, and rehiring;**

**(c) Rates of pay or any other form of compensation and changes in compensation;**

- As the evidence will show Mr. Hewitt was downgraded to a WG-6 from his position of a WG-11 step 5. He was Terminated for Non-Disciplinary reasons as Stated: <u>Your Physical inability to perform the duties of your position.</u>

**(d) Job assignments, job classifications, organizational structures, position descriptions, lines of progression, and seniority lists;**

**(e) Leaves of absence, sick leave, or any other leave;**

- Mr. Hewitt was reassigned to a lower paying job that was a demotion in classification, position description, seniority lists as well as when he was paid for his remaining leave he was paid under a WG-6 scale.

Page 25

•    So in reality Mr. Hewitt made less than the wage scale that he was hired at after almost 17 years of Service in the Federal government since March of 1975. On March 19,1992. I was ordered to provide documentation as to why I stopped working as a Motor Vehicle Operator, I complied and my doctor sent notification of the reasons, that it was at my doctors orders after a review of my duties(exhibit #19).

•    I was forced to retire due to the severity of my disc-degeneration decease. Things have progressively gotten much worse through the years. All documentation shall be provided to the courts to show my condition based on a complete medical history report. As well as the reason why I was fired and how the Department of State violated my Civil Rights in many, many areas of the Code of Federal Regulations by not correctly informing me when I called the DOS and spoke with Dorothy Blacker of my Rights to file a Complaint of Discrimination with the Departments EEO. This was before I was hired in the Motor Operators Position. I was not given the opportunity to be fully represented by an EEO officer and was never told of the Code of Federal Operations.

•    I was denied my right to file because of the negligence on the part of the DOS by not informing me of my time limits and I did not know of this until my meeting with Mrs. Clemons on 10/19/06. Further more, it is documented that the DOS when I tried to retire, by losing my file again, which is dated 11/21/91, when my Termination was made final and under Part H-Remarks it is noted, SF-2810 Processed late due to administration oversight(exhibit #20).

Page 26

• If you notice that Dorothy Blacker was responsible for this oversight as well as when my file was displaced by her and I was put on the long term leave without pay status which cost me my career as an Elevator Mechanic. Again, it was because of my consistently tracking what was being done with my job and with me now being forced to retire that alerted them to the mistakes the DOS had made Dated October 2,1992 (exhibit #21). I was left with only (50) Calender Days to get my Request for Disability Retirement submitted, instead of having the full year for the filing for my Retirement as is specified in the letter sent by Cathie P. Roberts, Personnel Management Division, Bureau of Administration of State. The process of my Retirement was delayed from 11/21/91 until approximately May 4, 1995 when it was finalized, but not until a letter sent by the Department of Labor/OWCP on or about 6/23/94 requiring a response from my doctor stating my current condition for the consideration of granting my Disability Retirement (exhibit #22). In the following paragraphs; Code of Federal Regulations: it is noted that, "to the extent an unrepresented complainant fails to comply due to mistake, lack of knowledge, or misunderstanding, the Commission will take such factors into consideration when determining whether good cause has been shown." It is the contention that Mr. Hewitt meets this criteria because he was never advised of his Rights from the Department of State or any other agency that he had contacted of his right to an appeal, that would grant him his full and complete timeliness for filing of 45 days,

Page 27

to be assigned a counselor from the EEO of Civil Rights until his meeting with Mrs. Clemons on 10/19/06 and therefore has met the burden of proof in this Complaint of Discrimination and the being Fired due to his Job Related Injury and being representing his Civil Rights and therefore has met the burden of proof in this Complaint of Discrimination and the being Fired due to his Job Related Injury and being representing his Civil Rights.

**Under Fragmentation in the EEO Rules[[Page 37654]] Appeals In the proposed rule, the Commission proposed two different appeal briefing schedules, depending on the matter being appealed:**

**In response to the Commission's statement in the NPRM that the Commission will strictly apply appellate time frames, a number of commenters suggested that provision be made for extending the appellate time limits for good cause shown. Part 1614 already provides that regulatory time limits ``are subject to waiver, estoppel and equitable tolling.'' 29 CFR Sec. 1614.604(c). Most commenters agreed with the Commission's proposal that the Office of Federal Operations be empowered to impose sanctions or otherwise take appropriate action regarding any party who fails, without good cause shown, to comply with appellate procedures or to respond fully and timely to a Commission request for information. Some commenters were concerned that this provision could unfairly impact unrepresented complainants.**

To the extent an unrepresented complainant fails to comply due mistake, lack of knowledge, or misunderstanding, the Commission will take such factors into consideration when determining whether good cause has been shown.

Most commenters also agreed with the proposed appellate standards of review --factual findings rendered by administrative judges after a hearing will be subject to a substantial evidence standard of review; all other decisions will be subject to a de novo review. No new evidence will be considered on appeal unless the evidence was not reasonably available during the hearing process. As we noted in the preamble to the proposed rule, the substantial evidence standard does not preclude meaningful review of factual findings. Moreover, applying the de novo standard of review to the factual findings in administrative judges' final decisions after hearings would be an inefficient use of EEOC's limited resources. Finally, the Commission proposed to revise the reconsideration process to approximate the process used by the MSPB, reallocate some resources to the improvement of the appellate process and discourage automatic requests for reconsideration whenever a party loses on appeal. Parties may still request reconsideration but it will only be granted, in the discretion of the Commission, if the requester has demonstrated that the appellate decision involved a clearly erroneous interpretation of material fact or law,

or the appellate decision will have a substantial impact on the policies, practices or operations of the agency. The comments received were mixed.

The unfavorable comments were mostly from agencies although many other agencies favored the change. The objectors raised the same objections discussed in the preamble to the proposed rule. After considering all comments, we have decided to adopt the proposed rule without change. The proposal makes the reconsideration procedure available for those cases where the requestor demonstrates that there are errors of fact or law that would affect the outcomes of the cases and for those cases that will have a substantial impact. By preserving the Commission's discretion, it also will allow the Commission to reallocate its resources to the improvement of the appellate process.

• It is my Pray that this Honorable United States District Court will take into consideration the many mistakes that were made on the part of the Department of State. Under the Rules of Federal Regulations it is stated that;

1614.302 Mixed case complaints.
(b) *Election*. An aggrieved person may initially file a mixed case complaint with an agency pursuant to this part or an appeal on the same matter with the MSPB pursuant to 5 CFR 1201.151, but not both.

An agency shall inform every employee who is the subject of an action that is appealable to the MSPB and who has either orally or in writing raised the issue of discrimination during the processing of the action of the right to file either a mixed case complaint with the agency or to file a mixed case appeal with the MSPB. The person shall be advised that he or she may not initially file both a mixed case complaint and an appeal on the same matter and <u>that whichever is filed first shall be considered an election to proceed in that forum</u>. If a person files a mixed case appeal with the MSPB instead of a mixed case complaint and the MSPB dismisses the appeal for jurisdictional reasons, the agency shall promptly notify the individual in writing of the right to contact an EEO counselor within 45 days of receipt of this notice and to file an EEO complaint, subject to 1614.107. The date on which the person filed his or her appeal with MSPB shall be deemed to be the date of initial contact with the counselor. If a person files a timely appeal with MSPB from the agency's processing of a mixed case complaint and the MSPB dismisses it for jurisdictional reasons, the agency shall reissue a notice under 1614.108(f) giving the individual the right to elect between a hearing before an administrative judge and an immediate final decision.

Please take notice of the underlined in the above rule. The Complainant first contacted the EEO and the rule states that pursuant to rule 5 CFR 1201.151, <u>but not both</u>.

Page 31

Then under (b) paragraph 2, <u>that whichever is filed first shall be considered an election to proceed in that forum</u>. The aggrieved made his initial contact with the EEO with Mrs. Dorothy Blacker. Therefore the counseling process should have continued with the forum used at the first contact of the EEO with my Complaint of Discrimination being violated and should have continued with the EEO and not both. Therefore the Merit Systems Protection Board under the previous rule, states that both forums are not accepted under the Federal Sector Equal Employment Opportunity Complaint Processing Regulations 29 CFR Part 1614.

**1614.310 Right to file a civil action.**

An individual who has a complaint processed pursuant to 5 CFR part 1201, subpart E or this subpart is authorized by 5 U.S.C. 7702 to file a civil action in an appropriate United States District Court: The Complainant is accordingly within the time limits of Due Diligence the allows for timely filing.

# In Conclusion to this Complaint of Discrimination

Many errors were made on the part of the Department of State. The fact of misplacing my file, which concluded with my being put on the DOS long term rolls of LWOP cost me my career in a job that I loved for so many years. If my job was indeed abolished, why was I not advised of this by some type of written notice? I have produced evidence showing that I was still on their rolls as an Elevator Mechanic even up the year of 1990, therefore it is up to the Defense to show that my job was truly abolished and that reprisal was not the real issue at hand. In the evidence that I have provided to this Honorable United States District Court, I have shown many of the mistakes that were made in the duration of this mentally and physically exhausting ordeal.

To include insult to injury, I have also included another piece of evidence showing the mis-justice that has been done to me that happened after my retirement dated April 1, 1997, when I received a notice from the Office of Personnel Management, when the OPM tried to make me pay for another one of their mistakes in the amount of $925.75, but thankfully after reconsidering their demand for payment I was given a waiver for that amount, which was due to their mistake (exhibit #23). All of this has cost my life a great deal of suffering as well as my son. It is my Prayer that this Honorable Court will grant me my request for Due Process of the law and grant me my petition to be heard on the merits of this case, that is Guaranteed me under the Fifth Amendment of the United States Federal Constitution.      Page 33

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Steven A. Hewitt,            :
13270 Main Avenue,      :
P.O. Box 401,            :
Cobb Island, MD  20625,  :
301-259-2032,           :
**COMPLAINANT**       :
                         :
      VS.             :   CASE NO. -----------------------
                         :
Condoleezza Rice,       :
   Secretary,           :
Department of State,    :
2201 C Street N.W.      :
Washington, DC 20520   :
**DEFENDANT**          :

# RELIEF BEING REQUESTED OF THIS HONORABLE COURT

It is the request of this Complainant, Steven A. Hewitt, currently, Unrepresented *Pro-Se* , in the matter of Steven A. Hewitt vs. Condoleezza Rice, of the Department of State that I am asking for the following;

1. The Complainant is hereby requesting that a trial by Jury be Assigned to hear this case of Unlawful Discrimination.

2. Payment be made to Mr. Hewitt the identified victim of discrimination on a make whole basis for the loss of earnings that I have suffered as a result of this discrimination to include all back pay of wages.

3. That interest be computed on the wages that the Complainant would have made on his wages in event that discrimination had not occurred to also include all raises in grade steps and or increases to include all cost of living increases.

4. That the position that the Complainant held as an Elevator Mechanic at the Grade of WG-11 be restored to the current level of wages to include step increases and all seniority be restored as well if at all possible according to the doctors approval of the Complainants return to work.

5. In the event that the Complainant cannot be returned to work for reasons of his doctors orders due to his current medical condition and his ability to return that future pay be considered as payment due to his disability.

6. That the time in which the Complainant has been out due to the Discrimination against him, be accounted as time served in from the date of when the discrimination occurred and that his disability pension be redetermined to reflect the grade and wages of this present time be considered at the rate of pay and time served.

7. That an award of all attorney fees and cost incurred be paid by the agency.

8.    The Complainant also Prays for the right that in the event
      that this court assigns counsel for the Complainant that
      the reservation to amend this Complaint as is deemed
      appropriate by his counsel assigned in the means of
      everything mentioned in this Complaint and the right to
      include other issues of evidentiary to be included in this
      Complaint of Unlawful Discrimination.


I, Steven A. Hewitt, the Complainant, currently unrepresented,
*Pro-Se* do Respectfully and Humbly Pray for this by the
Honorable United States Court in the District of Columbia.


                                    Steven A. Hewitt, I

Date: 5/29/07

                                    13270 Main Ave.
                                    PO Box 401
                                    Cobb Island, MD 20625
                                    301-259-2032

Page 36

# NOTICE OF ANNUITY ADJUSTMENT

This notice informs you of a change in the amount of your payments. Please see the back of the notice. If you have questions, call us or write to the address shown below.

| | GROSS MONTHLY ANNUITY | MONTHLY HEALTH BENEFITS | MONTHLY MEDICARE | CODE | AMOUNT | CODE | AMOUNT | NET MONTHLY PAYMENT | |
|---|---|---|---|---|---|---|---|---|---|
| OLD STATUS | 1494.00 | -163.85 | | | | | | 1330.15 | YOUR PAYMENT BEFORE ADJUSTMENT |
| NEW STATUS | 1543.00 | -163.85 | | 31 | -3.00 | | | 1376.15 | YOUR PAYMENT AFTER ADJUSTMENT |

*SEE BACK FOR CODES FOR OTHER DEDUCTIONS OR ADDITIONS

**YOUR PAYMENT DATED: 01/02/2007**

**UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
RETIREMENT OPERATIONS CENTER
PO BOX 45
BOYERS PA 16017-0045**

REFER TO THIS NUMBER WHENEVER YOU CONTACT OPM

**CLAIM NUMBER**

**CSA 3 401201 0**

Reason for adjustment.          *You may use this notice as proof of your current rate of annuity.*

WE ARE WITHHOLDING FEDERAL INCOME TAX FROM YOUR
ANNUITY. YOU MAY STOP THE WITHHOLDING OR CHANGE
THE AMOUNT WITHHELD AT ANY TIME BY CALLING OUR
TOLL-FREE NUMBER: 1-888-767-6738. CUSTOMERS
WITHIN THE LOCAL WASHINGTON, D.C., CALLING AREA
MUST DIAL 202-606-0500. CONTACT THE INTERNAL REVENUE
SERVICE FOR INFORMATION ABOUT THE AMOUNT YOU NEED
TO HAVE WITHHELD. YOU COULD INCUR PENALTIES IF
YOU DO NOT HAVE ENOUGH WITHHELD.

YOUR NEW GROSS MONTHLY ANNUITY REFLECTS THE 3.3%
COST-OF-LIVING ADJUSTMENT. BY LAW, THE INCREASE IS
ROUNDED DOWN TO THE NEXT WHOLE DOLLAR.

THE NET AMOUNT OF YOUR FEBRUARY 2007 PAYMENT WILL
REFLECT THE CHANGE IN HEALTH INSURANCE PREMIUMS AND
ANY OPEN SEASON CHANGE YOU MAY HAVE MADE.

07 1097

**FILED**

JUN 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit # 1

Standard Form 50-B
Rev. 8/88
U.S. Office of Personnel Management
FPM Chapter 296

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| HEWITT, STEVEN A | 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 | 07-02-55 | 12-31-91 |

| **FIRST ACTION** | | **SECOND ACTION** | |
|---|---|---|---|
| 5-A. Code 5-B. Nature of Action | | 6-A. Code 6-B. Nature of Action | |
| 356   TERMINATION - INVOLUNTARY | | | |
| 5-C. Code 5-D. Legal Authority | | 6-C. Code 6-D. Legal Authority | |
| VWP    5 U.S.C. 7513 | | | |
| 5-E. Code 5-F. Legal Authority | | 6-E. Code 6-F. Legal Authority | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| M-00502-00 MOTOR VEHICLE OPERATOR | |

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| WG | 05703 | 06 | 05 | $11.85 | PH | | | | | | |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| 220-20 DOMESTIC FLEET MGMT & OPERATIONS DR GENERAL SERVICES DIVISION DEP ASST SEC FOR OPERATIONS | |

## EMPLOYEE DATA

| 23. Veteran Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1    1 - None    3 -10-Point/Disability    5 -10-Point/Other    2 - 5-Point    4 -10-Point/Compensable    6 -10-Point/Compensable/30% | 1    0 - None    2 - Conditional    1 - Permanent    3 - Indefinite | 21 ST TEN | YES    [X] NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| B    WAIVED | 9 | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| 1    CIVIL SERVICE | 05-19-77 | F    F - Full-time    I - Intermittent    J - INT Seasonal    P - Part-time    G - FT Seasonal    H - FT On-Call    Q - PT Seasonal    R - PT On-Call | |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1    1 - Competitive Service    3 - SES General    2 - Excepted Service    4 - SES Career Reserved | N    E - Exempt    N - Nonexempt | 4519-0-8640    1114 | |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 110010001 | WASHINGTON    DC |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | |

45. Remarks

REASON(S) FOR TERMINATION:  PHYSICAL INABILITY TO PERFORM THE DUTIES OF POSITION.
LUMP-SUM PAYMENT TO BE MADE FOR ANY UNUSED ANNUAL LEAVE.
NOT ENTITLED TO SEVERANCE PAY.
FORWARDING ADDRESS

        MR. STEVEN A. HEWITT
        1258 CRONIN DRIVE
        WOODBRIDGE, VA. 22191

07 1097

FILED

JUN 19 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

ACTION PROCESSED BY (PER1HLB) 15:26

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| STATE DEPT | EDWARD JOSEPH PERKINS |
| 47. Agency Code    48. Personnel Office ID    49. Approval Date | |
| 1900    2951    04-01-92 | DIRECTOR OF PERSONNEL |

TURN OVER FOR IMPORTANT INFORMATION
5 - PART    50-314

1 - Employee Copy - Keep for Future Reference

Editions Prior To 4/87 Are Unusable After 9/30/88
NSN 7540-01-249-1911

Exhibit #2

Standard Form 50-B
Rev. July 1984
U.S. Office of Personnel Management
Chapter 296

SF-SM-85-841
85-861

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | | | | 2. SSN | 3. Position Sensitivity (Opt) | 4. Date of Birth |
|---|---|---|---|---|---|---|
| HEWITT, STEVEN A | | | | 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 | NONSENS | 07-02-55 |

| 5. Veteran Preference | 6. Serv. Comp. Date (Leave) | 7. Tenure | 8. Retirement | |
|---|---|---|---|---|
| 1 — 1—None 3—10 Pt. Disab. 5—10 Pt. Other 2—5 Pt. 4—10 Pt. Comp. 6—10 Pt./30% Comp. | 03-24-75 | 1 | 1 | |

| 9. FEGLI | 10. FLSA | 11. Sex | 12. Citizenship | 13. Comp. Level (Opt) |
|---|---|---|---|---|
| B  WAIVED ALL LIFE INSURANCE | N E—Exempt N—Nonexempt | M | 1—US 8—Other  006 | |

| 14. Effective Date | 15. Annuitant Indicator | 16. Work Schedule | 17. (Reserved for OPM Use) |
|---|---|---|---|
| 01-06-85 | 9  1—Reempl Ann-CS 3—RETM 5—RETM & CS 2—RETO 4—RETO & CS 9—Not Applicable | F  F—Full-time G—PT Seasonal P—Part-time Q—PT Seasonal I—Intermittent J—INT Seasonal | |

| 18-A. NOAC | 18-B. Nature of Action | 19-A. NOAC | 19-B. Nature of Action |
|---|---|---|---|
| 721 | REASSIGNMENT | | |

| 18-C. Auth Code | 18-D. Authority | 19-C. Auth Code | 19-D. Authority |
|---|---|---|---|
| NBM | REG 335.102 EXCEPT TO COMP | | |

| 18-E. Auth Code | 18-F. Authority | 19-E. Auth Code | 19-F. Authority |
|---|---|---|---|
| | | | |

| 20. FROM: Position Title and Number | 27. TO: Position Title and Number |
|---|---|
| ELEVATOR MECHANIC      3W18810004 | ELEVATOR MECHANIC    A   3W18819001 |

| 21. Name and Location of Employing Office | 28. Name and Location of Employing Office |
|---|---|
| OFC OF PUBLIC BLDGS & REAL PROPERTY DEPUTY ARA FOR OPERATIONS SOUTH DISTRICT FORRESTAL FIELD OFC ELEV REP SHOP WASH DC | OFC OF PUBLIC BLDGS & REAL PROPERTY DEPUTY ARA FOR OPERATIONS SOUTH DISTRICT MALL FIELD D OFC ELEV REP SHOP WASH DC |

| 22. Pay Plan & Occupational Code | 23. Grade or Level | 24. Step or Rate | 25. Salary | 26. Pay Basis | 29. Pay Plan & Occupational Code | 30. Grade or Level | 31. Step or Rate | 32. Salary | 33. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|
| WG 5313 | 11 | 05 | $12.35 | PH | WG 5313 | 11 | 05 | $12.35 | PH |

| 34. Duty Station | | | | 35. Position Occupied | 36. Appropriation Code (Optional) |
|---|---|---|---|---|---|
| WASHINGTON | | DC | | 1  1—Competitive 3—SES General 2—Excepted 4—SES Career Reserved | 1922303300003111 |

37. Remarks

07 1097

# FILED

JUN 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| 38. Approval | | 39. FPMIS Data | | | | |
|---|---|---|---|---|---|---|
| A. Title of Approving Official | B. Date | A. Supv. or Nonsupv. Ind. | B. VEV IND | C. PRD | D. Barg. Unit Status | E. Functional Class |
| FOR THE APPOINTING OFFICER | 03-15-85  JW | C | N | 0 | 0062 | |
| C. Signature/Authentication of Approving Official | | F. Educational Level | G. Year Degree Attained | H. Academic Discipline | I. Agency Code | |
| Valerie R. Tolwa | | 04 | | | GS23 | |
| DESIGNATED APPOINTING OFFICIAL WASH DC | | J. Location Code | | | K. SON | |
| | | 11-0010-001 | | | 1909 | |
| 40. Employing Department or Agency | | | M. | N. | O.  3333 | Q. |
| GENERAL SERVICES ADMINISTRATION | | | | | | |

| 5 Part | 1—Employee Copy | Previous Edition Usable |
|---|---|---|
| 50-307 | | NSN 7540-01-110-4907 |

Exhibit #3

General Services Administration
National Capital Region
Washington, DC 20407

Dear Mr. Hewitt:

Effective April 1, 1986, the General Services Administration (GSA), National Capital Region (NCR) will delegate to the Department of State the responsibilities for operation, maintenance, repair, alteration, and security of the State Building.

Implementation of this Transfer of Function has resulted in your position being positively identified for transfer to the gaining competitive area. Recently imposed budget and staffing reductions have made it necessary to transfer these positions encumbered. Therefore, since your position has been identified with the transferred function, you will be required to transfer with it.

An employee who refuses to accompany a transfer of function may be separated through adverse action procedures (5 CFR Part 752). Further, an employee who declines to move with their function and is separated by adverse action procedures will not have re-employment priority rights.

If you decide to transfer with your function, you will be retained in an active duty status in your present position until the Transfer of Function is effected. Upon transfer to the gaining competitive area, there will be no change in the type of appointment, position, grade, or salary currently assigned. In addition, your annual/sick leave, retirement, and other applicable rights and benefits will be transferred to the gaining agency. Further, the transfer will not require a physical relocation.

Your transfer to the Department of State is subject to the approval of the Department of State, based upon meeting their employment criteria. Although the building delegation will be effective April 1, 1986, your official transfer to the Department of State will not be effected until you have met all of their requirements. Until such time, you will continue as an employee of GSA. Should you not meet the requirements, you will remain a GSA employee and be reassigned within the NCR.

2

    This is not an adverse personnel action and accordingly you do not have statutory rights to appeal this action. I want to emphasize that this action is in no way a reflection on your performance as a GSA employee. To the contrary, on behalf of all of GSA, I wish to express my sincere appreciation and gratitude for your loyal and faithful service and my regret that your employment cannot be continued with GSA.

                    Sincerely,

                    Mary L. Jessee
                    Regional Personnel Officer

Mr. Steven A. Hewitt
Office of Public Buildings and Real Property
West District, State Field Office

Delivered _____ on ___3/19/86___
          Signature                  Date

# POSITION DESCRIPTION FOR GENERAL SCHEDULE AND WAGE SYSTEM POSITIONS

| REASON FOR SUB-MISSION | a. IF NEW POSITION | Mark no. | TYPE LEVEL |
|---|---|---|---|
| | b. POSITION BEING REPLACED (if applicable) | | |
| | Number | Series | Grade |

**a. GEOGRAPHIC LOCATION**

**5.** CLASSIFICATION

| | ACTION | POSITION TITLE | SCHEDULE | SERIES | GRADE | INITIALS | D. |
|---|---|---|---|---|---|---|---|
| a. | OFFICIAL BY PERSONNEL OFFICE | ELEVATOR MECHANIC | WG | 5313 | 11 | | |
| b. | RECOMMENDED BY PERSONNEL OFFICE | | | | | | |
| c. | RECOMMENDED BY INITIATING OFFICE | | | | | | |

**6. ORGANIZATIONAL TITLE OF POSITION** (if applicable)

**7. NAME OF EMPLOYEE(S)**

**8. LOCATION**

| a. SERVICE OR STAFF OFFICE | b. SUB-DIVI-SIONS | |
|---|---|---|
| | 1st. | Office of Public Buildings and Real Property |
| | 2d. | Office Deputy ARA for Operations |
| | 3d. | Buildings Management Division |
| | 4th. | West District |
| | 5th. | State Field Office |

**9. SUPERVISORY CERTIFICATION**

I certify that this is an accurate statement of the major duties and responsibilities of this position and its organizational relationships and that the position is necessary to carry out Government functions for which I am responsible. This certification is made with the knowledge that this information is to be used for statutory purposes relating to appointment and payment of public funds and that false or misleading statements may constitute violations of such statutes or their implementing regulations.

a. IMMEDIATE SUPERVISOR (Signature and title)     DATE

b. HEAD OF SERVICE/STAFF OFFICER (OR DESIGNEE) (Signature and title)     DATE

*John W Brown*   9/

Chief, Buildings Operations Division

**10. EMPLOYEE CERTIFICATION**

This is a complete and accurate description of the duties and responsibilities of my position.

EMPLOYEE (Signature)     DATE

**11. FLSA STATUS** (For completion by servicing personnel office)

Mark "X" in appropriate box   ☐ EXEMPT   ☒ NONEXEMPT

**13. OFFICIAL CLASSIFICATION CERTIFIED BY** (Signature and title)     DATE

*Yumi A. Farricko*   9/

Position Classification Specialist

**12. NUMBER OF INCUMBENTS PERMITTED ▶**

**14. READUDIT CERTIFICATION**

| | BY | Initials | Date | Initials | Date | Initials | Date | Initials | Date | Initials | Da |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | a. SUPERVISOR | | | | | | | | | | |
| | b. PERSONNEL OFFICE | | | | | | | | | | |

**15. DUTIES AND RESPONSIBILITIES**

SEE ATTACHED STATEMENT OF DUTIES

GENERAL SERVICES ADMINISTRATION   ☆ U.S.GPO:1975-0-555-714-127   GSA FORM 1637 (REV.)

## NATURE AND CONTROLS:

Serves as an Elevator Repairer in Government-occupied buildings
performing duties relative to the inspection, maintenance, repairs
and adjustments on all types of elevators, including related
control and logic systems; dumbwaiters, escalators, electro-
hydraulics; automatic multi-station vertical selective conveyors,
horizontal conveyors; power operated window washer scaffolds; auto-
matic entrance doors, power and manually operated garage doors;
paper balers and all other hoisting equipment. **Primarily performs
specialized work on sophisticated and complex electric, electronic
and solid state supervisory control systems having computerized
circuitry component assemblies.**

Must work from complex schematic wiring diagrams, sequence operating
and parts manuals, layout detail prints, specifications, code require-
ments and accepted trade practices. Is responsible for determining
work methods, procedures, priority of work items and craft techniques
necessary to accomplish projects covering all phases of the elevator
craft functions. May receive oral or written work assignments from
supervisor and/or leader. Must train lower grade mechanics or helper
in work methods, operating controls, logic and supervisory systems
and trouble-shooting techniques.

Work is review and inspected for overall equipment performance and
condition by supervisor and/or leader. Incumbent must have securit
clearance to work at the White House and CIA.

## MAJOR DUTIES:

Incumbent is responsible for performing all tasks associated with
the most complex phases of elevatoring and related equipment; without
technical assistance. Possesses the analytical ability to diagnose,
analyze and interpret schematic wiring diagrams and related sequentia
operations in order to resolve failures or inefficient operations.
Uses intricate meters, such as ammeters, ohmmeters, voltmeters,
meggers, oscilloscopes, tachometers, pressure gauges, condenser chec
er, and other measuring devices routinely in performance of duties.
At times is required to diagnose and resolve engineering deficiency
problems and apply upgraded corrective technology through installati
of new or modified circuitry and electronic or solid state devices.
At times is required to develop and/or design new circuitry required
to correct deficiencies or improve service by expanding on existing

2

operating features.  Also is requested at times to review and/or survey existing passenger traffic demands to determine functional efficiency of automatic programing features.

Incumbent is responsible for the inspection maintenance, repairs and adjustments to all mechanical, electrical and electro mechanical equipment comprising entire elevator plants.  Makes periodic code conforming safety checks and tests.  Replaces and adjusts all defective parts.  Dismantles, repairs and then reassembles and adjusts all power generators, motors, control components; doors control assemblies and associated hardware; sheaves, bearings, conductors, power relays and all other equipment in hatchway and control rooms.

Is responsible for all maintenance, repairs and adjustments to control and interrelated supervisory scheduling and dispatch logic systems having peak programing with or without multi-zoning features. Diagnoses and resolves malfunctioning problems.  Adjusts electronic equipment to manufacturers work bench marks or readjusts for more efficient operation.  Conducts recabling operations by replacing defective hoist, governor and safety wire rope cables.

Performs other miscellaneous duties as assigned.  Through rescheduling of work hours, serves as late man or works at night and weekends with no supervision.  Responds to emergency calls for release of entrapped passengers from elevators throughout several or more field offices. Must have special training to service vault doors. Provides security of elevator service for heads of state.

## WORKING CONDITIONS:

Subject to serious or fatal falls from high elevations, cuts, bruises, fatal electrical shock, and stress in emergency situations.  Works in dusty, dirty, and drafty locations.

## PHYSICAL EFFORT:

Eye and hand coordination is required while checking live circuits with test instruments.  There is lifting, carrying, pulling, steadying or otherwise moving equipment parts, chain falls, weights or tools weighing up to 75 pounds.  Adjustments, repair, or replacement of parts or assemblies may require kneeling, stooping, climbing ladders, reaching over, under and into equipment while in cramped or awkward positions.

| UNITED STATES DEPARTMENT OF STATE **SUPERVISOR'S REPORT OF ACCIDENT** (See instructions on reverse before completing report) | ☑ On duty ☐ Off duty | **AGENCY** *Department of State* **ORGANIZATIONAL UNIT** *A/OPR/EMSS* |
|---|---|---|

**1. NAME OF PERSON INVOLVED IN ACCIDENT**
*Hewitt, Steven A.*

**2. PERSONNEL CATEGORY**

**3. AGE** *31*

**4. SEX (check one)** ☑ Male  ☐ Female

**If no personal injury:** ☐ Not applicable

**5. OCCUPATION** *Elevator Mechanic*

**6. TIME ACCIDENT OCCURRED** DATE: *10/16/86*   *7:40* A.M.   P.M.   DAY OF WEEK: *Thursday*

**7. NATURE OF INJURY** *Pain in Lower Back*

**8. PART(S) OF BODY INJURED** *Lower Back*

**9. SEVERITY OF INJURY (Check one)**
☐ Fatal
☒ Time lost
☐ No time lost
☐ Medical attention only
☐ First aid attention only
☐ No injury involved

**10. LOST TIME**
TOTAL TIME LOST FROM WORK: _____
TOTAL TIME LOST FROM ACTIVITIES: _____
TOTAL LOST TIME: _____

**11. CAUSE OF INJURY** *Bending over and picking up Tools*

**12. TYPE OF ACCIDENT (Check one in each column)**
☑ Personal injury
☐ Government property damage
☐ Personal property damage
☐ Contractor property damage
☐ Fire
☐ Motor vehicle
☐ Aircraft
☐ Boat
☐ Other:

**13. CAUSATIVE AGENT** *NONE*

**14. UNSAFE ACT** *Bending over To pick up Anything*

**15. UNSAFE MECHANICAL/PHYSICAL CONDITION** *NONE*

**16. UNSAFE PERSONAL FACTOR** *Bending over To pickup Things*

**17. HAS CORRECTIVE ACTION BEEN TAKEN OR RECOMMENDED (Check one)** ☐ Yes  ☒ No

**18. DESCRIPTION OF ACCIDENT**
*Mr. Hewitt Bent over to pickup his Tools. when he got a sharp pain in his Lower back. He grabbed his Lower Back and Fail To The floor*

07 1097

**FILED**

**19. AMOUNT OF PROPERTY DAMAGE IF OVER $100**
GOVERNMENT-OWNED: $ _____   PERSONAL: $ _____   CONTRACTOR **JUN 1 9 2007**

**20. IS TORT CLAIM EXPECTED?** ☐ Yes  ☒ No

**21. DATE OF REPORT** *10/17/86*

NANCY MAYER WHITTINGTON, CLERK U.S. DISTRICT COURT

**22. SIGNATURE OF SUPERVISOR** *Ronald L. Stalnaker*

Typed Name: *Ronald L. Stalnaker*
Title: *Elevator Mechanic Supervisor*

· This report should be sent to A/SAF, Attention: Safety Director, Department of State, Washington, D.C. ·

*Exhibit #4*



U.S. Department of Labor
Employment Standards Administration
Office of Workers' Compensation Programs

| 1. Name of Injured Employee (Last, first, middle) | 2. Date of Birth | 3. ☒ Male ☐ Female | 4. Social Security Number |
|---|---|---|---|
| Hewitt Steven Allen | 7/2/55 | | 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 |

**5. Employee's Home Mailing Address (no., street, city, state, zip code)**
1258 CRONIN DR. WoodBRidge VA. 22191

**6. Home Telephone**
Area Code: 703
Number: 4940802

**7. Name and Address of Employing Agency**
DePt OF State

**8. Place Where Injury Occurred (e.g., 2nd floor, Main Post Office Bldg., 12th & Pine)**
9th FLooR MAiN ELEVATOR SheP
State DePt BLdg.

| 9. Date and Hour of Injury (mo., day, year) | 10. Date of This Notice (mo., day, year) | 11. Dependents | 12. Employee's Occupation |
|---|---|---|---|
| 10/16/86 730 ☒ AM ☐ PM | 10/17/86 | Wife/Husband N/A ☐ Children/Under 18 Years Old ☐ | ELEVATOR RePAiReR |

**13. Cause of Injury (Describe how and why the injury occurred)**
WAS Bending over to Pick UP. MY BAg OF tools (weighing About 40-50 Pounds) when Lifting UP the Legs went out And I Fell into the metal Locker.

**14. Nature of Injury (Identify the part of the body injured, e.g., fractured left leg, etc.)**
Lower And middle BAck

**15. If This Notice and Claim Was Not Filed With The Employing Agency Within Two Working Days After The Injury, Explain The Reason For The Delay.**
N/A

**16.** I certify, under penalty of law, that the injury described above was sustained in performance of duty as an employee of the United States Government and that it was not caused by my willful misconduct, intent to injure myself or another person, nor by my intoxication. I hereby claim medical treatment, if needed, and the following, as checked below, while disabled for work:

☐ a. Sick and/or Annual leave.

☒ b. Continuation of regular pay not to exceed 45 days and compensation for wage loss if disability for work continues beyond 45 days (If my claim is denied, I understand that the continuation of my regular pay shall be charged to sick or annual leave, or be deemed an overpayment within the meaning of 5 USC 5584).

Steven A Hewitt
Signature of Employee or Person Acting on His/Her Behalf

**PENALTY PROVISION:** Any person who knowingly makes any false statement, misrepresentation, concealment of fact, or any other act of fraud to obtain compensation as provided by the FECA or who knowingly accepts compensation to which that person is not entitled is subject to felony criminal prosecution and may, under appropriate U.S. Criminal Code provisions, be punished by a fine of not more than $10,000 or imprisonment for not more than five years, or both.

**17. Statement of Witness (Describe what you saw, heard or know about this injury)**
I heard MR. HEWitt GROAN iN PAiN. I TuRNed ARound And saw him bent over iN FRoNt of his Locker with his hand on his Lower back, And he Then Fail onto The Floor iN PAiN

| 18. Witness' Signature | 19. Witness' Address | 20. Date Signed (mo., day, year) |
|---|---|---|
| Ronald L Stabnaker | 508 CLARKS RuN Road LaPlata, Md. 20646 | 10/17/86 |

Form CA-1

**OFFICIAL SUPERIOR'S REPORT OF TRAUMATIC INJURY**

| 21. Department or Agency | 22. Bureau or Office | |
|---|---|---|
| United States Department of State | Elevator Shop | Agency Code: A/OPR/FMSS |

**23. Name and Address of Reporting Office (No., street, city, state, Zip Code)**
Department of State Elevator Shop
2201 C Street N.W.
Washington D.C. 20520

| 24. Regular Work Day | 25. Number of Hours Worked Per Day | 26. Circle Days Paid Per Week |
|---|---|---|
| Begins 6:30  ☒ AM    Ends 3:00  ☒ PM | 8 Hrs | S Ⓜ Ⓣ Ⓦ Ⓣ Ⓕ S |

| 27. Date and Hour of Injury (mo., day, year) | 28. Date Reporting Office Received Notice of Injury (mo., day, year) | 29. Date and Hour Stopped Work (mo., day, year) | 30. If Pay Has Been Terminated, Give Date (mo., day, year) |
|---|---|---|---|
| 10/16/86  7:40 ☒ AM  ☐ PM  APPROX | 10/16/86 | 10/16/86  7:40 AM (APPROX) Pay Rate $ 13.29  per hr | — |

| 31. 45 Day Period Begins (mo., day, year) | 32. Employee's Grade and Step on Date of Injury | 33. Date and Hour Employee Returned to Work (mo., day, year) | 34. Name of Supervisor at Time of Injury |
|---|---|---|---|
| 10/16/86 | Grade WG-11 Step 5 | ☐ AM ☐ PM | Ronald L. Stalnaker |

**35. Was Employee in Performance of Duty At The Time of Injury?**  ☒ Yes  ☐ No.  If No, furnish a detailed explanation or attach copy of Employing Agency's Investigation Report.

**36. Was Injury Caused By Willful Misconduct, Intoxication or Intent To Injure Self of Another?**
☐ Yes  ☒ No.  If Yes, Furnish Detailed Report.

**37. Was Injury Caused By Third Party?**  ☐ Yes  ☒ No.  If Yes, Furnish Name and Address of Party Responsible.

| 38. Date Employee First Obtained Medical Care for the Injury (mo., day, year) | 39. Name and Address of Physician First Providing Medical Care | 40. Do Medical Reports Show Employee is Disabled For Work? |
|---|---|---|
| 10/16/86 | Emergency Room George Washington Hospital 23rd Street N.W. Washington D.C. | ☐ Yes  ☐ No |

**41. Does Your Knowledge of The Facts About This Injury Agree With The Statements of The Employee And/Or Witness?**
☒ Yes  ☐ No.  If No, Furnish A Detailed Explanation.

**42. Does The Employing Agency Controvert Continuation of Pay?**  ☐ Yes  ☐ No.  If Yes, Give Full Explanation for Basis of Controversion
(See Item 6 of Instruction Sheet). Attach Additional Sheets If More Space Is Needed.

**43. Filing Instructions:**
☐ No Lost Time and No Medical Expense. Place This Form In Employee's Official Personnel Folder.
☐ Medical Expense Incurred or Expected. Forward This Form To OWCP.
☐ Lost Time Covered By Leave, LWOP, or COP. Forward This Form To OWCP.

**44. All Information Requested On This Form Has Been Furnished. If Not, It Will Be Submitted By**

(Fill in Date)

| 45. Signature of Supervisor | 46. Title and Office Phone Number 647-2542 | 47. Date (mo., day, year) |
|---|---|---|
| Ronald L. Stalnaker | Elevator Mechanic Foreman | 10/17/86 |

**PENALTY PROVISIONS:** An immediate superior who hinders the filing of any compensation claim or report may be punished by a fine of not more than $500 or imprisoned not more than one year, or both — 18 U.S.C. 1922. A supervisor who knowingly certifies to any false statement, misrepresentation, or con_____ ment of fact in respect to this claim may also be subject to appropriate _____

# INSTRUCTIONS - COMPLETING FEDERAL EMPLOYEE'S NOTICE OF TRAUMATIC INJURY AND CLAIM FOR CONTINUATION OF PAY/COMPENSATION

**IMPORTANT:** The employee and official superior (supervisor) should read all of the following instructions before completing this form.

**1.** The employee, or someone acting on his/her behalf, shall complete items 1 through 16 and give the form to the employee's supervisor for completion of items 21 through 47. The employing agency shall ensure that all evidence bearing on the injury is submitted to OWCP and that such additional evidence is submitted with the notice of injury or within the time indicated in item 44.

**2.** Upon receiving the completed form the supervisor shall complete "Receipt of Notice of Injury" at the bottom of this page, detach the page and give it to the employee. The supervisor is also responsible for obtaining the witness information in items 17 through 20.

**3.** Upon completion of items 21 through 47, the supervisor should advise the employee whether pay will continue or will be controverted and terminated. If pay is controverted and stopped, the supervisor shall explain to the employee the basis for the action.

**4.** Where pay is continued, the employing agency may require medical evidence, via Form CA-17, Duty Status Report, as often as circumstances indicate.

**5.** Form CA-1, fully completed, shall be forwarded to the appropriate OWCP District Office within two working days following receipt by the supervisor if:

    **a.** The injury causes disability for work beyond the day or shift it occurred, or

    **b.** It appears that the injury will result in prolonged treatment, permanent disability or serious disfigurement of the head, face, or neck, or

    **c.** The injury has resulted, or appears it will result, in a charge for medical or other related expenses.

If none of the above occurs or appears likely, the form shall be retained in the employee's official personnel file.

**6. NOTE:** The employing agency may properly controvert and terminate the employee's pay if:

    **a.** Disability results from an occupational disease or illness; or

    **b.** The employee is excluded by 5 USC 8101 (1) B or E; or

    **c.** The employee is neither a citizen nor a resident of the United States or Canada; or

    **d.** The injury occurred off the employing agency's premises and the employee was not involved in official "off premise" duties; or

    **e.** The injury was caused by the employee's willful misconduct, intent to bring about injury or death of self or another person,

    or was proximately caused by employee's intoxication; or

    **f.** The injury was not reported on Form CA-1, within 30 days following the injury; or

    **g.** Work stoppage first occurred six months or more following the injury; or

    **h.** The employee initially reported the injury after his/her employment has terminated; or

    **i.** The employee is enrolled in the Civil Air Patrol, Peace Corps, Youth Conservation Corps, Work Study Programs or other similar groups.

**7.** If additional space is required to explain or clarify any point, attach a supplemental statement to the form.

## PRIVACY ACT

In accordance with the Privacy Act of 1974 (Public Law No. 93-579, 5 U.S.C. 552a), you are hereby notified that: (1) The Federal Employees' Compensation Act, as amended (5 U.S.C. 8101, et seq.) is administered by the Office of Workers' Compensation Programs of the U.S. Department of Labor. In accordance with this responsibility, the Office receives and maintains personal information on claimants and their immediate families. (2) The information will be used to determine eligibility for and the amount of benefits payable under the Act. (3) The information may be used by other agencies or persons in handling matters relating, directly or indirectly, to the subject matter of the claim, so long as such agencies or persons have received the consent of the individual claimant, or have complied with the provisions of 20 CFR 10. (4) Failure to furnish all requested information may delay the process, or result in an unfavorable decision or a reduced level of benefits (disclosure of a social security number is voluntary; the failure to disclose such number will not result in the denial of any right, benefit or privilege to which an individual would be entitled).

THIS NOTICE SHOULD BE RETAINED FOR YOUR INFORMATION

---

### RECEIPT OF NOTICE OF INJURY

THIS ACKNOWLEDGES RECEIPT OF NOTICE OF INJURY SUSTAINED BY _Steven Allen Hewitt_
(Name of injured employee)

WHICH OCCURRED ON _10/16/86_ AT _State Department of State_
(Mo., day, year)

SIGNATURE OF OFFICIAL SUPERIOR _____ TITLE _Bldg. Mgr._ DATE _10/16/86_

Standard Form 50-B
Rev. 8/88
U.S. Office of Personnel Management
FPM Chapter 296

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | | | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|---|---|
| HEWITT, STEVEN A | | | 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 | 07-02-55 | 01-14-90 |

| FIRST ACTION | | | | SECOND ACTION | |
|---|---|---|---|---|---|
| 5-A. Code **894** | 5-B. Nature of Action **PAY ADJUSTMENT** | | | 6-A. Code | 6-B. Nature of Action |
| 5-C. Code **67** | 5-D. Legal Authority **3 FAM SEC 1240** | | | 6-C. Code | 6-D. Legal Authority |
| 5-E. Code | 5-F. Legal Authority | | | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| M-00582-03 ELEVATOR MECHANIC (ADJUSTOR) | M-00582-03 ELEVATOR MECHANIC (ADJUSTOR) |

| 8. Pay Plan **WG** | 9. Occ. Code **05313** | 10. Grade/Level **11** | 11. Step/Rate **05** | 12. Salary **$14.52** | 13. Pay Basis **PH** | 16. Pay Plan **WG** | 17. Occ. Code **05313** | 18. Grade/Level **11** | 19. Step/Rate **05** | 20. Salary/Award **$15.04** | 21. Pay Basis **PH** |
|---|---|---|---|---|---|---|---|---|---|---|---|

| 14. Name and Location of Position's Organization 220510 | 22. Name and Location of Position's Organization 220510 |
|---|---|
| BUILDING MANAGEMENT OPERATIONS DIVISION OFF FACILITIES MGT & SUPPORT SERVICES DEP ASST SEC FOR OPERATIONS | BUILDING MANAGEMENT OPERATIONS DIVISION OFF FACILITIES MGT & SUPPORT SERVICES DEP ASST SEC FOR OPERATIONS |

## EMPLOYEE DATA

| 23. Veteran Preference **1** 1 - None   3 -10-Point/Disability 2 - 5-Point   4 -10-Point/Compensable   5 -10-Point/Other   6 -10-Point/Compensable/30% | 24. Tenure **1** 0 - None   2 - Conditional 1 - Permanent   3 - Indefinite | 25. Agency Use **21 ST TEN** | 26. Veterans Preference for RIF YES ☐   NO ☑ |
|---|---|---|---|
| 27. FEGLI **B** WAIVED | 28. Annuitant Indicator **9** | | 29. Pay Rate Determinant **0** |
| 30. Retirement Plan **1** CIVIL SERVICE | 31. Service Comp. Date (Leave) **03-24-75** | 32. Work Schedule **F** F - Full-time   I - Intermittent   J - INT Seasonal P - Part-time   G - FT Seasonal   H - FT On-Call   N - Nonexempt   Q - PT Seasonal   R - PT On-Call | 33. Part-Time Hours Per Biweekly Pay Period |

## POSITION DATA

| 34. Position Occupied **1** 1 - Competitive Service   3 - SES General 2 - Excepted Service   4 - SES Career Reserved | 35. FLSA Category **N** E - Exempt   N - Nonexempt | 36. Appropriation Code **0113.0 1097** 1114 | 37. Bargaining Unit Status **7777** |
|---|---|---|---|
| 38. Duty Station Code **110010001** | 39. Duty Station (City - County - State or Overseas Location) WASHINGTON   DC | | |

| 40. Agency Data **DOG 01-77** | 41. **WGI DUE CCC** | 42. **SKILL** | 43. | 44. |
|---|---|---|---|---|

45. Remarks

07 1097

FILED

JUN 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| 46. Employing Department or Agency **ST00** | 50. Signature/Authentication and Title of Approving Official EDWARD JOSEPH PERKINS |
|---|---|
| 47. Agency Code **1900** | 48. Personnel Office ID **2951** | 49. Approval Date **01-19-90** | DIRECTOR OF PERSONNEL |

**TURN OVER FOR IMPORTANT INFORMATION**
5 - PART   50-314

1 - Employee Copy - Keep for Future Reference

Editions Prior To 4/87 Are Unusable After 9/30/88
NSN 7540-01-249-1911

Exhibit # 5

Injured Worker's Rehabilitation
Status Report

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

| 1. Injured Worker's Name *(First, Middle, Last)* | 2. Date of Injury | 3. Carrier's No. *(LHWCA)* | 4. OWCP No. |
|---|---|---|---|
| Steven Hewitt | 10/16/86 | X | A25-294698 |

5. Check the injured worker's status and status dates. Check special information when required by the status, for closures and as appropriate. Justify each status change or extension in the comments section.

| STATUS | SPECIAL INFORMATION |
|---|---|

From  9/4/87        To  10/30/87

**REFERRAL**

- ☐ Early (Check a)
- ☐ Other (Check a)
- ☒ Initial Interview Held By OWCP Rehabilitation Specialist (Check d)

- ☐ a. Date compensation file screened _____
- ☐ b. Date OWCP-8 or 13 sent _____
- ☐ c. Date OWCP-10 or 11 sent _____
- ☒ d. Date of initial interview by RS  9/4/87
- ☐ e. Other (See Comments)

**ACTIVE**

- ☐ Plan Development (Check a or b and c)
- ☐ Medical Rehabilitation
- ☐ Training (Check d, e, or f)
- ☐ Self-Employment
- ☐ Placement-New Employer
- ☐ Placement-Previous Employer
- ☐ Employed (Check g)
- ☐ Service Interrupted
- ☐ Post-Employment Service

- ☐ a. Testing required (☐ Yes    ☐ No)
- ☐ b. Testing Waived (See Comments)
- ☐ c. Work evaluation required (☐ Yes    ☐ No)
- ☐ d. Pre-vocational training
- ☐ e. Vocational Training
- ☐ f. On-the-job training
- ☐ g. Date employed _____ (See Comments)
- ☐ h. Reopened (See Comments)
- ☐ i. Other (See Comments)

**CLOSED**

- ☐ Referral
- ☐ Other
- ☐ Post-Employment

- ☐ a. Returned to work
- ☐ b. No permanent disability
- ☐ c. Compensation terminated
- ☐ d. No change since last referral
- ☐ e. Did not respond to letters
- ☐ f. Not interested
- ☐ g. Refused services
- ☐ h. Limited vocational abilities
- ☐ i. Poor job market
- ☐ j. Refused to cooperate
- ☐ k. Job offer declined
- ☐ l. Settled case
- ☐ m. Chose retirement
- ☐ n. Transferred (To _____)
- ☐ o. Other (See Comments)

6. Vocational Rehabilitation Counselor *(Complete item 6a when referring to a new VRC)*

a. Name

b. Professional hours approved for the status *(See item 5)*

c. The VRC's proposed status is ☐ Accepted    ☐ Modified    ☐ Rejected    *(See Comments)*

7. Comments:   I discussed the availability of vocational rehabilitation services with Mr. Hewitt.  He will be meeting with his doctor shortly, and will let me know if he is released for work.  He appears very motivated to return to work, and believes that the work restrictions from his doctor will allow him to return to work.

I am keeping his case in a pending status, until he has had a chance to speak with his doctor and his employer.

Note:  Mr. Hewitt did not receive my first letter, and called me today at the receipt of the OWCP-10.

07 1097
FILED
JUN 19 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit #6

cc:  Steven Hewitt
     Dept. of State Personnel
     Comp File, Rehab. File

| 8. OWCP Rehabilitation Specialist | 9. Telephone No. | 10. Date |
|---|---|---|
| Sheila W. Hackett | 724-0705 | 9/8/87 |

| Injured Worker's Rehabilitation Status Report | U.S. Department of Labor |
|---|---|
| | Employment Standards Administration<br>Office of Workers' Compensation Programs |

| 1. Injured Worker's Name *(First, Middle, Last)* | 2. Date of Injury | 3. Carrier's No. *(LHWCA)* | 4. OWCP No. |
|---|---|---|---|
| Steven A. Hewitt | 10/16/86 | | A25-294698 |

5. Check the injured worker's status and status dates. Check special information when required by the status, for closures and as appropriate. Justify each status change or extension in the comments section.

| STATUS | SPECIAL INFORMATION |
|---|---|

From  12/15/87      To  1/31/88

**REFERRAL**

- ☐ Early (Check a)
- ☒ Other (Check a)
- ☒ Initial Interview Held By OWCP Rehabilitation Specialist (Check d)

- ☒ a. Date compensation file screened _____
- ☒ b. Date OWCP-6 or 13 sent _____
- ☐ c. Date OWCP-10 or 11 sent _____
- ☒ d. Date of initial interview by RS  9/4/87
- ☐ e. Other (See Comments)

**ACTIVE**

- ☐ Plan Development (Check a or b and c)
- ☐ Medical Rehabilitation
- ☐ Training (Check d, e, or f)
- ☐ Self-Employment
- ☐ Placement-New Employer
- ☐ Placement-Previous Employer
- ☐ Employed (Check g)
- ☐ Service Interrupted
- ☐ Post-Employment Service

- ☐ a. Testing required (☐ Yes    ☐ No)
- ☐ b. Testing Waived (See Comments)
- ☐ c. Work evaluation required (☐Yes    ☐ No)
- ☐ d. Pre-vocational training
- ☐ e. Vocational Training
- ☐ f. On-the-job training
- ☐ g. Date employed _____ (See Comments)
- ☐ h. Reopened (See Comments)
- ☐ i. Other (See Comments)

**CLOSED**

- ☐ Referral
- ☐ Other
- ☐ Post-Employment

- ☐ a. Returned to work
- ☐ b. No permanent disability
- ☐ c. Compensation terminated
- ☐ d. No change since last referral
- ☐ e. Did not respond to letters
- ☐ f. Not interested
- ☐ g. Refused services
- ☐ h. Limited vocational abilities
- ☐ i. Poor job market
- ☐ j. Refused to cooperate
- ☐ k. Job offer declined
- ☐ l. Settled case
- ☐ m.Chose retirement
- ☐ n. Transferred (To _____)
- ☐ o. Other (See Comments)

6. Vocational Rehabilitation Counselor *(Complete item 6a when referring to a new VRC)*

a. Name

b. Professional hours approved for the status *(See item 5)*

c. The VRC's proposed status is☐ Accepted    ☐ Modified    ☐ Rejected    *(See Comments)*

7. Comments:

The current medical reports indicate that Mr. Hewitt s continuing conservative treatment. I am recontacting Mr. Hewitt to follow-up the discussion regarding vocational rehabilitation.

cc:  Steven Hewitt'
     Dept. of State
     Comp File
     Rehab File

| 8. OWCP Rehabilitation Specialist | 9. Telephone No. | 10. Date |
|---|---|---|
| SHEILA W. HACKETT | (202) 724-0705 | 12/15/87 |

| Injured Worker's Rehabilitation Status Report | U.S. Department of Labor |
|---|---|
| | Employment Standards Administration<br>Office of Workers' Compensation Programs |

| 1. Injured Worker's Name *(First, Middle, Last)* | 2. Date of Injury | 3. Carrier's No. *(LHWCA)* | 4. OWCP No. |
|---|---|---|---|
| Steven Hewitt | 10/16/86 | | A25-204698 |

5. Check the injured worker's status and status dates. Check special information when required by the status, for closures and as appropriate. Justify each status change or extension in the comments section.

| STATUS | SPECIAL INFORMATION |
|---|---|
| From 1/11/88  To 3/31/88 | |

**REFERRAL**

- ☐ Early (Check a)
- ☐ Other (Check a)
- ☐ Initial Interview Held By OWCP Rehabilitation Specialist (Check d)

- ☐ a. Date compensation file screened _____
- ☐ b. Date OWCP-6 or 13 sent _____
- ☐ c. Date OWCP-10 or 11 sent _____
- ☐ d. Date of initial interview by RS _____
- ☐ e. Other (See Comments)

**ACTIVE**

- ☒ Plan Development (Check a or b and c)
- ☐ Medical Rehabilitation
- ☐ Training (Check d, e, or f)
- ☐ Self-Employment
- ☐ Placement-New Employer
- ☐ Placement-Previous Employer
- ☐ Employed (Check g)
- ☐ Service Interrupted
- ☐ Post-Employment Service

- ☒ a. Testing required ☒ Yes   ☐ No
- ☐ b. Testing Waived (See Comments)
- ☐ c. Work evaluation required (☐ Yes   ☐ No)
- ☐ d. Pre-vocational training
- ☐ e. Vocational Training
- ☐ f. On-the-job training
- ☐ g. Date employed _____ (See Comments)
- ☐ h. Reopened (See Comments)
- ☐ i. Other (See Comments)

**CLOSED**

- ☐ Referral
- ☐ Other
- ☐ Post-Employment

- ☐ a. Returned to work
- ☐ b. No permanent disability
- ☐ c. Compensation terminated
- ☐ d. No change since last referral
- ☐ e. Did not respond to letters
- ☐ f. Not interested
- ☐ g. Refused services
- ☐ h. Limited vocational abilities
- ☐ i. Poor job market
- ☐ j. Refused to cooperate
- ☐ k. Job offer declined
- ☐ l. Settled case
- ☐ m. Chose retirement
- ☐ n. Transferred (To _____)
- ☐ o. Other (See Comments)

6. Vocational Rehabilitation Counselor *(Complete item 6a when referring to a new VRC)*

| a. Name | b. Professional hours approved for the status *(See item 5)* |
|---|---|
| Diane Wilson | 15 |

c. The VRC's proposed status is ☐ Accepted   ☐ Modified   ☐ Rejected   *(See Comments)*

7. Comments:

I discussed vocational rehabilitation services with Mr. Hewitt and he expressed a strong interest in reviewing his options for returning to work. I am referring the case to Diane Wilson to develop an appropriate vocational plan with Mr. Hewitt, the treating physician, and the previous employer. The counselor should include vocational testing in her evaluation and present a plan for training or selective placement if the previous employer is unable to provide a modified duty assignment. Update work restrictions are needed.

cc: Steven Hewitt
Diane Wilson
State Dept.
Comp File
Rehab File

| 8. OWCP Rehabilitation Specialist | 9. Telephone No. | 10. Date |
|---|---|---|
| SHEILA W. HACKETT | (202) 724-0705 | 1/11/88 |

**Injured Worker's Rehabilitation Status Report**

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

| 1. Injured Worker's Name *(First, Middle, Last)* | 2. Date of Injury | 3. Carrier's No. *(LHWCA)* | 4. OWCP No. |
|---|---|---|---|
| Steven Hewitt | 10/10/86 | | A25-394698 |

**5. Check the injured worker's status and status dates. Check special information when required by the status, for closures and as appropriate. Justify each status change or extension in the comments section.**

| STATUS | | SPECIAL INFORMATION |
|---|---|---|
| From 6/2/89   To 6/30/89 | | |

**REFERRAL**

- ☐ Early (Check a)
- ☐ Other (Check a)
- ☐ Initial Interview Held By OWCP Rehabilitation Specialist (Check d)

- ☐ a. Date compensation file screened _____
- ☐ b. Date OWCP-6 or 13 sent _____
- ☐ c. Date OWCP-10 or 11 sent _____
- ☐ d. Date of initial interview by RS _____
- ☐ e. Other (See Comments)

**ACTIVE**

- ☒ Plan Development (Check a or b and c)
- ☐ Medical Rehabilitation
- ☐ Training (Check d, e, or f)
- ☐ Self-Employment
- ☐ Placement-New Employer
- ☐ Placement-Previous Employer
- ☐ Employed (Check g)
- ☐ Service Interrupted
- ☐ Post-Employment Service

- ☐ a. Testing required (☐ Yes   ☐ No)
- ☐ b. Testing Waived (See Comments)
- ☐ c. Work evaluation required (☐ Yes   ☐ No)
- ☐ d. Pre-vocational training
- ☐ e. Vocational Training
- ☐ f. On-the-job training
- ☐ g. Date employed _____ (See Comments)
- ☐ h. Reopened (See Comments)
- ☐ i. Other (See Comments)

**CLOSED**

- ☐ Referral
- ☐ Other
- ☐ Post-Employment

- ☐ a. Returned to work
- ☐ b. No permanent disability
- ☐ c. Compensation terminated
- ☐ d. No change since last referral
- ☐ e. Did not respond to letters
- ☐ f. Not interested
- ☐ g. Refused services
- ☐ h. Limited vocational abilities
- ☐ i. Poor job market
- ☐ j. Refused to cooperate
- ☐ k. Job offer declined
- ☐ l. Settled case
- ☐ m. Chose retirement
- ☐ n. Transferred (To _____ )
- ☐ o. Other (See Comments)

**6. Vocational Rehabilitation Counselor *(Complete item 6a when referring to a new VRC)***

| a. Name | b. Professional hours approved for the status *(See item 5)* |
|---|---|
| | |

c. The VRC's proposed status is ☐ Accepted   ☐ Modified   ☐ Rejected   *(See Comments)*

**7. Comments:** I spoke to Mr. Hewitt on 6/2/89. He requested clarification of a deadline on implementing vocational rehabilitation services. He indicates that he has been ill with what appears to be walking pneumonia. He has been advised to provide a note from his doctor to the counselor, since this has caused a delay in planning.
I explained to Mr. Hewitt that I would expect a vocational plan to be finalized by the end of June, 1989. Dr. Davidson has advised that Mr. Hewitt is partially disabled and able to work at least four hours per day. If a plan is not finalized by 6/30/89 for training and/or placement, the counselor should provide a final report, indicating jobs suitable and available in his commuting area.

cc: State Dept. Personnel/ Rehab/Comp/ Debbie Moreau/ Steven Hewitt

| 8. OWCP Rehabilitation Specialist | 9. Telephone No. | 10. Date |
|---|---|---|
| Shela W. Hackett | *(202) 724-0705 | 6/5/89 |



Injured Worker's Rehabilitation
Status Report

**U.S. Department of** ___or
Employment Standards Administration
Office of Workers' Compensation Programs

| 1. Injured Worker's Name *(First, Middle, Last)* | 2. Date of Injury | 3. Carrier's No. *(LHWCA)* | 4. OWCP No. |
|---|---|---|---|
| Steven Hewitt | | | A25 – 294698 |

5. Check the injured worker's status and status dates. Check special information when required by the status, for closures and as appropriate. Justify each status change or extension in the comments section.

**STATUS**

From 6/24/89    To 10/15/90

**SPECIAL INFORMATION**

**REFERRAL**

☐ Early (Check a)
☐ Other (Check a)
☐ Initial Interview Held By OWCP Rehabilitation Specialist (Check d)

☐ a. Date compensation file screened _____
☐ b. Date OWCP-6 or 13 sent _____
☐ c. Date OWCP-10 or 11 sent _____
☐ d. Date of initial interview by RS _____
☐ e. Other (See Comments)

**ACTIVE**

☐ Plan Development (Check a or b and c)
☐ Medical Rehabilitation
☒ Training (Check d, e, or f)
☐ Self-Employment
☐ Placement-New Employer
☐ Placement-Previous Employer
☐ Employed (Check g)
☐ Service Interrupted
☐ Post-Employment Service

☐ a. Testing required (☐ Yes    ☐ No)
☐ b. Testing Waived (See Comments)
☐ c. Work evaluation required (☐ Yes    ☐ No)
☐ d. Pre-vocational training
☒ e. Vocational Training
☐ f. On-the-job training
☐ g. Date employed _____ (See Comments)
☐ h. Reopened (See Comments)
☒ i. Other (See Comments)

**CLOSED**

☐ Referral
☐ Other
☐ Post-Employment

☐ a. Returned to work
☐ b. No permanent disability
☐ c. Compensation terminated
☐ d. No change since last referral
☐ e. Did not respond to letters
☐ f. Not interested
☐ g. Refused services
☐ h. Limited vocational abilities

☐ i. Poor job market
☐ j. Refused to cooperate
☐ k. Job offer declined
☐ l. Settled case
☐ m. Chose retirement
☐ n. Transferred (To _____)
☐ o. Other (See Comments)

6. Vocational Rehabilitation Counselor *(Complete item 6a when referring to a new VRC)*

a. Name

b. Professional hours approved for the status *(See item 5)*

c. The VRC's proposed status is ☒ Accepted    ☐ Modified    ☐ Rejected    *(See Comments)*

7. Comments:

I am approving the rehabilitation program for Steven Hewitt at
TESST Electronics from June 24, 1989 to October 15, 1990. He
will be employed at completion as an electronics technician DOT
003.161-014. His salary will be $17,000 to $28,000 per year to
start. The jobs selected will be available with job openings at
completion. Mr. Hewitt understands that he must maintain regular
attendance and average grades for continuation of the program,
under sponsorship by the Department of Labor.

cc: Dept. of State/ Comp/Rehab/ Steven Hewitt/ Deborah Moreau

| 8. OWCP Rehabilitation Specialist | 9. Telephone No. | 10. Date |
|---|---|---|
| Sheila W Hackett | (202) 724-0105 | 7/25/89 |

Copy Distribution: **WHITE** – Carrier/Employer    **GOLDENROD** – Worker/Attorney    **PINK** – Dist. R-File
**CANARY** – Comp. File    **GREEN** – VR Counselor    **BLUE** – Nat. R-File

Form OWCP-3
Rev. March 1984

U.S. GOVERNMENT PRINTING OFFICE:1984-421-499/2012

Injured Worker's Rehabilitation
Status Report

**U.S. Department of** ___or
Employment Standards Administration
Office of Workers' Compensation Programs

| 1. Injured Worker's Name *(First, Middle, Last)* | 2. Date of Injury | 3. Carrier's No. *(LHWCA)* | 4. OWCP No. |
|---|---|---|---|
| Steven Hewitt | 10/16/86 | | A25-294698 |

5. Check the injured worker's status and status dates. Check special information when required by the status, for closures and as appropriate. Justify each status change or extension in the comments section.

| | STATUS | SPECIAL INFORMATION |
|---|---|---|
| | From 09/05/89   To 10/25/90 | |

| | | | |
|---|---|---|---|
| **REFERRAL** | ☐ Early (Check a)<br>☑ Other (Check a)<br>☐ Initial Interview Held By OWCP Rehabilitation Specialist (Check d) | ☐ a. Date compensation file screened _____<br>☐ b. Date OWCP-6 or 13 sent _____<br>☐ c. Date OWCP-10 or 11 sent _____<br>☐ d. Date of initial interview by RS _____<br>☑ e. Other (See Comments) | |
| **ACTIVE** | ☐ Plan Development (Check a or b and c)<br>☐ Medical Rehabilitation<br>☐ Training (Check d, e, or f)<br>☐ Self-Employment<br>☐ Placement-New Employer<br>☐ Placement-Previous Employer<br>☐ Employed (Check g)<br>☐ Service Interrupted<br>☐ Post-Employment Service | ☐ a. Testing required (☐ Yes   ☐ No)<br>☐ b. Testing Waived (See Comments)<br>☐ c. Work evaluation required (☐ Yes   ☐ No)<br>☐ d. Pre-vocational training<br>☐ e. Vocational Training<br>☐ f. On-the-job training<br>☐ g. Date employed _____ (See Comments)<br>☐ h. Reopened (See Comments)<br>☐ i. Other (See Comments) | |
| **CLOSED** | ☐ Referral<br>☐ Other<br>☐ Post-Employment | ☐ a. Returned to work<br>☐ b. No permanent disability<br>☐ c. Compensation terminated<br>☐ d. No change since last referral<br>☐ e. Did not respond to letters<br>☐ f. Not interested<br>☐ g. Refused services<br>☐ h. Limited vocational abilities | ☐ i. Poor job market<br>☐ j. Refused to cooperate<br>☐ k. Job offer declined<br>☐ l. Settled case<br>☐ m.Chose retirement<br>☐ n. Transferred (To _____)<br>☐ o. Other (See Comments) |

6. Vocational Rehabilitation Counselor *(Complete item 6a when referring to a new VRC)*

| a. Name | b. Professional hours approved for the status *(See item 5)* |
|---|---|
| | |

c. The VRC's proposed status is ☐ Accepted   ☐ Modified   ☐ Rejected   *(See Comments)*

7. Comments:

Memo to CE:

I am approving the training program for Mr. Hewitt at TESS Electronics from 07/24/89 to 10/15/90. This plan will enable Mr. Hewitt to earn completion of the 15 month program and enable him to compete for full time technician positions at a salary range of $17,000 to $28,000 per year. The counselor will be providing follow-up counseling and job placement toward the end of training.

Mr. Hewitts' tuition, books, supplies and maintenance of $10.66 per day, (3 times a week) have been approved. The counselor should insure that Mr. Hewitt forwards the maintenance certificates on a 4 week basis. Mr. Hewitt will be required to maintain average grades. The counselor should obtain official transcripts and forward them to the compensation file. The training will lead to a Electronic Technician DOT#003-161-014.   CC: CE, VR, Mr. Hewitt, D. Moreau, State Dept.

| 8. OWCP Rehabilitation Specialist | 9. Telephone No. | 10. Date |
|---|---|---|
| SHEILA W. HACKETT | (202) 724-0705 | 09/05/89 |

Copy Distribution: **WHITE** — Carrier/Employer   **GOLDENROD** — Worker/Attorney   **PINK** — Dist. R-File   Form OWCP-3
**CANARY** — Comp. File   **GREEN** — VR Counselor   **BLUE** — Nat. R-File   Rev. March 1984

5122 Baltimore Avenue
Hyattsville, Maryland 20781

1400 Duke Street
Alexandria, Virginia 22314

TESST ELECTRONICS SCHOOL
ACADEMIC TRANSCRIPT

DATE: **November 8, 1990**

NAME __Steven Hewitt__

ADDRESS __1258 Cronin Drive__

SSN __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__

__Woodbridge, Virginia 22191__

DATE OF BIRTH __July 2, 1955__

PROGRAM OF STUDY: ELECTRONICS AND COMPUTER TECHNOLOGY

| SEMESTER DATES | SEMESTER TITLE | SEMESTER CREDIT HOURS | CLOCK HOURS | FINAL GRADE | GRADE POINT AVERAGE (GPA) | CUMULATIVE GPA | ATTENDANCE |
|---|---|---|---|---|---|---|---|
| 7/24/89 - 10/12/89 | PRACTICAL ELECTRICITY | 7 | 144 | A | 3.75 | | 36/36 |
| 10/16/89 - 01/19/90 | BASIC ELECTRONICS | 7 | 144 | B+ | 3.50 | | 35/36 |
| 01/22/90 - 04/12/90 | VIDEO SYSTEMS & SERVICING | 7 | 144 | B+ | 3.50 | | 34/36 |
| 04/16/90 - 07/19/90 | DIGITAL ELECTRONICS | 7 | 144 | A | 3.75 | | 33/36 |
| 07/23/90 - 10/11/90 | COMPUTER SERVICING | 7 | 144 | A | 3.75 | 3.65 | 33/36 |

GRADUATION DATE: __10/11/90__

| GRADE | | GPA |
|---|---|---|
| A+ | 95-100 | 4.0 |
| A | 90-95 | 3.75 |
| B+ | 85-89 | 3.5 |
| B | 80-84 | 3.0 |
| C+ | 75-79 | 2.5 |
| C | 70-74 | 2.0 |
| D+ | 65-69 | 1.5 |
| D | 60-64 | 1.0 |
| E | BELOW 60 | 0 |

INCOMPLETE = I
WITHDRAWAL = W

TRANSCRIPTS ARE OFFICIAL ONLY WHEN SCHOOL SEAL IS AFFIXED HEREON.

NATTS

Accredited School
National Association of
Trade and Technical Schools

Director

07 1097
FILED

JUN 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit #7



## Quality Career Education Since 1967

December 11, 1990

To Whom It May Concern,

This is to verify Mr. Steven Hewitt graduated from TESST Electronics & Computer Institute with a diploma in Electronics and Computer Technology on October 11, 1990. Mr. Hewitt completed 720 hours of training (35 semester credit hours) of theory and practical laboratory training. While in attendance Steven maintained a 3.65 grade point average and 95% attendance.

Based on Mr. Hewitts performance he should be able to adapt to a variety of electronic areas, installing servicing or repairing. Those areas should include audio, video, digital, computer, medical, security and office equipment as well as serving as a bench technician capable of trouble shooting to the component level.

Steven's instructors indicate he has potential to be an excellent technician if he is given a chance.

If any further information is required please call me at (703) 548-4800.

Sincerely,

Clete E. Mehringer

CEM:clb

NATTS

5122 BALTIMORE AVENUE, HYATTSVILLE, MARYLAND 20781  (301) 864-5750  FAX (301) 779-3189
1400 DUKE STREET, ALEXANDRIA, VIRGINIA 22314  (703) 548-4800  FAX (703) 683-2765

## MT. VERNON ORTHOPEDIC ASSOCIATES, LTD.

8101 HINSON FARM ROAD
SUITE 301
ALEXANDRIA, VIRGINIA 22306

JOHN A. BRUNO, JR., M.D.
STUART L. DAVIDSON, M.D.
MANFREDS MUNTERS, M.D., F.A.C.S.

(703) 765-4321

September 19, 1988

U.S. Dept of Labor
1100 L Street  #9404
Washington, D.C.  20211

RE:  Steven Hewitt
EMP: Dept of State

PROGRESS REPORT

The patient is seen back in follow up.  Over the weekend he had a severe exacerbation
of his pain, having difficulty in getting up out of bed.  Now walking with a cane.
He had severe leg pain but the leg pain has subsided now.  The back pain remains
severe.  He will go home on some Percodan for pain and some Valium as a muscle
relaxant and if not substantially improved in a day or 2 we may consider placing him
in the hospital for more significant conservative treatment of bed rest, traction, PT
and more intense pain medication and neurosurgical re-evaluation.

Sincerely yours,

Stuart L. Davidson, M.D.

SLD/acw
CURRENT STATEMENT ATTACHED
dictated but not read

07 1097
**FILED**

JUN 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit #8

*Rehabilitation Perspectives, Inc.*

P.O. BOX 11432

BURKE, VA 22009

TELEPHONE (703) 912-6960

June 17, 1991

Dr. Stuart Davidson
8101 Hinson Farm Road
#301
Alexandria, VA   22306

Re:  Steven Hewitt
#:   A25-294698

Dear Dr. Davidson:

I received your response regarding the motor vehicle operator position.  I do realize that the driving job will not utilize Mr. Hewitt's electronics skills, however, it is the only physically appropriate job that is currently available.  Once Mr. Hewitt becomes re-employed with the State Department he can then apply for the computer repair positions as they become available.  This driving job affords him the opportunity to return to the work force.  Mr. Hewitt has been unemployed since 10-16-86, the date of his injury.

I would like to bring to your attention the letter from Ms. Anita Brown, which was attached to the position description.  She states that the position as motor vehicle operator has been modified to accommodate the client's current disability.  This position requires only minor bending and lifting (no more than fifty pounds) and would allow for intermittent standing, sitting and walking.  These are the same restrictions that you provided us when you completed Mr. Hewitt's OCWP 5 on 11/28/90.  The only difference is that the driving position is full time.  All of the jobs Mr. Hewitt has recently applied for in the Federal government are full-time positions, therefore, I believe Mr. Hewitt feels that he is able to work an eight hour day at this time.

I would appreciate it if you would once again review the position description along with the letter from Ms. Brown and provide us with your opinion regarding Mr. Hewitt's ability to perform this job from a strictly medical viewpoint.

Thank you for your assistance and I look forward to your response.

Sincerely,

*Debbie Moreau*

Debbie Moreau, CRC, CIRS
Rehabilitation Supervisor

cc:  Regina Mack-Abney
     Anita Brown

07 1097

FILED

JUN 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit # 9

OMB No.: 1215-0103
Expires: 09-30-88

Work Restriction Evaluation

U.S. Department of Labor
Employment Standards Administration
Office of Workers' Compensation Programs

| | |
|---|---|
| **1.** Injured workers' name *(First, middle, last)* | **2.** OWCP No. |

**3.** Check the frequency and number of hours a day the worker is able to do the following specific types of activities.

| ACTIVITY | FREQUENCY | | NUMBER OF HOURS A DAY | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Continuous | Intermittent | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| a. Sitting | | | | | | | ✓ | | | | |
| b. Walking | | ✓ | | | ✓ | | | | | | |
| c. Lifting | ✓ | | | ✓ | | | | | | | |
| d. Bending | | ✓ | | ✓ | | | | | | | |
| e. Squatting | | ✓ | | | | | | | | | |
| f. Climbing | | ✓ | | | | | ✓ | | | | |
| g. Kneeling | | ✓ | | | | | | | | | |
| h. Twisting | | ✓ | | ✓ | | | | | | | |
| i. Standing | ✓ | | | | ✓ | | ✓ | | | | |

**4.** Check the lifting restriction.
☐ 0–10 lbs.   ☐ 10–20 lbs.   ☒ 20–50 lbs.   ☐ 50–75 lbs.   ☐ 75 & above lbs.

**5a.** Hand restrictions?
☒ No   ☐ Yes – *(Check b, c, and d.)*

**5b.** Simple grasping?
☒ Yes   ☐ No

**5c.** Pushing and pulling?   ☐ Yes   ☒ No

**5d.** Fine manipulation?   ☒ Yes   ☐ No

**6.** Can the worker reach or work above the shoulder?   ☒ Yes   ☐ No

**7.** Can the worker use his/her feet to operate foot controls or for repetitive movement?   ☐ Yes   ☒ No

**8.** Can the worker operate a car, truck, crane, tractor, or other type of motor vehicle?   ☒ Yes   ☐ No   *But no heavy equip.*

**9.** Are there cardiac, visual, or hearing limitations?
☒ No   ☐ Yes – *(Describe)*

**10.** Are there restrictions concerning heat, cold, dampness, height, temperature changes, high speed working, or exposure to dust, fumes or gases?   ☐ No   ☒ Yes – *(Describe)*   *Avoid cold + damp*

**11.** Are interpersonal relations effected because of a neuropsychiatric condition?
☒ No   ☐ Yes – Describe *(Ability to give and take supervision, meet deadlines, etc.)*

**12a.** Can the individual work eight hours a day?
☐ Yes   ☒ No – *(Indicate when)* *indeterminate*

**12b.** If not eight hours, how many and when?
*4–6 – now*

**13.** Do you anticipate the worker will need vocational rehabilitation services such as testing, counseling, training, or placement to return to work?   ☒ Yes   ☐ No

*07 1097*

**14.** Has the worker reached maximum improvement?
☐ Yes *(Indicate when)*   ☒ No *(Indicate when)*   *indeterminate*

**15.** Remarks: *(Restrictions from medication or other limitations)*

*FILED*

*JUN 19 2007*

*NANCY MAYER WHITTINGTON, CLERK*
*U.S. DISTRICT COURT*

| | |
|---|---|
| **16.** Name   **STUART L. DAVIDSON, M.D.** | **17.** Signature X |
| **18.** Address   8101 Hinson Farm Rd., Suite 301   Alexandria, Virginia 22306   (703) 765-4821 | **19.** Telephone No.   **20.** Date   5-12-89 |

*Exhibit #10*

ARTMENT OF STATE, U.S.A.
WASHINGTON, D. C. 20520

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

AN EQUAL OPPORTUNITY EMPLOYER

Mr. Steven A. Hewitt
1258 Cronin Drive
Woodbridge, VA 22191

07 1097

**FILED**

JUN 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit # 11

Standard Form 52
Rev. 8/86
U.S. Office of Personnel Management
FPM Chapter 296

# REQUEST FOR PERSONNEL ACTION

**PART A—Requesting Office**    (Also complete Part B, Items 1, 7-22, 32, 33, 36 and 39.)

| | |
|---|---|
| Actions Requested | |
| Return to Duty | **2. Request Number** |
| For Additional Information Call (Name and Telephone Number) | **4. Proposed Effective Date** |
| Debbie Duckett  647-8326 | 08/27/91 |
| Action Requested By (Typed Name, Title, Signature, and Request Date) | 6. Action Authorized By (Typed Name, Title, Signature, and Concurrence Date) |
| Deborah Duckett<br>Management Analyst, A/EX/PMD | Deborah A. Duckett<br>Management Analyst, A/EX/PMD  DAD 8/28/91 |

**PART B—For Preparation of SF 50**    (Use only codes in FPM Supplement 292-1. Show all dates in month-day-year order.)

| Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| Hewitt, Steven A. | 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 | 07-02-55 | 08/27/91 |

| First Action | | Second Action | |
|---|---|---|---|
| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
| 292 | RTD | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| Q3K | 5 CFR, Part 353 | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 14. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | M-00502-00<br>Motor Vehicle Operator |

| Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | WG | 05703 | 06 | 05 | $11.85 | PH |

| 22. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | 220920<br>A/OPR/FMSS/GS<br>Domestic Fleet Mgmt & Operations Branch |

**Employee Data**

| 23. Veterans Preference | | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|
| 1 | 1—None    3—10 Point/Disability    5—10 Point/Other<br>2—5 Point    4—10 Point/Compensable    6—10 Point/Compensable/30% | 1   0—None    2—Conditional<br>1—Permanent    3—Indefinite | 21 | YES   XX NO |
| 27. FEGLI | | 28. Annuitant Indicator | | 29. Pay Rate Determinant |
| B | Waived | 9 | | 0 |
| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | | 33. Part-Time Hours |
| 1 | 05-19-77 | F   F—Full-time    I—Intermittent    J—INT Seasonal<br>P—Part-time    G—PT Seasonal   H—FT On Call<br>O—PT Seasonal   R—PT On Call | | Per Biweekly Pay Period |

**Position Data**

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1   1—Competitive Service    3—SES General<br>2—Excepted Service    4—SES Career Reserved | N   E—Exempt<br>N—Nonexempt | 4519.0-8640 | 7777 |
| 38. Duty Station Code | 39. Duty Station (City—County—State or Overseas Location) | | |
| 110010001 | Washington, DC | | |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| DOG<br>08/91 | WGI DUE<br>CCC | | | FPL — WG-06 |
| 45. Educational Level | 46. Year Degree Attained | 47. Academic Discipline | 48. Functional Class | 49. Citizenship | 50. Vietnam Era Vet | 51. Supervisory Status |
| | | | | 1—USA  8—Other | V—Yes  N—No | |

U.  1097

**PART C—Reviews and Approval**    (Not to be used by requesting office.)

| A. Office/Function | Initials/Signature | Date | D. Office/Function | Initials/Signature | Date |
|---|---|---|---|---|---|
| PER/CSP | | | D. | | |
| PER/CSP | | | E. | | |
| PER/EX/IM | | | F. | | |

Approval: I certify that the information entered on this form is accurate and that the proposed action is in compliance with statutory and regulatory requirements.

Signature

FILED
JUN 19 2007
NANCY MAYER WHITTINGTON CLERK
U.S. DISTRICT COURT

CONTINUED ON REVERSE SIDE

Editions Prior To 4-87 Are Unusable After 9/30/88
NSN 7540-01-246-8893

Exhibit #12



United States Department of State

*Washington, D.C. 20520*

AUG 9 1991

Mr. Steven Hewitt
1258 Cronin Drive
Woodbridge, Virginia 22191

Dear Mr. Hewitt:

The Bureau of Administration is offering you the full-time permanent position of Motor Vehicle Operator at the WG-6 step 5 level with a per annum salary of $24,730.95. This position is located in the General Services Division, Office of Facilities Management and Support Services.

In accordance with medical documentation pertaining to your injury, you are currently disabled from performing certain types of work involving lifting, bending and twisting. The enclosed position description identifies work assignments as well as the physical effort required.

The position of Motor Vehicle Operator is within the physical limitations outlined by your physician, Dr. Stuart Davidson. The office will allow you to stop driving intermittently and to do stretching exercises for your back as specified by Dr. Davidson.

Please sign the appropriate line at the bottom of this letter and return to this office by August 22, 1991. If you have any further questions, please contact Joanne Nelligan of my staff on 202-647-6481.

Sincerely,

Joseph H. McGuire, Chief
Personnel Management Division
Bureau of Administration

Enclosure:
 Position Description

_____          _____
I accept your offer of employment               Date
                                                 8/27/91

_____          _____
I decline your offer of employment              Date

Standard Form 50-B
Rev. 8/88
U.S. Office of Personnel Management
FPM Chapter 296

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|

## FIRST ACTION

| 5-A. Code | 5-B. Nature of Action |
|---|---|
| | RETURN TO DUTY |

| 5-C. Code | 5-D. Legal Authority |
|---|---|

| 5-E. Code | 5-F. Legal Authority |
|---|---|

## SECOND ACTION

| 6-A. Code | 6-B. Nature of Action |
|---|---|

| 6-C. Code | 6-D. Legal Authority |
|---|---|

| 6-E. Code | 6-F. Legal Authority |
|---|---|

**7. FROM: Position Title and Number**

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Salary | 13. Pay Basis |
|---|---|---|---|---|---|

**14. Name and Location of Position's Organization**

**15. TO: Position Title and Number**

| 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|
| WG | | 06 | 05 | $11.85 | PH |

**22. Name and Location of Position's Organization**

## EMPLOYEE DATA

**23. Veteran Preference**

| | 1 - None | 3 -10-Point/Disability | 5 -10-Point/Other |
|---|---|---|---|
| | 2 - 5-Point | 4 -10-Point/Compensable | 6 -10-Point/Compensable/30% |

**24. Tenure**

| | 0 - None | 2 - Conditional |
|---|---|---|
| | 1 - Permanent | 3 - Indefinite |

**25. Agency Use**

**26. Veterans Preference for RIF**
| YES | NO |

**27. FEGLI**

**28. Annuitant Indicator**

**29. Pay Rate Determinant**

**30. Retirement Plan**
CIVIL SERVICE

**31. Service Comp. Date (Leave)**
05-19-77

**32. Work Schedule**

| | I - Intermittent | J - INT Seasonal |
|---|---|---|
| F - Full-time | G - FT Seasonal | H - FT On-Call |
| P - Part-Time | Q - PT Seasonal | R - PT On-Call |

**33. Part-Time Hours Per Biweekly Pay Period**

## POSITION DATA

**34. Position Occupied**

| | 1 - Competitive Service | 3 - SES General |
|---|---|---|
| | 2 - Excepted Service | 4 - SES Career Reserved |

**35. FLSA Category**
| E - Exempt |
| N - Nonexempt |

**36. Appropriation Code**
1110

**37. Bargaining Unit Status**
7777

**38. Duty Station Code**
11 9100 1

**39. Duty Station (City - County - State or Overseas Location)**
WASHINGTON                    DC

| 40. Agency Data | 41. | | 42. SKILL | 43. | 44. |
|---|---|---|---|---|---|

**45. Remarks**

3/24.75   TO REFLECT EXCESS TIME IN NON PAY
STATUS ...

10/17/86   THROUGH   8/26/91

ACTION PROCESSED BY (PERSONNEL) 11:22

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| STD | EDWARD JOSEPH PERKINS |
| **47. Agency Code** | **48. Personnel Office ID** | **49. Approval Date** | DIRECTOR OF PERSONNEL |

**TURN OVER FOR IMPORTANT INFORMATION**

5 - PART    50-314

**1 - Employee Copy - Keep for Future Reference**

Editions Prior To 4/87 Are Unusable After 9/30/88
NSN 7540-01-249-1911

# POSITION DESCRIPTION (Please Read Instructions on the Back)

M-502

| | | | | |
|---|---|---|---|---|
| 2. Subscription | 3. Service | 4. Employing Office Location WASHINGTON, D. C. | 5. Duty Station WASHINGTON, D. C. | 6. OPM Certification |
| ☐ New Establishment ☐ Other Establishment *(Show any positions replaced)* | ☑ Dept ☐ Field | 7. Fair Labor Standards Act ☐ Exempt ☑ Nonexempt | 8. Employment Financial Interest ☐ Yes ☑ No | ☐ Subject to IA Act ☐ Yes ☐ No |

In lieu of M-327, WG-5703-6

| 10. Position Status | 11. Position is | | 13. Competitive Level |
|---|---|---|---|
| ☑ Competitive ☐ Excepted *(Specify)* | ☐ Supervisory ☐ Managerial ☑ Neither | ☐ Critical ☐ Non-critical ☑ Non-sensitive | 5703.00 |
| | | | 14. Agency Use SC:9910 |

| 15. Classified/Graded by | Official Title of Position | Pay Plan | Occupational Code | Grade | Initials | Date |
|---|---|---|---|---|---|---|
| a. U.S. Civil Service Commission | | | | | | |
| b. Department, Agency, or Establishment | Motor Vehicle Operator | WG | 5703 | 06 | SJE | 12/16/80 |
| c. Bureau | MOTOR VEHICLE OPERATOR | WG | 5703 | 6 | SA | |
| d. Field Office | | | | | | |
| e. Recommended by Supervisor or Initiating Office | MOTOR VEHICLE OPERATOR | WG | 5703 | 6 | JM | |

| 16. Organizational Title of Position *(if different from official title)* | 17. Name of Employee *(if vacant, specify)* |
|---|---|
| | |

| 18. Department, Agency, or Establishment | c. Third Subdivision OFFICE OF FACILITIES MANAGEMENT |
|---|---|
| DEPARTMENT OF STATE | & ADMINISTRATIVE SERVICES |
| a. First Subdivision | d. Fourth Subdivision |
| BUREAU OF ADMINISTRATION | GENERAL SERVICES DIVISION |
| b. Second Subdivision OFFICE OF THE DEPUTY ASSISTANT | e. Fifth Subdivision |
| SECRETARY FOR OPERATIONS | MOTOR TRANSPORT BRANCH |

19. Employee Review – This is an accurate description of the major duties and responsibilities of my position

Signature of Employee *(optional)*

**Supervisory Certification.** I certify that this is an accurate statement of the major duties and responsibilities of this position and its organizational relationships, and that the position is necessary to carry out Government functions for which I am responsible. This certification is made with the knowledge that this information is to be used for statutory purposes relating to appointment and payment of public funds, and that false or misleading statements may constitute violations of such statutes or their implementing regulations.

| a. Typed Name and Title of Immediate Supervisor | b. Typed Name and Title of Higher-Level Supervisor or Manager *(optional)* |
|---|---|
| JAMES E. THOMPSON | PHYLLIS A. BUCSKO |
| MOTOR TRANSPORT SPECIALIST | CHIEF, A/EX/FMD |
| Signature          Date 15-26-1980 | Signature          Date 8/27/8 |

**21b. Grading Certification.** I certify that this position has been classified/graded as required by Title 5, U.S. Code, in conformance with standards published by the Civil Service Commission or, if no published standards apply directly, consistently with the most applicable published standards.

| 22. Standards Used in Classifying/Grading Position |
|---|
| WG-5703, Nov. 1968 |

Typed Name and Title of Official Taking Action

J. E. Melton, Director, PER/PPM

Signature          Date
for 12/16/80

**Information for Employees.** The standards and information on their application are available in the personnel office. The classification of the position may be reviewed and corrected by the agency or the Civil Service Commission. Information on classification/job grading appeals, and complaints on exemption from FLSA, is available from the personnel office or the Commission.

| 23. Position Review | Initials | Date | Initials | Date | Initials | Date | Initials | Date | Initials | Date |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Employee *(optional)* | | | | | | | | | | |
| b. Supervisor | | | | | | | | | | |
| c. Classifier | | | | | | | | | | |

24. Remarks

Description of Major Duties and Responsibilities *(see attached)*

☆ GPO : 1977 O – 211-530 (3050)

Optional Form 8 (Rev. 8-77)
U.S. Civil Service Commission, FPM Chap. 295

MOTOR VEHICLE OPERATOR
WG-5703-6

INTRODUCTION

This position is located in the Motor Transport Branch, General
Services Division.  The incumbent is assigned to service in a Motor
Pool.

DUTIES

Operates sedans and trucks (sedan/deliveries, panels and vans)
ranging in size from one-half to one and one-half tons, as required.

Transports passengers which include top-ranking officials in the
Department, Cabinet members, Ambassadors, members of Congress and
Department employees, involved in the conduct of official government
business.

Operates a two-way radio performed in a manner to remain alert while
driving in traffic.

As required, delivers classified messages and documents from the
Department to the White House, Congress and other government
agencies.

Serves as substitute driver for any one of seven principal chauffeurs,
transporting Under Secretaries of State, Ambassadors-at-large, and
foreign dignitaries.

Selects choice of routes based on the size and limitations of the
vehicle and laws restricting the use of some roads.

Makes independent judgements concerning loading and unloading
vehicles, cargo clearances, turning radius, and weights and balance
of both vehicles and cargo.

Transports mail, equipment and/or supplies making regularly
scheduled delivery trips to airports, other government agencies
and embassies.  Signs for classified mail and items of value and
obtains receipts for their delivery and receives cash from the
imprest fund cashier and purchases items from various vendors for
government use, as directed..

Loads and unloads trucks, operating hydraulic lift gates and assures
that cargo is evenly distributed.

Processes vehicles through the D. C. Department of Motor Vehicle
inspection.

Maintains vehicles as follows:  inspects assigned vehicle to assure that it is received in excellent condition, free of scratches, dents, etc., and immediately reports any such findings to the supervisor; cleans the vehicle as often as necessary; inspects vehicle for mechanical defects and reports them as they occur; checks for sufficient gas, oil, water, tire pressure, battery level, etc.; performs minor repairs, as required (changing flat tires, etc.); and maintains daily vehicle reports.

Applies energy efficiency driving techniques.

SKILL AND KNOWLEDGE

-- Knowledge of the operation of Two-way radios and mobile telephones.

-- Knowledge of the Metropolitan and outlying areas, including the location of various government office buildings, etc.

-- Knowledge of traffic regulations and parking restrictions.

-- Knowledge of the operation of the various automotive equipment in the Motor Pool.

-- Must possess a valid State and U.S. Government operator's permit.

-- Must be able to recognize the Department's Principals and certain other government officials.

-- Knowledge and skill of energy efficiency driving requirements.

RESPONSIBILITY AND SUPERVISION

The incumbent is under the general supervision of the Branch Chief and the immediate supervision of the Motor Transport Specialist, who makes assignments and gives instructions. When incumbent serves as chauffeur to the Principals, he/she receives specific instructions from the assigned Principal or his/her office. When operating mail trucks and performing those duties involved, the OC mail supervisor makes assignments, giving specific instructions and spot-checks for promptness and accuracy of mail delivery.

GUIDELINES

Procedures are administratively established for vehicle maintenance and checklists are issued and reviewed daily.  Priorities are pre-established.  The incumbent however, uses judgement in expediting assignments and/or deliveries to avoid undue delay.  Mail distribution points and delivery schedules are pre-established and are updated frequently with changes in organizations and location.

COMPLEXITY

The incumbent assumes primary responsibility for the effective and efficient chauffeuring of the particular top-ranking Department official assigned, other passengers which include foreign dignitaries, cabinet members, members of Congress, Ambassadors, etc. Exceptional dependability, tact, judgement and an outstanding degree of knowledge, skill and ability in the performance of these duties are prerequisites.

SCOPE AND EFFECT

Safe driving practices, dependability and reliability in the performance of duties are essential in the Branch, and for the safety of the passengers.

PERSONAL CONTACTS

Contacts are with co-workers, department offices, top-ranking officials of the Department, other government agencies and foreign dignitaries, embassy employees and various vehicle service and repair facilities.

PURPOSE OF CONTACTS

To exchange documents, official material, repair, etc. for delivery or safekeeping to conduct government business.

PHYSICAL EFFORT

Reaching, bending, turning and moving hands, arms, feet and legs to load and unload trucks and operate hydraulic lift gates. Handling and delivery of classified mail, luggage, baggage and packages require lifting of various weights up to 50 pounds or more. Driving various distances in the vehicle assigned.

WORKING CONDITIONS

Incumbent is required to work outside and is occasionally exposed to inclement weather conditions while loading and unloading vehicles. He/she drives in all types of traffic and weather and is exposed to the possibility of serious accidents.

United States Department of State

*Washington, D.C.  20520*

September 3, 1991

Mr. Stuart Glassman
District Director
Office of Workers' Compensation Programs
1100 L. St. N.W., Rm. 9404
U.S. Department of Labor
Washington, D.C.  20211

Dear Mr. Glassman,

Please be advised that Mr. Steven Hewitt, A25-294698, reported back to duty at the Department of State on August 27, 1991. Enclosed for your records is a copy of Mr. Hewitt's acceptance of our job offer.

Under Title 5, U.S.C. 8115, Mr. Hewitt is still entitled to Loss of Wage Earning Capacity (LWEC) as his previous salary as Elevator Mechanic paid him at a rate of WG-11/5, $31,388. His current salary as Motor Vehicle Operator is $24,730.95. Please adjust Mr. Hewitt's compensation to reflect LWEC payments only.

If you have any questions, or need further information please contact Ms. Anita Brown, of my staff, on 703-516-1664. Thank you for your cooperation in this matter.

Sincerely,

07 1097

Sheldon Yuspeh
Program Manager
Workers' Compensation Program
Office of Employee Relations

**FILED**

JUN 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit #13

United S_____s Department of State

*Washington, D.C. 20520*

OCT 2 4 1991

**MEMORANDUM**

TO:        PER/ER/CSD/CS – Mr. Robert Russum

FROM:      A/EX/PMD – Joseph H. McGuire

SUBJECT:   Request for Removal of Steven A. Hewitt

The Bureau of Administration requests the removal of
Mr. Steven A. Hewitt from our roles, for non-disciplinary
reasons.  Mr. Hewitt occupies position number M-00502-00 Motor
Vehicle Operator in the Fleet Management Office, Office of
Facilities Management and Support Services.  Mr. Hewitt was
injured on the job in 1986, and was subsequently awarded a
claim under the Federal Employees Compensation Act.  He was
carried in leave without pay status from October 17, 1986 until
August 26, 1991.  Approval of the claim provided Mr. Hewitt
with all the rights and privileges provided to injured
employees under the Federal Employees Compensation Act.

Due to his injury Mr. Hewitt was not able to return to his
previous Elevator Mechanic position.  Mr. Hewitt reluctantly
accepted the Motor Vehicle Operator position offered and was
cleared by the Department of Labor to return to duty on August
27, 1991.  On September 16, 1991 he informed his supervisor
that he would not be able to work due the pain he is still
experiencing from the injury sustained in October 1986.
Mr. Hewitt provided medical documentation and requested that he
be placed on leave without pay from September 16, 1991 until
October 28, 1991 when he would be reevaluated by his physician
for fitness for duty.

It is apparent that Mr. Hewitt's availability for regular and
reliable attendance at work is unlikely.  Given the need to
fill the Motor Vehicle position with someone who is able and
available to work, it is requested that appropriate steps be
taken to remove Mr. Hewitt from the Bureau of Administration's
rolls.

07 1097

FILED

JUN 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

*Exhibit #14*

I have discussed this case with Sheldon Yuspeh, the Chief of
the Employment/Disability Programs Division who concurs with
this course of action.

Your immediate attention to this action would be greatly
appreciated.


cc: A/OPR/FMSS/GS/FMO - J. Silva


Clearance:  PER/ER/EPD - S. Yuspeh

United States Department of State

*Washington, D.C. 20520*

NOV 18 1991

Mr. Steven A. Hewitt
1258 Cronin Drive
Woodbridge, VA 22191

Dear Mr. Hewitt:

This is to inform you that the Department of State proposes to remove you from your employment as a Motor Vehicle Operator, WG-6, in the Bureau of Administration, not earlier than thirty (30) calendar days from the date you receive this notice.  This action is being taken for non-disciplinary reasons in order to promote the efficiency of the service in accordance with Chapter 752, Title 5, of the Code of Federal Regulations.

Reason:  Your physical inability to perform the duties of your positions.

Specification:

On October 16, 1986, you sustained a non-surgical back injury while employed as an elevator mechanic in the Bureau of Administration (enclosure 1-2).  You were placed in a leave without pay status from October 17, 1986 to August 27, 1991 (enclosure 3).  During this time you were placed on the long-term compensation rolls of the Department of Labor.  While on leave without pay for 4 1/2 years, you were retrained as an electronic technician and graduated from TESST Electronics and Computer Institute on October 11, 1990 (enclosure 4).

In a letter to Dr. Stuart Davidson, dated June 17, 1991, Ms. Debbie Moreau, Rehabilitation Supervisor, inquired as to your ability to perform the duties of a motor vehicle operator (enclosure 5).  It was noted that while the driving job would not utilize your electronic skills, it was the only physically appropriate job currently available.  Consequently, the Bureau of Administration offered you a full-time permanent position of Motor Vehicle Operator within the physical limitations outlined by Dr. Davidson (enclosure 6).

You returned to work on August 27, 1991, as a Motor Vehicle Operator (enclosures 7-8).  On September 16, 1991, you provided A/EX with medical certification indicating that you were totally incapacitated and unable to perform the duties of your position (enclosure 9).

07 1097

FILED

The Department can not continue to maintain you in a LWOP status and without any indication that you will be able to return to work and physically perform the duties of your position.  We regret having to take this action.  However,

JUN 19 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

*Exhibit #15*

- 2 -

is necessary for the Bureau of Administration to have someone perform the duties of your position if you are unable to do so.  On October 24, 1991, your Executive Office referred the matter to this office for appropriate administrative action (enclosure 10).

You should continue to receive applicable benefits from the Office of Worker's Compensation Programs (OWCP), regardless of my proposal to remove you from your employment with the Department of State.  However, you may file for Disability Retirement under the Civil Service Retirement System.  Any questions you have regarding retirement should be addressed to Mr. Daniel Webber, Chief, Retirement Division, Room 1251, Main State, Telephone (202) 647-9315.  Should you decide to pursue disability retirement under the Civil Service system, you must do so within one year from the date of your separation from the Department.  If the disability retirement is approved, you may not simultaneously receive payments from both the Civil Service Retirement System and from OWCP.

The material relied upon to support the reason for this proposal is enclosed.  If there is anything in this notice or about the proposed removal that you do not understand or wish explained, you may contact Mr. Robert E. Russum, Chief, Conduct, Suitability, and Discipline Division, on (703) 516-1671.  You may answer the notice personally and/or in writing to me and you may submit affidavits in support of your answer.  Your written response should be addressed to the Department of State, Office of Employee Relations, PER/ER, 2201 C Street, N.W., Washington, D.C.  20520.  You will be allowed ten (10) calendar days fromthe date on which you receive this notice to submit your written and/or personal answer.  Should you wish to answer personally, I will hear the response in my office at a time to be determined upon receipt of your request. My telephone number is (703) 516-1657, and I am located in room 431, 1701 N. Fort Meyer Drive, Rosslyn, Virginia (SA-6).

You may be represented by an attorney or other representative whose designation would not creat a conflict-of-interest or conflict-of-position as prohibited by Federal regulations.  As soon as possible after your answer is received or after completion of the ten (10) day period, if your do not answer, you will be issued a written decision on this proposal.

Sincerely,

George F. Haas
Director,
Office of Employee Relations

- 3 -

Enclosures:
1.  Supervisor's Report of Accident dated October 17, 1986.
2.  CA-1 dated October 17, 1986.
3.  Notification of Personnel Action (LWOP) effective October 17, 1986.
4.  Letter from TESST dated December 11, 1990.
5.  Letter from Ms. Moreau to Dr. Davidson dated June 17, 1991.
6.  Letter from Mr. McGuire to Mr. Hewitt dated August 9, 1991.
7.  Notification of Personnel Action (RTD) effective August 27, 1991.
8.  Letter from Mr. Yuspeh to Mr. Glasman dated September 3, 1991.
9.  Medical Certifications dated September 30 and October 9, 1991.
10. Memo dated October 24, 1991, from Mr. McGuire to Mr. Russum.

## HEALTH INSURANCE CLAIM FORM

FORM APPROVED
OMB NO. 0938-0008

**(CHECK APPLICABLE PROGRAM BLOCK BELOW)**

| | MEDICARE (MEDICARE NO.) | | MEDICAID (MEDICAID NO.) | | CHAMPUS (SPONSOR'S SSN) | | CHAMPVA (VA FILE NO.) | | FECA BLACK LUNG (SSN) | X | OTHER (CERTIFICATE SSN) |
|---|---|---|---|---|---|---|---|---|---|---|---|

### PATIENT AND INSURED (SUBSCRIBER) INFORMATION

1. PATIENT'S NAME (LAST NAME, FIRST NAME, MIDDLE INITIAL)
STEVEN A HEWITT

2. PATIENT'S DATE OF BIRTH
07 | 02 | 55

3. INSURED'S NAME (LAST NAME, FIRST NAME, MIDDLE INITIAL)
US DEPARTMENT OF LABOR

4. PATIENT'S ADDRESS (STREET, CITY, STATE, ZIP CODE)
1258 CRONIN DR
WOODBRIDGE, VA 22191

6. PATIENT'S SEX
MALE [X]   FEMALE [ ]

5. INSURED'S ID NO. (FOR PROGRAM CHECKED ABOVE, INCLUDE ALL LETTERS)

PATIENT SSN:

7. PATIENT'S RELATIONSHIP TO INSURED
SELF [X]  SPOUSE [ ]  CHILD [ ]  OTHER [ ]

8. INSURED'S GROUP NO. (OR GROUP NAME OR FECA CLAIM NO.)
EMP: DEPT OF STATE

9. OTHER HEALTH INSURANCE COVERAGE (ENTER NAME OR POLICYHOLDER AND PLAN NAME AND ADDRESS AND POLICY OR MEDICAL ASSISTANCE NUMBER)

10. WAS CONDITION RELATED TO

A. PATIENT'S EMPLOYMENT
YES [X]   NO [ ]

B. ACCIDENT
AUTO [ ]   OTHER [X]

INSURED IS EMPLOYED AND COVERED BY EMPLOYER HEALTH PLAN
ATTN: WORK COMP. DEPT.
1100 L STREET, NW #9404
WASHINGTON, DC 20211

11. TELEPHONE NO.

11.a CHAMPUS SPONSOR'S
STATUS  [ ] ACTIVE DUTY  [ ] DECEASED   BRANCH OF SERVICE
        [ ] RETIRED

12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE (READ BACK BEFORE SIGNING)
I AUTHORIZE THE RELEASE OF ANY MEDICAL INFORMATION NECESSARY TO PROCESS THIS CLAIM I ALSO REQUEST PAYMENT OF GOVERNMENT BENEFITS EITHER TO MYSELF OR TO THE PARTY WHO ACCEPTS ASSIGNMENT BELOW
SIGNED SIGNATURE ON FILE    DATE 09/07/83

13. I AUTHORIZE PAYMENT OF MEDICAL BENEFITS TO UNDERSIGNED PHYSICIAN OR SUPPLIER FOR SERVICE DESCRIBED BELOW
SIGNATURE ON FILE
SIGNED (INSURED OR AUTHORIZED PERSON)

### PHYSICIAN OR SUPPLIER INFORMATION

14. DATE OF:
10/16/86
ILLNESS (FIRST SYMPTOM) OR INJURY (ACCIDENT) OR PREGNANCY (LMP)

15. DATE FIRST CONSULTED YOU FOR THIS CONDITION
10/20/86

16. IF PATIENT HAS HAD SAME OR SIMILAR ILLNESS OR INJURY, GIVE DATES
10/16/86

16.a IF EMERGENCY CHECK HERE

17. DATE PATIENT ABLE TO RETURN TO WORK

18. DATES OF TOTAL DISABILITY
FROM            THROUGH

DATES OF PARTIAL DISABILITY
FROM            THROUGH

19. NAME OF REFERRING PHYSICIAN OR OTHER SOURCE (e.g. PUBLIC HEALTH AGENCY)
REDDING, RICHARD J.

20. FOR SERVICES RELATED TO HOSPITALIZATION GIVE HOSPITALIZATION DATES
ADMITTED            DISCHARGED

21. NAME & ADDRESS OF FACILITY WHERE SERVICES RENDERED (IF OTHER THAN HOME OR OFFICE)

22. WAS LABORATORY WORK PERFORMED OUTSIDE YOUR OFFICE?
YES [ ]  NO [X]   CHARGES

23. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY. RELATE DIAGNOSIS TO PROCEDURE IN COLUMN D BY REFERENCE NUMBERS 1, 2, 3, ETC OR DX CODE

1. 722.10   HNP LUMBAR
2.
3.
4.

B.
EPSDT           YES [ ]   NO [ ]
FAMILY PLANNING YES [ ]   NO [ ]
PRIOR AUTHORIZATION NO.

| 24. | A. DATE OF SERVICE FROM | TO | B. PLACE OF SERVICE | C. PROCEDURE CODE (IDENTIFY) | FULLY DESCRIBE PROCEDURES, MEDICAL SERVICES OR SUPPLIES FURNISHED FOR EACH DATE GIVEN (EXPLAIN UNUSUAL SERVICES OR CIRCUMSTANCES) | D. DIAGNOSIS CODE | E. CHARGES | F. DAYS OR UNITS | G. TOS | H. LEAVE BLANK |
|---|---|---|---|---|---|---|---|---|---|---|
| | 091988 | 091988 | 3 | 90060 | OFFICE VISIT, RE-EXAM, COMP W/REPORT | 1 | 50.00 | 1 | | |

25. SIGNATURE OF PHYSICIAN OR SUPPLIER (INCLUDING DEGREE(S) OR CREDENTIALS) I CERTIFY THAT THE STATEMENTS ON THE REVERSE APPLY TO THIS BILL AND ARE MADE A PART THEREOF)
STUART LANE DAVIDSON, M.D.
09/22/88

26. ACCEPT ASSIGNMENT (GOVERNMENT CLAIMS ONLY) (SEE BACK)
YES [ ]   NO [X]

30. YOUR SOCIAL SECURITY NO.
018443578

27. TOTAL CHARGE
50.00

28. AMOUNT PAID

29. BALANCE DUE

31. PHYSICIAN'S SUPPLIER'S AND/OR GROUP NAME, ADDRESS, CODE AND TELEPHONE NO
MOUNT VERNON ORTHOPEDIC ASSOC
8101 HINSON FARM ROAD 30
ALEXANDRIA, VA 22306

32. YOUR PATIENT'S ACCOUNT NO.
3807

33. YOUR EMPLOYER I.D. NO.
541061024

ID NO.

*PLACE OF SERVICE AND TYPE OF SERVICE (T.O.S.) CODES ON BACK
REMARKS

APPROVED BY AMA COUNCIL ON MEDICAL SERVICE 6/83

FORM HCFA-1500 (1-84) FORM OWCP-1500
FORM CHAMPUS-501 (1-84) FORM RRB-1500
FORM AMA OP-503

07 1097
FILED

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit # 16

3855 Leesburg Pike • Baileys Crossroads, VA 22041

Last ___ First ___ MI

AGE ___ SEX: M ___ DATE OF EXAM(S)

mo. day year

WP ___ H ___ MD ___ OD

Social Security no. ___ marital status S M W D

Outpatient

Inpatient Admit Date

address ___ street ___ Apt ___

ALEX ___ AFIL

NOH ___ DOM

city ___ state ___ zip ___ HMO ___ 00 ___ OWLHP

phone ___ work ___

PROCEDURE ___ CODE ___ CHARGE

LUMBAR SPINE

REFERRING
PHYSICIAN ___ Davidson
please give full name

REFERRED BY
PHYSICIAN ___

Cash ___ Charge(s)

Check ___ Amt. Paid

Charge Card ___ Bal. Due

WHAT PART ARE WE TO SCAN TODAY? ___

MAKE CHECKS PAYABLE TO
NORTHERN VIRGINIA IMAGING ASSOCIATES

PLEASE DESCRIBE YOUR SYMPTOMS RELATING TO THIS MRI:

3855 Leesburg Pike
BAILEYS CROSSROADS, VA 22041
(703) 931-1577
FAX ID # 703-931-1581

WHEN DID THIS CONDITION BEGIN? ___

If your doctor gave you a prescription (written order), please give it to the receptionist so we can review it prior to...

SECOND INSURANCE POLICY HOLDER

SUBSCRIBER NAME

POLICY # ___ GROUP #

CARRIER'S
ADDRESS

WORKERS' COMPENSATION CLAIM # ___ DOI

Employer name and address ___ Carrier's name and address

city ___ state ___ zip ___ city ___ state ___ zip

### ASSIGNMENT / AUTHORIZATION

I authorize the billing agents of The Northern Virginia Center for MRI, hereafter referred to as NVOMRI, to apply for benefits on my behalf for covered services rendered. I certify that the information I have provided pertaining to my insurance coverage is correct. I request that payments from my insurance carrier(s) be made directly to NVOMRI. I also request payment of Government benefits to the party who accepts assignment. I understand I am financially responsible for services rendered that are not covered by insurance or other third party payors. I authorize NVOMRI and/or their billing agent to release any information necessary to process this claim, and permit a copy of this authorization to be used in place of the original. This authorization may be revoked by me at any time upon written notification.

_____          _____
signature of patient or guardian                    date



United States Department of State

*Washington, D.C. 20520*

December 2, 1991

Mr. Steven A. Hewitt
1258 Cronin Drive
Woodbridge, VA  22191

Dear Mr. Hewitt:

Mr. Haas' notice dated November 18, 1991, informed you of a proposal to remove you for non-disciplinary reasons from employment with the Department as a Motor Vehicle Operator, WG-6, in the Bureau of Administration.  This notice provided you ten (10) calendar days from the date of your receipt of the notice to respond to the reason contained therein.  You did not respond.

I have reviewed the available evidence.  I find that the reason and specification contained in Mr. Haas' notice of November 18, 1991, are fully supported by the evidence and warrant your removal to promote the efficiency of the service.  Therefore, it is my decision that you be removed, effective Tuesday, December 31, 1991.

You will continue to receive all applicable benefits from the Office of Workers' Compensation Programs (OWCP), regardless of my decision to remove you from your employment with the Department of State.  However, you may file for Disability Retirement under the Civil Service Retirement System.  Any questions you have regarding retirement should be addressed to Mr. Daniel Webber, Chief, Retirement Division, Room 1251, Main State, telephone (202) 647-9315.  Should you decide to pursue disability retirement under the Civil Service Retirement System, you must do so within one year from the date of your separation from the Department.  If the disability retirement is approved, you may not simultaneously receive payments from both the Civil Service Retirement System and OWCP.

You may appeal this action to the Merit Systems Protection Board no later than twenty (20) calendar days after the effective date of the removal action.  An appeal to the Merit Systems Protection Board should be addressed to:  Chief Appeals Officer, Washington Regional Office; Suite 1109, 5203 Leesburg Pike; Falls Church, Virginia 22041.  A copy of the Board's appeal form is enclosed for your information should you elect to file such an appeal.

Sincerely,

*Kenneth Hunter*
Kenneth Hunter
Deputy Assistant Secretary
for Personnel

Enclosure:
  MSPB Appeal Form.

07 1097

FILED

JUN 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit # 17

ADA information     10:00 AM to 6 PM
800 - 514 - 0301

The executive branch continues
to be covered by title V(s)
of the Rehabilitation Act of 1973

Equal Employment OPPortunity Commisso
Questions - 800 669 - 4000

Presidents Committee on Employment
of People with Disabilities
  202 376 - 6200

US Department of Justice
Civil Rights Division
Disabilities Rights
Section PO Box 66738
Washington DC. 20035 - 6738
~~800 669 - 3362~~

07 1097

**FILED**

JUN 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit #18

U.S. EEOC
1801 L. Street NW
Washington Dc 20507

EXECUTIVE ORDER 13217

Title 11 of the ADA

Pursuant to 28 CFR □ 35.172
Compliance 28 CFR □ 35.173
Title 1 29 CFR Part 1630.2(o)
S. Rep. No. 101-116, 101 Cong 1st Sess
129-130 (1989)

202 275 - 7377

Sec     501
EEOC → 202 663 - 4900

~~Peidre Davis~~
202 647 - 9294
↓
Tom Williams

---

OSC          Special     ~~202 653 - 225~~
Office of ~~General~~ Council
   Vermont Ave.
Goto OPM Office
      202 653 - 2253 ⇐
or →Rehab Center

OSC     Office of Special Council
        1730 M Street
        NW WASH DC.
        202 653 - 2253

202 663 - 4599
Office of Federal Operations
Attorney  Bismark  Myrick

---

E.EO  State Dept.
    Office for Civil Rights Div.
    202 - 647 - 9294
    202 - 647 - 9295

10/4/06

Jacquline  Canton

10/17/06 Talked with Gloria Cunningham   case sent to
Shelia Shelia Clemons  301 - 464 - 2171

Nov.
Oct.
Leaving 24th   1 800 688 - 9889
    Fed info.

talked with 10/10/06
Gloria Cunningham

**U.S. Department of Labor**
**March 19, 1992**

Employment Standards Administration
Office of Workers' Compensation Programs
Washington, D.C. 20210

File Number:

A25-294698

Steven A. Hewitt
1258 Cronin Drive
Woodbridge, Virginia   22191

Dear Mr. Hewitt:

I am writing in reference to your compensation claim filed with this Office.

On August 27, 1991, you returned to work with the US Department of State as a Motor Vehicle Operator.  The position was found to be within the physical limitations outlined by your physician Dr. Stuart Davidson.  You stopped working in this acceptable position on September 16, 1991.  You must provide your detailed reason(s) as to why you stopped working in the position offered.

Your response within thirty (30) day's from the date of this letter is needed.  Failure to respond could effect your claim with this Office.

*Richard Gant*

Richard Gant
Claims Examiner

CC: File

A25-294698

TELEPHONE: (703) 765-4321

MOUNT VERNON
ORTHOPEDIC ASSOCIATES, LTD.

8101 HINSON FARM ROAD
SUITE 301
ALEXANDRIA, VIRGINIA 22306

NAME _Steven Hewitt_

ADDRESS _____ DATE _9/16/92_

℞ To whom it may concern.
Mr. Hewitt stopped working
in the position as a Motor Vehicle
Operator because this activity
severely aggravated his symptoms.
He stopped working at
my recommendation after
a review of his activity
at this position.

*[signature]*

Voluntary formulary permitted          Dispense as written

07 1097

**FILED**

JUN 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit # 19

**FEHB**
Federal Employees
Health Benefits Program

# Notice of Change in Health Benefits Enrollment

## Part A - Identifying Information

| 1. Name *(Last, first, middle initial)* | 2. Date of birth | 3. Social Security Number |
|---|---|---|
| Hewitt, Steven A. | 07-02-55 | 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 |

| 4. Address *(including ZIP Code)* | 5. Payroll Office Number | 6. Enrollment Code Number |
|---|---|---|
| 1258 Cronin Drive Woodbridge, VA 22191 | 19-00-9999 | 311 |

| | 7. SF 2811 Report No. | 8. Date this action becomes effective |
|---|---|---|
| | | 07-07-87 |

Only the item that is checked below affects your enrollment.  Read that item carefully and follow any pertinent instructions.  Keep this form for your records.

## Part B - Termination

|   | Your enrollment terminates on the date in Part A, item 8, above.  However, your coverage is temporarily extended for 31 days after that date. |
|---|---|

*Important Notice:* **You have the right to convert to an individual (nongroup) contract with the carrier of your plan.  You also may have the right to temporarily continue your group coverage.** See Part B - Termination on the back of this form for information about 31-day extension of coverage, conversion, and temporary continuation of coverage.

## Part C - Transfer Out

| X | This enrollment continues but is transferred to the new Payroll Office (or Retirement System) shown below.  See Part C on the back of this form for more information. |
|---|---|

U.S. Department of Labor
Office of Workers' Compensation
Programs
Washington, DC 20211

## Part D - Transfer In

|   | The new Payroll Office (or Retirement System) shown in Part I below has accepted transfer of this enrollment and will continue it. |
|---|---|

### Part E - Reinstatement

|   | Your enrollment has been reinstated effective on the date in Part A, item 8, above. |
|---|---|

## Part F - Change in Name of Enrollee

The name under which this enrollment is carried has been changed to:

| Name | Date of birth |
|---|---|
|  |  |

Address (including ZIP Code) if different from Part A, item 4, above.

## Part G - Change in Enrollment - Survivor Annuitant

Your enrollment has been changed from family coverage to self only.  Your plan will send you a new identification card.  Your new enrollment code number is shown below.
**(Note: This item is completed by Retirement Systems only.)**

**New Enrollment Code Number** ⟶

## Part H - Remarks

SF-2810 processed late due to administrative oversight.

07 1097
**FILED**
JUN 19 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## Part I - Date of Notice

*(Note: Instructions for Employing Offices are on the back of Copy 4 of this form.)*

| Name and address of agency *(including ZIP Code)* | U.S. Department of State A/EX/PMD, Room 3800 2201 C Street, N.W Washington, DC 20520 |
|---|---|

| Signature of authorized agency official  *Deborah A. Duckett*  Deborah A. Duckett, Management Analyst | Date 11/21/91 |
|---|---|

U.S. Office of Personnel Management
FPM Supplement 890-1
NSN 7540-01-232-1234       2810-102

Copy 1 - To Enrollee        Exhibit 4 II 20

Standard Form 2810
Revised January 1990
Previous editions are not usable

**U.S. Department of Labor**

Employment Standards Administration
Office of Workers' Compensation Programs
Division of Federal Employees' Compensation
Room 800
800 North Capitol Street, N.W.
Washington, D.C.  20211



CA1105-0992

File Number: 25-0294698
Employee: STEVEN A. HEWITT
CSA Number:
Date of Birth: 07/02/1955
Social Security Number: 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

I, Steven A. Hewitt II                    , hereby elect:  (check one)

( )  FEDERAL EMPLOYEES' COMPENSATION ACT (FECA) benefits in preference to
any benefits to which I and/or my minor children may be entitled under
either the Civil Service Retirement Act (CSRA) or the Federal Employees'
Retirement System Act (FERS), except for benefits payable by the Thrift
Savings Plan which I can receive concurrently with FECA benefits.

If my election of FECA benefits is retroactive to include a period during
which I received CSRA/FERS benefits, I understand that OWCP will withhold
from my retroactive FECA benefits an amount equal to the OPM benefits
paid, including any lump-sum payment made as part of an alternative
annuity under CSRS, or as part of the death benefit under FERS.

(X)  CIVIL SERVICE RETIREMENT SYSTEM (CSRS) or FEDERAL EMPLOYEES'
RETIREMENT SYSTEM (FERS) benefits in preference to any benefits to which I
and/or my minor children may be entitled under the Federal Employees'
Compensation Act (FECA).

The effective date of my election is: 5/1/95                    .
(Insert a date; for FECA benefits, this date may be any date forward from
the first date of the "period of entitlement" found at the top of the
accompanying letter (CA1102) to the date you sign this form.)

I understand that I am not entitled to receive FECA benefits and CSRS/FERS
benefits concurrently (except for a schedule award).

I have ( ) have not (X) received a lump-sum annuity from the Office of
Personnel Management as part of an alternative annuity under CSRS, or as
part of the death benefit under FERS.

SIGNATURE    Steven a Hewitt

ADDRESS  1258 CRONIN DR.

CITY WoodBRidge        STATE VA  ZIP CODE 22191        DATE 3/6/95

*Working for America's Workforce*

**U.S. Department of Labor**

Employment Standards Administration
Office of Workers' Compensation Programs
Division of Federal Employees' Compensation
Room 800
800 North Capitol Street, N.W.
Washington, D.C. 20211



May 4, 1995

File Number:

              File Number: 25-0294698
              Employee: STEVEN A. HEWITT
              CSA Number:
              Date of Birth: 07/02/1955
              Social Security Number: 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
              Effective Date of Election: 05/01/1995

OFFICE OF PERSONNEL MANAGEMENT
EMPLOYEE SERVICE RECORDS CTR
P.O. BOX 45
BOYERS, PA.    16017

Dear Sir or Madam:

Steven Hewitt has elected to receive benefits provided by the U.S. Civil Service
Retirement Act in lieu of compensation benefits. A copy of the election form is
enclosed for your file.  Please take action as indicated below:

1.   Commence monthly annuity payments.

Sincerely,

LORNA SYED
Claims Examiner

STEVEN  A. HEWITT
1258 CRONIN DRIVE
WOODBRIDGE, VA.   22191

US DEPARTMENT OF STATE
CTP: ANITA A BROWN
PER/ER/EPD ROOM 431 SA6
WASHINGTON DC 20522

*Working for America's Workforce*

CA1107-1083



**United States Department of State**

*Washington, D.C.   20520*

October 2, 1992

Mr. Steven A. Hewitt
1258 Cronin Drive
Woodbridge, Virginia

)

Dear Mr. Hewitt:

I regret the delay in returning your application for disability
retirement which you forwarded to Dorothy Blacker, PER/RET and
which was in turn sent to A/EX/PMD, Debbie Duckett.  Your phone
call this week alerted my staff to the fact that the application
had not been returned to you.

Please be advised that once you were separated from our rolls, your
application for disability retirement has to be submitted directly
to the Office of Personnel Management (OPM).  This application must
be filed within one year following the date of separation.  Given
this time restriction, I encourage to you to submit your
application to OPM without delay.

If your have any questions or need further assistance, do not
hesitate to call me or Patricia A. Johnson on (202) 647-8326.

Cathie P. Roberts

Personnel Management Divison
Bureau of Administration
Department of State

07 1097

**FILED**

JUN 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exh.½.7 # 2)

COPY

Sent copy 12/30/94

File Number: 25-0294698
Employee: STEVEN A. HEWITT
CSA Number:
Date of Birth: 07/02/1955
Social Security Number: 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

I, _Steven A. Hewitt I_____, hereby elect:  (check one)

(X)  FEDERAL EMPLOYEES' COMPENSATION ACT (FECA) benefits in preference to any benefits to which I and/or my minor children may be entitled under either the Civil Service Retirement Act (CSRA) or the Federal Employees' Retirement System Act (FERS), except for benefits payable by the Thrift Savings Plan which I can receive concurrently with FECA benefits.

If my election of FECA benefits is retroactive to include a period during which I received CSRA/FERS benefits, I understand that OWCP will withhold from my retroactive FECA benefits an amount equal to the OPM benefits paid, including any lump-sum payment made as part of an alternative annuity under CSRS, or as part of the death benefit under FERS.

(_)  CIVIL SERVICE RETIREMENT SYSTEM (CSRS) or FEDERAL EMPLOYEES' RETIREMENT SYSTEM (FERS) benefits in preference to any benefits to which I and/or my minor children may be entitled under the Federal Employees' Compensation Act (FECA).

The effective date of my election is: _12/12/94_____.
(Insert a date; for FECA benefits, this date may be any date forward from the first date of the "period of entitlement" found at the top of the accompanying letter (CA1102) to the date you sign this form.)

I understand that I am not entitled to receive FECA benefits and CSRS/FERS benefits concurrently (except for a schedule award).

I have ( ) have not (X) received a lump-sum annuity from the Office of Personnel Management as part of an alternative annuity under CSRS, or as part of the death benefit under FERS.

_Steven a Hewitt_____
SIGNATURE

_1258 Cronin Dr._____
ADDRESS

_Woodbridge  VA.  22191_          _12/26/94____
CITY          STATE  ZIP CODE          DATE

STEVEN HEWITT
PROGRESS REPORT                              6/23/94
U. S. Department of Labor/OWCP
800 N. Capitol Street, N.W., Room 800
Washington, D.C.  20211

The patient is seen back in follow-up. He is still having fairly extreme amounts of discomfort from his episode of misstepping for which he was seen on 6/8/94. It was almost severe enough to require hospitalization but he basically stayed in bed for seven days and now is beginning to get up and walk around although he is using a cane. What

is worrisome about this is in addition to his back and usual left leg pain, he is also experiencing right leg pain and now he is standing with a sciatic scoliosis. He has a markedly positive straight leg raising and I think that he may have caused some further worsening of his degenerative disc disease in the lower lumbar spine.  The patient basically has been considered disabled all of this time and his disability continues. He is 100 percent disabled.  He may, if his severe symptoms persist, be recommended to repeat the MRI scan and if it does show some worsening of the condition, we may give some strong consideration to proceeding with a discectomy. For now he wishes to continue to be treated conservatively. We will allow him to continue with relative rest, increase activities as symptoms allow and pain medication as needed. He has in the past been

allowed to be considered for four to six hours of work per day if he meets the restrictions according to the work restriction evaluation form OWCP-5 but these are fairly severe restrictions and I would doubt whether any sedentary position could be found for him at this time which would allow him to do the work activities without exacerbating his symptoms. For now he remains in this disabled state and I will see him back in follow-up in four weeks time, earlier if his symptoms worsen.  SLD:kbd

AUG 0 8 1994

07 1097

FILED

JUN 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit # 22



**United States**
## Office of
## Personnel Management    Washington, D.C.  20415-0001

CSA 3 401 201

Steven A. Hewitt, I
1258 Cronin Drive
Woodbridge, VA  22191

Dear Mr. Hewitt:

This is in reply to your letter dated December 26, 1996, requesting reconsideration of the
initial decision concerning an overpayment of annuity.

A review of our records shows that the issues involved, including an overpayment, have
been resolved.  No further collection action will be taken with respect to this debt and your
records have been so noted.

Therefore, the matter of your request is moot and no further consideration need be given.
This is the final decision of the Office of Personnel Management.  If you have any
questions regarding your case, please call me at, 202-606-0574.

Sincerely,

Joseph E. Miller

Joseph E. Miller, Jr.
Benefits Specialist
Disability, Reconsideration and Appeals Division

07 1097

## FILED

JUN 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Exhibit # 23

To: Office of Personal Management    !2/26/96

It is with much distress that I am having this letter typed for your review today. On November 11, 1996. I received a letter from the OPM informing me that my Health Benefits enrollment would change. This was done at my request because I had noticed an error on the part of OPM which was in effect not taking the proper amount out of my annuity for my Health Benefits for the enrollment code of 312 which I have always been covered under since the birth of my son. This error was made back on May 2, 1995. when I was turned over to the OPM rolls to receive my annuity. Through the years my son and I have always been covered under the 312 plan. I called GEHA and verified that indeed we were under the Family plan 312 and that this error was on the part of OPM. That is when I called OPM to alert them of this error and to make the proper adjustment of withdraw. I was told that I probably would not be held accountable for the mistake since the error was not on my part.

That is why I am sending you this letter today. Enclosed is a copy of the letter that I received on November 11,1996 informing me that I will have to pay back the overpayment. I am asking you to please reconsider this action, because if this is done my son who is five years old, and I will surely loose our home and will have to move out because of the deduction from my annuity in (4) payments of $231.43. I will not be able to survive on this lowering of my annuity. I am asking you to please grant me a waiver of this $925.75 amount and that this burden be lifted from my shoulders.

I am the only one my son has left to support him after his mother left us when he was only two and a half years old. We have struggled to make it for a very long time now coping with my disability and surviving on what we have. In my life I have always tried to do the right thing and I believe that I did the right thing by informing you of this mistake by being honest, and I pray that you will grant my request of a waiver in this matter so that my son and I will not be put out because of my inability of being able to pay the rent.

Please help me in this matter.

Sincerely,

Steven A Hewitt    Case # CSA34012010
1258 Cronin Dr.
Woodbridge Va. 22191



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P. O. Box 19848
Washington, D.C. 20036

Steven A. Hewitt,
Complainant,

v.

Condoleezza Rice,
Secretary,
Department of State,
Agency.

Appeal No. 0120071212

Agency No. DOS-F-020-07

DECISION

Complainant filed a timely appeal with this Commission from the final agency decision dated December 1, 2006, dismissing his formal complaint of unlawful employment discrimination in violation of Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 *et seq.*

On October 10, 2006, complainant initiated EEO Counselor contact. Informal efforts to resolve his concerns were unsuccessful.

In his formal complaint, complainant claimed that he was subjected to discrimination on the basis of disability when the agency terminated his employment on December 31, 1991.

In its December 1, 2006 final decision, the agency dismissed the complaint on the grounds of untimely EEO Counselor contact.

The record discloses that the alleged discriminatory event occurred on December 31, 1991, but that complainant did not initiate contact with an EEO Counselor until October 10, 2006, which is beyond the forty-five (45) day limitation period. On appeal, complainant has presented no persuasive arguments or evidence warranting an extension of the time limit for initiating EEO Counselor contact. Moreover, the Commission has consistently held that a complainant must act with due diligence in the pursuit of his claim or the doctrine of laches may apply. *See O'Dell v. Department of Health and Human Services*, EEOC Request No. 05901130 (December 27, 1990). The doctrine of laches is an equitable remedy under which an

2                                                     0120071212

individual's failure to pursue diligently a course of action could bar his claim. Complainant waited almost fifteen years before he finally contacted an EEO Counselor.

Accordingly, the agency's final decision dismissing complainant's complaint is AFFIRMED.

## STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:

1.   The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2.   The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision or within twenty (20) calendar days of receipt of another party's timely request for reconsideration. *See* 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. *See* 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. *See* 29 C.F.R. § 1614.604(c).

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0900)

You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the

3                                                    0120071212

national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, filing a civil action will terminate the administrative processing of your complaint.

## RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

_____
Carlton M. Hadden, Director
Office of Federal Operations

APR **2 0** 2007
_____
Date

4                                    0120071212

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.** I certify that this decision was mailed to the following recipients on the date below:

Steven A. Hewitt
P.O.B.401
Cobb Island, MD  20625

Barbara S. Pope, Asst. Secretary EEO
Department of State
2201 C St., NW  Rm. 4216
Washington, DC  20520-7310

APR 2 0 2007
_____
Date

_____
Equal Opportunity Assistant

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
OFFICE OF FEDERAL OPERATIONS
P.O. BOX 19848
WASHINGTON, D.C.  20036

OFFICIAL BUSINESS
Penalty for private use $300

$ 00.39°

2062550401 B004

Reference #: 0120071212
Steven A. Hewitt
P.O.B. 401
Cobb Island, MD  20625

## I (a) PLAINTIFFS

STEVEN A. HEWITT

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

the SE NP

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

## DEFENDANTS

CONDOLEZZA RICE, SECRETARY
DOS,

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE

Case: 1:07-cv-01097
Assigned To : Roberts, Richard W.
Assign. Date : 6/19/2007
Description: Employ. Discrim.

JURY ACTION

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)

☒ U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

### ☐ A. Antitrust

☐ 410 Antitrust

### ☐ B. Personal Injury/ Malpractice

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ☐ C. Administrative Agency Review

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ☐ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

3

☐ **G.  Habeas Corpus/**
**2255**

☐ 530 Habeas Corpus-General
☐ 510 Motion/Vacate Sentence

☐ **H.  Employment**
**Discrimination**

☑ 442 Civil Rights-Employment
(criteria: race, gender/sex,
national origin,
discrimination, disability
age, religion, retaliation)

*(If pro se, select this deck)*

☐ **I.  FOIA/PRIVACY**
**ACT**

☐ 895 Freedom of Information Act
☐ 890 Other Statutory Actions
(if Privacy Act)

*(If pro se, select this deck)*

☐ **J.  Student Loan**

☐ 152 Recovery of Defaulted Student
Loans (excluding veterans)

---

☐ **K.  Labor/ERISA**
**(non-employment)**

☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting &
Disclosure Act
☐ 740 Labor Railway Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

☐ **L.  Other Civil Rights**
**(non-employment)**

☐ 441 Voting (if not Voting Rights
Act)
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights
☐ 445 American w/Disabilities-
Employment
☐ 446 Americans w/Disabilities-
Other

☐ **M.  Contract**

☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment &
Enforcement of Judgment
☐ 153 Recovery of Overpayment of
Veteran's Benefits
☐ 160 Stockholder's Suits
☐ 190 Other Contracts
☐ 195 Contract Product Liability
☐ 196 Franchise

☐ **N.  Three-Judge Court**

☐ 441 Civil Rights-Voting (if Voting
Rights Act)

---

**V.  ORIGIN**

☑ 1 Original
Proceeding
☐ 2 Removed
from State
Court
☐ 3 Remanded from
Appellate Court
☐ 4 Reinstated
or Reopened
☐ 5 Transferred from
another district
(specify)
☐ Multi district
Litigation
☐ 7 Appeal to
District Judge
from Mag.
Judge

---

**VI.  CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 USC 2000

---

**VII.  REQUESTED IN**
**COMPLAINT**

CHECK IF THIS IS A CLASS
☐     ACTION UNDER F.R.C.P. 23

**DEMAND $**

Check YES only if demanded in complaint
**JURY DEMAND:** ☑ YES      ☐ NO

**VIII.  RELATED CASE(S)**
**IF ANY**

(See instruction)

☐ YES  ☑ NO      If yes, please complete related case form.

DATE   6.19.07

SIGNATURE OF ATTORNEY OF RECORD

NCD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT   (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd

