# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Steven A. Hewitt,                          :
13270 Main Avenue,                         :
P.O. Box 401,                              :
Cobb Island, MD 20625,                     :
301-259-2032,                              :
<u>COMPLAINANT</u>                              :
                                           :
      VS.                                   :    CIVIL ACTION NO. <u>07-1097 RWR</u>
                                           :
Condoleezza Rice,                          :
   Secretary,                              :
Department of State,                       :
2201 C Street N.W.                         :
Washington, DC 20520                       :
<u>DEFENDANT</u>                               :

## COMPLAINANT'S MOTION IN OPPOSITION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGEMENT, AND TO REQUEST A MOTION FOR DISCOVERY ON THE DEFENDANT

    **Comes,** now the Plaintiff, Steven A. Hewitt in the above mentioned Civil Action NO. 07-1097 RWR, in response to the request to Dismiss, or in Alternative, for Summary Judgement. The Plaintiff takes issue with many of the statements made in the Defendant's Motion before this Honorable Court. It appears to the Plaintiff that the defendant has no evidence to support his Motion to; DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGEMENT. The Defendant is relying solely on the Plaintiffs evidence to support his Defense along with the many Precedents that I have no availability to review and respond properly.

RECEIVED

NOV 0 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Page 1

## MEMORANDUM OF POINTS AND AUTHORITIES OR FACTUM IN SUPPORT OF THE PLAINTIFFS RIGHT TO ADDRESS A TRIAL BY JURY

MIXED QUESTION OF LAW AND FACT- The Plaintiff contends that [w]hen ... the historical facts are established, the rule of law is undisputed, and then the issue is whether the facts sufficiently satisfy the legal rule. See; **Pullman-Standard v. Swint, 456 U.S. 273, 289 n.19 (1982)**. Mixed questions tend to generally require the consideration of the legal concepts and also the exercise of judgement about the values that animate the legal principles. See; **Boone v. U.S., 944 F.2d 1489, 1492 (9th Cir. 1991)**.

The Defendant states that the Plaintiffs Complaint has a lack of Jurisdiction. General Jurisdiction exist when an out-of -state party has extensive, systematic and continuous dealings with the state is which the court sits. When a court has general jurisdiction over a party, the court has personal jurisdiction over any dispute involving the party. Thus, a court's general jurisdiction power is equivalent to its power based on presence within the state. Proper notice to the Defendant are the most fundamental constitutional prerequisites for a valid judgement. The United States District Courts are the general trial courts of the United States of the United States Federal Court System. Both civil and criminal cases are filed in the District Court, which is a court of both Law and Equity. In 1938, the Federal Rules of Civil Procedure merged the law and equity jurisdictions. Juries were to be used whenever the case would have gone to the common law branch of the judiciary had the distinction between the courts been preserved.

The new Federal Rules of the Civil Procedure, however, precluded such a division of the case. It has been held by the United States Supreme Court that where both equity and law are involved, the jury must first decide the legal issues, followed by a determination of equitable issues by the judge. See; **Beacon Theatres v. Westover, 359 U.S. 500 (1959).** Otherwise, the judge's ruling on the equitable issues would have the effect of collateral estoppel, predetermining the jury's handling of the facts and thus limiting the right to a jury trial on the legal issues, with Prejudice and would be unfair to the Plaintiff without Reasonable Care.

Nonetheless, when a litigant is seeking legal relief is entitled to a jury trial in a civil case where the action is comparable to what would have been a "suit at common law" at the time the Bill of Rights was ratified. See, **Chauffeurs, Teamsters, and Helpers Local No. 391 v. Terry, 494 U.S. 558 (1990).** There are other Federal Trial Courts that have jurisdiction over certain types of cases, but the district also has jurisdiction over most of those types of cases, and the district court is the only one (besides in a criminal case) where a trial can be to a jury instead of just a judge.( No disrespect to the Honorable and Distinguished Judge Richard W. Roberts is meant by that statement).

# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## CODE OF FEDERAL REGULATIONS
## FACTS OF LAW

- The following Facts of Law are listed in the same order as in the originally filed Complaint. See; (COA) <u>Cause of Action</u> following the pages of <u>FACTS OF LAW</u> by Number & Code.

1)  **§1614.102 Agency Program Rules**.

    **(a)** Each agency shall maintain a continuing affirmative program to promote equal opportunity and to identify and eliminate discriminatory practices and policies. In support of this program, the agency shall:

    **(8)**Make reasonable accommodation to the known physical or mental limitations of qualified applicants and employees with handicaps unless the accommodation would impose an undue hardship on the operation of the agency's program;

2)  **(12)**Provide the maximum feasible opportunity to employees to enhance their skills through on-the-job training, work-study programs and other training measures so that they may perform at their highest potential and advance in accordance with their abilities;

3)  **(b)** In order to implement its program, each agency shall:

    **(1)**Develop the plans, procedures and regulations necessary to carry out its program;

    **(4)** Designate a Director of Equal Employment Opportunity (EEO Director), EEO Officer(s), and such Special Emphasis Program Managers (e.g., People With Disabilities Program, Federal Women's Program and Hispanic Employment Program), clerical and administrative support as may be

necessary to carry out the functions described in this part in all organizational units of the agency and at all agency installations. The EEO Director shall be under the immediate supervision of the agency head.

(6) Ensure that full cooperation is provided by all agency employees to EEO Counselors and agency EEO personnel in the processing and resolution of pre-complaint matters and complaints within an agency and that full cooperation is provided to the Commission in the course of appeals, including granting the Commission routine access to personnel records of the agency when required in connection with an investigation; and

(c) Under each agency program, the EEO Director shall be responsible for:

(4) Providing for counseling of aggrieved individuals and for the receipt and processing of individual and class complaints of discrimination; and

(5) Assuring that individual complaints are fairly and thoroughly investigated and that final action is taken in a timely manner in accordance with this part.

4)   **1614.105 Pre-Complaint Processing**

(a)Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.

5)   **(1)** An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action.

6)   **(2)** The agency or the Commission shall extend the 45-day time limit in paragraph:

**(a)(1)** of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

7)   **(b)(1)** At the initial counseling session, Counselors must advise individuals in writing of their rights and responsibilities, including the right to request a hearing or an immediate final decision after an investigation by the agency in accordance with 1614.108(f), election rights pursuant to 1614.301 and 1614.302, the right to file a notice of intent to sue pursuant to 1614.201(a) and a lawsuit under the ADEA instead of an administrative complaint of age discrimination under this part, the duty to mitigate damages, administrative and court time frames, and that only the claims raised in pre-complaint counseling (or issues or claims like or related to issues or claims raised in pre-complaint counseling) may be alleged in a subsequent complaint filed with the agency.\*\*\*

Page 3

8)     **(d)** Unless the aggrieved person agrees to a longer counseling period under paragraph (e) of this section, or the aggrieved person chooses an alternative dispute resolution procedure in accordance with paragraph (b)(2) of this section, the Counselor shall conduct the final interview with the aggrieved person within 30 days of the date the aggrieved person contacted the agency's EEO office to request counseling.

9)     **§1614.106 Individual Complaints**

**(a)** A complaint must be filed with the agency that allegedly discriminated against the complainant.

**(b)** A complaint must be filed within 15 days of receipt of the notice required by 1614.105(d), (e) or (f).

**(e)** Originally stated (d). The agency shall acknowledge receipt of a complaint or an amendment to a complaint in writing and inform the complainant of the date on which the complaint or amendment was filed. The agency shall advise the complainant in the acknowledgment of the EEOC office and its address where a request for a hearing shall be sent. Such acknowledgment shall also advise the complainant that:

**(1)** The complainant has the right to appeal the final action on or dismissal of a complaint; and

**(2)** The agency is required to conduct an impartial and appropriate investigation of the complaint within 180 days of the filing of the complaint unless the parties agree in writing to extend the time period. When a complaint has been amended, the agency shall complete its investigation within the earlier of 180 days after the last amendment to the complaint or 360 days after the filing of the original

complaint, except that the complainant may request a hearing from an administrative judge on the consolidated complaints any time after 180 days from the date of the first filed complaint.

10) **§1614.109 Hearings**

(a) When a complainant requests a hearing, the Commission shall appoint an administrative judge to conduct a hearing in accordance with this section. Upon appointment, the administrative judge shall assume full responsibility for the adjudication of the complaint, including overseeing the development of the record. Any hearing will be conducted by an administrative judge or hearing examiner with appropriate security clearances.

11) **§1614.203(a)(1)(i)(ii)(iii)(2)(i)(3)(4)(6)(b)(2)(ii) Rehabilitation Act.**

(a)(1) *Individual with handicap(s)* is defined for this section as one who:

(i) Has a physical or mental impairment which substantially limits one or more of such person's major life activities;

(ii) Has a record of such an impairment; or

(iii) Is regarded as having such an impairment.

(2) *Physical or mental impairment* means:

(i) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: Neurological, musculoskeletal, special sense organs, cardiovascular, reproductive, digestive, respiratory, genitourinary, hemic and lymphatic, skin, and endocrine; or

**(3)** *Major life activities* means functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

**(4)** *Has a record of such an impairment* means has a history of, or has been classified (or mis-classified) as having, a mental or physical impairment that substantially limits one or more major life activities.

**(6)** *Qualified individual with handicaps* means with respect to employment, an individual with handicaps who, with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others and who, depending upon the type of appointing authority being used:

**(b)** The Federal Government shall become a model employer of individuals with handicaps. Agencies shall give full consideration to the hiring, placement, and advancement of qualified individuals with mental and physical handicaps. An agency shall not discriminate against a qualified individual with physical or mental handicaps.

**(2)** Reasonable accommodation may include, but shall not be limited to:

**(ii)** Job restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices, appropriate adjustment or modification of examinations, the provision of readers and interpreters, and other similar actions.

12) **1630.4 Discrimination Prohibited**

It is unlawful for a covered entity to discriminate on the basis of disability against a qualified individual with a disability in regard to:

(a) Recruitment, advertising, and job application procedures;

(b) Hiring, upgrading, promotion, award of tenure, demotion, transfer, layoff, termination, right of return from layoff, and rehiring;

(c) Rates of pay or any other form of compensation and changes in compensation;

(d) Job assignments, job classifications, organizational structures, position descriptions, lines of progression, and seniority lists;

(e) Leaves of absence, sick leave, or any other leave;

13) **Regulations Concerning FSEEO [[ Page 37654]]**

Part 1614 already provides that regulatory time limits ``are subject to waiver, estoppel and equitable tolling.'' 29 CFR Sec. 1614.604(c). Most commenters agreed with the Commission's proposal that the Office of Federal Operations be empowered to impose sanctions or otherwise take appropriate action regarding any party who fails, without good cause shown, to comply with appellate procedures or to respond fully and timely to a Commission request for information. Some commenters were concerned that this provision could unfairly impact unrepresented complainants. To the extent an unrepresented complainant fails to comply due to mistake, lack of knowledge, or misunderstanding, the Commission will take such factors into consideration when determining whether good cause has been shown.

Page 7

# CAUSES OF ACTION

## 1)    §1614.102(a)(8)Agency Program Rules

- Under this Rule, The Department of State made absolutely no accommodation for my disability, which at the time was a simple lowering of my lifting requirements under my job description from 75 to 50 pounds in order to get me back to work. My doctor was going to re-evaluate my condition in 2-4 weeks after returning to work to see if any further restrictions where necessary. This was in direct violation of my rights of being able to retain my position, as was noted in my original Pleadings.

## 2)    §1614.102(a)(12)

- The Department of State after denying me my rights to retain my Elevator Adjuster career, told me that testing would be done, to evaluate my abilities. The (DOS) paid for my retraining at an accredited Computer School, graduating with a 3.65 GPA. Upon graduating, they offered me a janitorial inspectors job, then a job as a sound recorder, none of which afforded me my right to enhance my skills that I was trained for under this rule, or to have the ability of advancement to my highest potential according to my skills. As well as my grade retention rights to be placed in a job of equal or higher grade than my previous job and pay schedule, see **§536.104(3)(4)** I turned down the next offer of a Shuttle Bus driver. I explained that none of these jobs had anything to do with my training. I was then told to come in for a meeting.

When I arrived, I was threatened by this man, I was told that if I did not take this job I would be down graded to a grade WG-6 with the OWCP and that would be the pay I would receive through OWCP. From WG-11,5 to WG-6.

**3)** **§1614.102(b)(4)(6)(c)(4)(5)**

"Original complaint error Stated (b)(3)(5)"

- Part 1614 Federal Sector Equal Employment Opportunity **(b)(4)** states that an EEO officer was to be designated to me, (e.g. People With Disabilities Program) clerical support as may be necessary to carry out the functions described in this part in all organizational units of the agency and all agency installations which shall be under the supervision of the agency head. No attempt was made to accomplish this rule by the EEO. I called Cathy Parrot in OPM and informed her of how I was being treated. I also went to my Congressmen James Moran and told him that I was being discriminated against and he contacted the agency and this alone should have triggered an alert that my rights were being violated and yet still nothing was done to help me.

- **(b)(6)** This Rule Ensures that full cooperation is provided by all agency employees to EEO Counselors and agency personnel and resolution in matters of complaints within the agency with full cooperation. At no time was a counselor made available to me at the initial time of the grievance.

- **(c)(4)(5)** Upon further investigation of my evidence, I now realize that indeed Ms. Blacker works with the Retirement Division, but it was Ms. Blacker's number that was given to me by Cathy Parrot in June 1991, when I asked for her help in putting me into a job that I was trained for.

Ms. Blacker told me to go to my Congressmen and to file a grievance of Discrimination. I did and received a letter from Congressmen Moran on August 23, 1991 that they were going to look into the matter for me. I got a response from his office on October 3rd, 1991 stating that his office had contacted the State Department concerning my grievance.

**4)** **§1614.105(a)Pre-Complaint Processing**

- I had contacted the Office of Personnel Cathy Parrot and the person she told me worked in the EEO, Ms. Blacker. It was not my fault that I was given misinformation and does not negate the fact that I was trying to get help. There is no reason why I would be wanting to call the Retirement Division after going through Computer College and trying my best to get back to work.

**5)** **(1)**

- I was never informed of my right to go to the EEO and file a complaint until I saw a report on the television that related almost exactly like my case. It was in the middle part of October 2006 and when I started finding that what the Department of State had done to me was unlawful. I contacted the EEOC on 10/4/06 and explained what had been done to me and the woman I spoke with asked me if a EEO counselor had ever been assigned to me, which I answered No. She told me that I needed to contact the Departments Office of EEO. I told her that I never even knew that an EEO office within the Department existed. I told her that I went straight to the office of personnel believing that was were I would raise my complaint. She told me that they should have advised me of this. She told me to contact them immediately and they would assign me a counselor if one had never been assigned before.

I contacted the Departments EEO on 10/4/06 the same day and told my findings of Discrimination to the gentlemen whom answered the phone. He told me that I needed to talk with Jacqueline Canton to please hold. I was then transferred to her voice mail and asked her to call me back. She never did. I called back on 10/10/06 and asked why Ms. Canton had not returned my call? I was transferred to a Ms. Gloria Cunningham who told me that my case had just been assigned to Ms. Sheila Clemons and that she would be my counselor. Ms. Clemons told me that she had just got my case and she needed to review my case and she would call me back and we would set up a time to meet. She called me on 10/17/06 and we arranged to meet on 10/19/06 and discuss my complaint.

6)    (2)(a)(1)

● See in the upper right corner ATTACHMENT 3.This official document dated November 6, 2006. Under SUBJECT: It states: Notice of Right to File a Discrimination Complaint: Then on line 1. It states that I was removed based on my physical inability to perform the duties of my position. Then on line 3. It states: "Because the matter has not been resolved, you are now entitled to file a formal Discrimination complaint based on race, color, religion, sex, national origin, disability, age reprisal and/or sexual orientation". It is therefore by the statements made hereto that I am within my time limits and this official document stands Prima facie, in determining the statutes *" RES IPSA LOQUITUR"*. See Prosser & Keeton, Torts 243-244 (5th ed. 1984).

Page 11

7)    (b)(1)

- Under this Rule, I had the Right to request a hearing and that it was my responsibility to put it in writing under 29 CFR Sec. 1614.108(f) to which in the originally filed Formal Complaint I did exactly that. But my right to that Hearing was never even addressed and I was denied my Legal and Civil Rights to that hearing. In the letter from the EEOC dated 4/20/07 on page 2 under COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0900). I am within my rights to file a Civil Action, and on page 3 under RIGHT TO REQUEST COUNSEL (Z1199). The Plaintiff has the right to request counsel.

8)    (d)

- All of these conditions or requirements were met by the aggrieved and notified the (DOS) of his intent to file further notice of appeal to the EEOC with a Certificate of Service.

9)    §1614.106(a)(b)(e) Individual Complaints

- Here again this requirement was met by the Complainant and the evidence will show that this is true.

  (1)(2)

- I dare say that there was not much of an investigation. If the EEO and EEOC would have launched a complete inquiry into what unfolded before I was retrained they would have seen that the (DOS) had erred by not making accommodations for me as an Elevator Adjustor WG-11 step 5 as is described under Federal Laws Prohibiting Job Discrimination of the EEO. That there was no reason to send me to be retrained because it was illegal Transfer me to another position under these Rules of the EEOC §1614.108(a)(b)(c)(d)(e)(f)(g).

**10)    §1614.109(a) Hearings**

- Under this rule, even after I defined my request in writing for a hearing before an administrative judge, to show by factual record  which is one that allows a reasonable fact finder to draw conclusions  as to whether discrimination occurred pursuant to rule·§1614.108.

**11)    §1614.203(a)(1)(i)(ii)(iii)(2)(i)(3)(4)(6)(b)(2)(ii) Rehabilitation Act**

**(a)(1)(i)(ii)(iii)(2)(i) Definitions**

- The evidence already presented that the US Attorney claims to be alleged, is Fact. The Complainant has 4 Herniated Disc with Damage to the Sciatic nerves that cause the complainant to loose control of his legs because of numbness in the legs which has throughout the years has progressively gotten much worse as the disc continue to degenerate all caused by the job related injury. A subpoena will be ordered for my doctor, Stuart L. Davidson, of 24 years now to testify to the severity of my Disability and how it has worsened through out time and the constant pain that exasperates my daily life.

  **(3)(4)**

- Under this Rule with all the Documentation of my medical History and my Doctors Testimony there is no doubt the substantial damage and limitations I have in my life and the inability to now do the most basic needs of life without great pain in my efforts to have any kind of normal life.

  **(6)**

- At the time of my accident and the time that I should have been returned with reasonable accommodation being made in my Elevator Adjuster Job, I would have had the chance to continue in my job that I had loved for so many years.

Page 13

Just as was when incident had first occurred in 1983 when I returned to duty after my rehabilitation. But instead, the (DOS) paid for me to be retrained to be a Computer, Electronics Technician DOT#003-161-014. Then made absolutely no attempt to place me in the position promised me as is noted in Exhibit #6 of the evidence already on file. This was a "Willful Breach of Promise"and "Negligence" due to the lack of due diligence or care on the part of the (DOS). By assigning me to a job that was damaging to my health and could have been damaging to the health of others that I was transporting, while the (DOS) knew full well that I was taking a Narcotic Drug called Percocet 10/650 for the pain in having to sit while driving and for my muscle spasms Valium 10 mg's See Exhibit #8. This is not only illegal for the Federal Government to do, but for Virginia State Laws as well, in driving while under these drugs for the exasperating pain I experienced by having to drive. See Exhibit #12 page 3 that explains my PHYSICAL EFFORT & WORKING CONDITIONS.

**(B)**

- As the evidence shows that the DOS failed miserably by first unlawfully changing my position from an Elevator Adjuster and then sending me to school at the expense of the government to learn Computer Electronics and assigning me to be a Shuttle Bus Driver. After attending Computer Electronics schooling and graduating with a 95% attendance and a 3.65 GPA as is shown in my transcripts in Exhibit #7.

Page 14

**(2)(ii)**

- The evidence shows that my job was not abolished in Exhibit #5 dated 01/19/90 and that the (DOS) did not tell the truth when they said that my job had been abolished and I was going to have to be retrained to do something else. This being in violation of the Code of Federal Regulations in being reassigned without reasonable accommodation being offered.

**12) Sec. 1630.4(a)(b)(c)(d)(e) Discrimination Prohibited**

- **(a)(b)(c)**

  As the evidence shows Mr. Hewitt was downgraded to a WG-6, even after coming into the Federal Service in March of 1975, at a grade 8 level because of my skills and abilities and was recommended for my grade 11, after only 10 months in the government by Mr. Carl Ross my supervisor. The evidence shows in Exhibit #15, that I was fired for: <u>NON-DISCIPLINARY REASONS</u> . Exhibit #2 Standard Form 50-B, it states in Block 5-B <u>TERMINATION-INVOLUNTARY</u>, AND IN Block 45.Remarks: <u>PHYSICAL INABILITY TO PERFORM THE DUTIES OF POSITION</u> . Disability Discrimination cannot be spelled out any better than that. It gives new meaning to the word <u>"RES IPSA LOQUITUR"</u> See Prosser & Keeton, Torts 234-244 (5th ed. 1984).

Page 15

**13) Regulations Concerning Federal Sector Equal Employment Opportunity Under Appeals [[ Page 37654]]**

- Part 1614 already provides that regulatory time limits ``are subject to waiver, estoppel and equitable tolling.'' 29 CFR Sec. 1614.604(c)Some commenters were concerned that this provision could unfairly impact unrepresented complainants. To the extent an unrepresented complainant fails to comply due to mistake, lack of knowledge, or misunderstanding, the Commission will take such factors into consideration when determining whether good cause has been shown. By a preponderance of the evidence presented, many factors of the aforementioned; Due to Mistake, Lack of Knowledge, and Misunderstanding have been shown. I am praying that this Honorable U.S. District Court of the District of Columbia Grant my Motion for a Court Appointed Counsel and my Motion for Leave to File Notice Pleadings In Order To Meet The Civil Procedure Requirements also be Granted. If the Defendant has any evidence that shall prove anything in my Pleadings to be contrary to what has been provided by the Plaintiff, I would ask that this Honorable Court Move that Discovery be ordered upon the Defendant as a matter of Law and Moral Fairness.

## **LEGAL DEFINITIONS AND STANDARDS**

**Cause of Action;** In the law, a cause of action is a recognized kind of legal claim that a plaintiff pleads or alleges in a complaint to start a lawsuit. Examples are: breach of contract; torts such as injury, fraud, slander, suits at equity. "Cause of Action" encompasses both the legal theory of what legal wrong the plaintiff claims to have suffered, and the remedy, which is what a court is allowed to order the defendant to do to compensate the plaintiff for that wrong. For the cause of action of negligence, for example, the elements are (existence of a duty), breach (of that duty), causation (by that breach), and damages (incurred by the plaintiff).

**Negligence;** The quality or state of being negligent; lack of due diligence or care; omission of duty; inattention; heedlessness; disregard.

**Regulation;** A regulation (as a legal) term is a rule created by an administrative agency or body that interprets the statutes setting out the agency's purpose and powers, or the circumstances of applying the statute. A regulation is a form of secondary legislation which is used to implement a primary piece of legislation appropriately, or to take account of particular circumstances or factors emerging during the gradual implementation of, or during the period of, a primary piece of legislation.

**Discrimination;** Unfair treatment of a person or group on the basis of prejudice because of race, gender, sexual orientation, religion, preference, disability.

Page 17

## **CONCLUSION OF CAUSE OF ACTION**

1). Under Rule 56(d) of the FRCP. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

2). Under Rule 56(e) of the FRCP. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

3). Under Rule 56(f) of the FRCP. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

4). It is the position of the Plaintiff that I have met my "Burden of Going Forward" in this case by means that simply refers to the sequence of events with proof by official Documents, Memoranda, and Notations taken during the process of proving Discrimination.

Page 18

5). The U.S. Attorney has not presented one mere scintilla of evidence that would support his request of a Dismissal of my case or in the case of Summary Judgement, the plaintiff has provided factual proof of why this case should be set to go to Trial before a jury. Therefore the Defendant should be Ordered to provide Discovery to submit his claims. As a plaintiff without counsel representation, I am not privy to the same privilege that opposing counsel has in the finding of precedents to justify my position and am Humbly Praying that this Honorable Court will Grant my Motion for appointed counsel before any rulings are made.

I, Steven A. Hewitt, Plaintiff in this case before the Honorable Judge Richard W. Roberts, Case No.07-1097 RWR do solemnly swear that everything in this Motion in Opposition to Dismiss or, in the Alternative, For Summary Judgement is valid and true to the best of my knowledge.

Date; 11/5/07                          Respectfully,
                                       Steven A. Hewitt


                                       _Steven a. Hewitt_

                                       P.O. Box 401
                                       Cobb Island, MD. 20625
                                       301-259-2032

# NOTICE OF ANNUITY ADJUSTMENT

This notice informs you of a change in the amount of your payments. Please read the back of the notice. If you have questions, call us or write to the address shown below.

| | GROSS MONTHLY ANNUITY | MONTHLY HEALTH BENEFITS | MONTHLY MEDICARE | OTHER DEDUCTIONS OR ADDITIONS* | | | | NET MONTHLY PAYMENT | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | CODE | AMOUNT | CODE | AMOUNT | | |
| OLD STATUS | 1494.00 | -163.85 | | | | | | 1330.15 | YOUR PAYMENT BEFORE ADJUSTMENT |
| NEW STATUS | 1543.00 | -163.85 | | 31 | -3.00 | | | 1376.15 | YOUR PAYMENT AFTER ADJUSTMENT |

*SEE BACK FOR CODES FOR OTHER DEDUCTIONS OR ADDITIONS

**UNITED STATES OFFICE OF PERSONNEL MANAGEMENT**
**RETIREMENT OPERATIONS CENTER**
**PO BOX 45**
**BOYERS PA 16017-0045**

YOUR PAYMENT DATED: 01/02/2007

REFER TO THIS NUMBER WHENEVER YOU CONTACT OPM

**CLAIM NUMBER**

CSA 3 401201 0

Reason for adjustment.    *You may use this notice as proof of your current rate of annuity.*

WE ARE WITHHOLDING FEDERAL INCOME TAX FROM YOUR
ANNUITY. YOU MAY STOP THE WITHHOLDING OR CHANGE
THE AMOUNT WITHHELD AT ANY TIME BY CALLING OUR
TOLL-FREE NUMBER: 1-888-767-6738. CUSTOMERS
WITHIN THE LOCAL WASHINGTON, D.C., CALLING AREA
MUST DIAL 202-606-0500. CONTACT THE INTERNAL REVENUE
SERVICE FOR INFORMATION ABOUT THE AMOUNT YOU NEED
TO HAVE WITHHELD. YOU COULD INCUR PENALTIES IF
YOU DO NOT HAVE ENOUGH WITHHELD.

YOUR NEW GROSS MONTHLY ANNUITY REFLECTS THE 3.3%
COST-OF-LIVING ADJUSTMENT. BY LAW, THE INCREASE IS
ROUNDED DOWN TO THE NEXT WHOLE DOLLAR.

THE NET AMOUNT OF YOUR FEBRUARY 2007 PAYMENT WILL
REFLECT THE CHANGE IN HEALTH INSURANCE PREMIUMS AND
ANY OPEN SEASON CHANGE YOU MAY HAVE MADE.

180796

Exhibit #1

Standard Form 50-B
Rev. 8/88
U.S. Office of Personnel Management
FPM Chapter 296

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| HEWITT, STEVEN A | 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 | 07-02-55 | 12-31-91 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
| 356 | TERMINATION – INVOLUNTARY | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| VWP | 5 U.S.C. 7513 | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| M-00502-00 MOTOR VEHICLE OPERATOR | |

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| WG | 05703 | 06 | 05 | $1 | | | | | | | |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| 220920 FLEET MGMT & OPERATIONS BR DIVISION | |

Block 30 - REASON(S) FOR TERMINATION: PHYSICAL INABILITY TO PERFORM THE DUTIES OF POSITION.

Block 26 - FORWARDING ADDRESS   MR. STEVEN A HEWITT
1258 CRONIN DR

ACTION PROCESSED BY (PER1HLB) 15:26

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | 50. Signature/Authentication and Title of Approving Official |
|---|---|---|---|
| 1900 | 2951 | | EDWARD JOSEPH PERKINS |
| | | | DIRECTOR OF PERSONNEL |

TURN OVER FOR IMPORTANT INFORMATION
5 - PART   50-314

1 - Employee Copy - Keep for Future Reference

Editions Prior to 4/87 Are Unusable After 9/30/88
NSN 7540-01-249-1911

**General Services Administration**
**National Capital Region**
**Washington, DC 20407**

Dear Mr. Hewitt:

Effective April 1, 1986, the General Services Administration (GSA), National Capital Region (NCR) will delegate to the Department of State the responsibilities for operation, maintenance, repair, alteration, and security of the State Building.

Implementation of this Transfer of Function has resulted in your position being positively identified for transfer to the gaining competitive area. Recently imposed budget and staffing reductions have made it necessary to transfer these positions encumbered. Therefore, since your position has been identified with the transferred function, you will be required to transfer with it.

An employee who refuses to accompany a transfer of function may be separated through adverse action procedures (5 CFR Part 752). Further, an employee who declines to move with their function and is separated by adverse action procedures will not have re-employment priority rights.

If you decide to transfer with your function, you will be retained in an active duty status in your present position until the Transfer of Function is effected. Upon transfer to the gaining competitive area, there will be no change in the type of appointment, position, grade, or salary currently assigned. In addition, your annual/sick leave, retirement, and other applicable rights and benefits will be transferred to the gaining agency. Further, the transfer will not require a physical relocation.

Your transfer to the Department of State is subject to the approval of the Department of State, based upon meeting their employment criteria. Although the building delegation will be effective April 1, 1986, your official transfer to the Department of State will not be effected until you have met all of their requirements. Until such time, you will continue as an employee of GSA. Should you not meet the requirements, you will remain a GSA employee and be reassigned within the NCR.

Exhib.4 #3

2

    This is not an adverse personnel action and accordingly you do not have statutory rights to appeal this action. I want to emphasize that this action is in no way a reflection on your performance as a GSA employee. To the contrary, on behalf of all of GSA, I wish to express my sincere appreciation and gratitude for your loyal and faithful service and my regret that your employment cannot be continued with GSA.

                        Sincerely,

                        Mary L. Jessee
                        Regional Personnel Officer

Mr. Steven A. Hewitt
Office of Public Buildings and Real Property
West District, State Field Office

Delivered _____ on ___3/19/86___
              Signature                     Date

Exhibit # 3

# POSITION DESCRIPTION FOR GENERAL SCHEDULE AND WAGE SYSTEM POSITIONS

| | REASON FOR SUB-MISSION | a. IF NEW POSITION | Mark no. | IVE LEVEL |
|---|---|---|---|---|
| | | b. POSITION BEING REPLACED a. | | |
| | | Number | Series | Grade |

4. GEOGRAPHIC LOCATION

## 5. CLASSIFICATION

| ACTION | POSITION TITLE | SCHEDULE | SERIES | GRADE | INITIALS | D. |
|---|---|---|---|---|---|---|
| a. OFFICIAL BY PERSONNEL OFFICE | ELEVATOR MECHANIC | WG | 5313 | 11 | | 9/ |
| b. RECOMMENDED BY PERSONNEL OFFICE | | | | | | |
| c. RECOMMENDED BY INITIATING OFFICE | | | | | | |

**6. ORGANIZATIONAL TITLE OF POSITION** (If applicable)

**7. NAME OF EMPLOYEE(S)**

**8. LOCATION**

a. SERVICE OR STAFF OFFICE

b. SUB-DIVI-SIONS
- 1st. Office of Public Buildings and Real Property
- 2d. Office Deputy ARA for Operations
- 3d. Buildings Management Division
- 4th. West District
- 5th. State Field Office

**9. SUPERVISORY CERTIFICATION**

I certify that this is an accurate statement of the major duties and responsibilities of this position and its organizational relationships and that the position is necessary to carry out Government functions for which I am responsible. This certification is made with the knowledge that this information is to be used for statutory purposes relating to appointment and payment of public funds and that false or misleading statements may constitute violations of such statutes or their implementing regulations.

a. IMMEDIATE SUPERVISOR (Signature and title)     DATE

b. HEAD OF SERVICE/STAFF OFFICER (OR DESIGNEE) (Signature and title)     DATE

*John N'Thrmin*

Chief, Buildings Operations Division     9/

**10. EMPLOYEE CERTIFICATION**

This is a complete and accurate description of the duties and responsibilities of my position.

EMPLOYEE (Signature)     DATE

**11. FLSA STATUS** (For completion by servicing personnel office)

Mark "X" in appropriate box ☐ EXEMPT ☒ NONEXEMPT

**13. OFFICIAL CLASSIFICATION CERTIFIED BY** (Signature and title)     DATE

*Marri C. Faricchio*

Position Classification Specialist     9/

**12. NUMBER OF INCUMBENTS PERMITTED ►**

| 14. READUDIT CERTIFICATION | BY | Initials | Date | Initials | Date | Initials | Date | Initials | Date | Initials | Da |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | a. SUPERVISOR | | | | | | | | | | |
| | b. PERSONNEL OFFICE | | | | | | | | | | |

**15. DUTIES AND RESPONSIBILITIES**

SEE ATTACHED STATEMENT OF DUTIES

*DO NOT USE REVERSE - Continue on separate plain sh*

GENERAL SERVICES ADMINISTRATION     ☆ U.S.GPO:1975-0-595-714-127     GSA FORM 1637 (REV.)

Exhibit #3

## NATURE AND CONTROLS:

Serves as an Elevator Repairer in Government-occupied buildings performing duties relative to the inspection, maintenance, repairs and adjustments on all types of elevators, including related control and logic systems; dumbwaiters, escalators, electro-hydraulics; automatic multi-station vertical selective conveyors, horizontal conveyors; power operated window washer scaffolds; auto-matic entrance doors, power and manually operated garage doors; paper balers and all other hoisting equipment. Primarily performs specialized work on sophisticated and complex electric, electronic and solid state supervisory control systems having computerized circuitry component assemblies.

Must work from complex schematic wiring diagrams, sequence operating and parts manuals, layout detail prints, specifications, code require-ments and accepted trade practices. Is responsible for determining work methods, procedures, priority of work items and craft technique: necessary to accomplish projects covering all phases of the elevator craft functions. May receive oral or written work assignments from supervisor and/or leader. Must train lower grade mechanics or helper in work methods, operating controls, logic and supervisory systems and trouble-shooting techniques.

Work is review and inspected for overall equipment performance and condition by supervisor and/or leader. Incumbent must have securit clearance to work at the White House and CIA.

## MAJOR DUTIES:

Incumbent is responsible for performing all tasks associated with the most complex phases of elevatoring and related equipment; without technical assistance. Possesses the analytical ability to diagnose, analyze and interpret schematic wiring diagrams and related sequenti operations in order to resolve failures or inefficient operations. Uses intricate meters, such as ammeters, ohmmeters, voltmeters, meggers, oscilloscopes, tachometers, pressure gauges, condenser checl er, and other measuring devices routinely in performance of duties. At times is required to diagnose and resolve engineering deficiency problems and apply upgraded corrective technology through installatic of new or modified circuitry and electronic or solid state devices. At times is required to develop and/or design new circuitry required to correct deficiencies or improve service by expanding on existing

Exhibit #3

| UNITED STATES DEPARTMENT OF STATE **SUPERVISOR'S REPORT OF ACCIDENT** (See instructions on reverse before completing report) | ☑ On duty ☐ Off duty | AGENCY _Department of State_ ORGANIZATIONAL UNIT _A/OPR/FMSS_ |
|---|---|---|

**1. NAME OF PERSON INVOLVED IN ACCIDENT** _Hewitt, Steven A._

**2. PERSONNEL CATEGORY**

**3. AGE** _31_

**4. SEX (check one)** ☑ Male  ☐ Female

**If no personal injury:** ☐ Not applicable

**5. OCCUPATION** _Elevator Mechanic_

**6. TIME ACCIDENT OCCURRED**
DATE: _10/16/86_    _7:40_ A.M.    P.M.    DAY OF WEEK: _Thursday_

**7. NATURE OF INJURY** _Pain in Lower Back_

**8. PART(S) OF BODY INJURED** _Lower Back_

**9. SEVERITY OF INJURY (Check one)**
☐ Fatal
☑ Time lost
☐ No time lost
☐ Medical attention only
☐ First aid attention only
☐ No injury involved

**10. LOST TIME**
TOTAL TIME LOST FROM WORK: _____
TOTAL TIME LOST FROM ACTIVITIES: _____
TOTAL LOST TIME: _____

**11. CAUSE OF INJURY** _Bending over and picking up Tools_

**12. TYPE OF ACCIDENT (Check one in each column)**
☑ Personal injury
☐ Government property damage
☐ Personal property damage
☐ Contractor property damage
☐ Fire
☐ Motor vehicle
☐ Aircraft
☐ Boat
☐ Other:

**13. CAUSATIVE AGENT** _None_

**14. UNSAFE ACT** _Bending over To pick up Anything_

**15. UNSAFE MECHANICAL/PHYSICAL CONDITION** _None_

**16. UNSAFE PERSONAL FACTOR** _Bending over To pick up Things_

**17. HAS CORRECTIVE ACTION BEEN TAKEN OR RECOMMENDED (Check one)** ☐ Yes  ☑ No

**18. DESCRIPTION OF ACCIDENT**
_Mr. Hewitt Bent over to pickup his Tools. when he got a sharp pain in his Lower back. He grabbed his Lower back and Fail To The floor_

**19. AMOUNT OF PROPERTY DAMAGE IF OVER $100**
GOVERNMENT-OWNED: $ _____    PERSONAL: $ _____    CONTRACTOR: $ _____

**20. IS TORT CLAIM EXPECTED?** ☐ Yes  ☑ No

**21. DATE OF REPORT** _10/17/86_

**22. SIGNATURE OF SUPERVISOR** _Ronald L. Stalnaker_
Typed Name: _Ronald L. Stalnaker_
Title: _Elevator Mechanic Supervisor_

· This report should be sent to A/SAF, Attention: Safety Director, Department of State, Washington, D.C.

_Exhibit # 4_

Federal Employee's Notice of Traumatic Injury
and Claim for Continuation of Pay/Compensation

U.S. Department of Labor
Employment Standards Administration
Office of Workers' Compensation Programs

| 1. Name of Injured Employee (Last, first, middle) | 2. Date of Birth | 3. ☒ Male ☐ Female | 4. Social Security Number |
|---|---|---|---|
| Hewitt Steven Allen | 7/2/55 | | 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 |

| 5. Employee's Home Mailing Address (no., street, city, state, zip code) | 6. Home Telephone |
|---|---|
| 1258 Cronin Dr. Woodbridge VA. 22191 | Area Code: 703 Number: 494 0802 |

| 7. Name and Address of Employing Agency | 8. Place Where Injury Occurred (e.g., 2nd floor, Main Post Office Bldg., 12th & Pine) |
|---|---|
| Dept of State | 9th Floor Main Elevator Shop State Dept Bldg. |

| 9. Date and Hour of Injury (mo., day, year) | 10. Date of This Notice (mo., day, year) | 11. Dependents Wife/Husband N/A ☐ Children/Under 18 Years Old | 12. Employee's Occupation |
|---|---|---|---|
| 10/16/86 730 ☒ AM ☐ PM | 10/17/86 | | Elevator Repairer |

| 13. Cause of Injury (Describe how and why the injury occurred) | 14. Nature of Injury (Identify the part of the body injured, e.g., fractured left leg, etc.) |
|---|---|
| Was Bending over to Pick up. My Bag of tools (weighing about 40-50 Pounds) when Lifting up the Legs went out And I Fell into the metal Locker. | Lower and middle Back |

15. If This Notice and Claim Was Not Filed With The Employing Agency Within Two Working Days After The Injury, Explain The Reason For The Delay.

N/A

16. I certify, under penalty of law, that the injury described above was sustained in performance of duty as an employee of the United States Government and that it was not caused by my willful misconduct, intent to injure myself or another person, nor by my intoxication. I hereby claim medical treatment, if needed, and the following, as checked below, while disabled for work:

☐ a. Sick and/or Annual leave.

☒ b. Continuation of regular pay not to exceed 45 days and compensation for wage loss if disability for work continues beyond 45 days (If my claim is denied, I understand that the continuation of my regular pay shall be charged to sick or annual leave, or be deemed an overpayment within the meaning of 5 USC 5584).

Steven A. Hewitt
Signature of Employee or Person Acting on His/Her Behalf

PENALTY PROVISION: Any person who knowingly makes any false statement, misrepresentation, concealment of fact, or any other act of fraud to obtain compensation as provided by the FECA or who knowingly accepts compensation to which that person is not entitled is subject to felony criminal prosecution and may, under appropriate U.S. Criminal Code provisions, be punished by a fine of not more than $10,000 or imprisonment for not more than five years, or both.

17. Statement of Witness (Describe what you saw, heard or know about this injury)

I heard Mr. Hewitt groan in pain. I turned around and saw him bent over in front of his locker with his hand on his lower back, and he then fail onto The floor in pain

| 18. Witness' Signature | 19. Witness' Address | 20. Date Signed (mo., day, year) |
|---|---|---|
| Ronald L Stalnaker | 508 Clarks Run Road LaPlata, Md. 20646 | 10/17/86 |

Form CA-1

Exhibit # 4

**OFFICIAL SUPERIOR'S REPORT OF TRAUMATIC INJURY**

**21. Department or Agency**
United States Department of State

**22. Bureau or Office**
Elevator Shop

Agency Code: A/OPR/FMSS

**23. Name and Address of Reporting Office** (No., street, city, state, Zip Code)
Department of State Elevator Shop
2201 C Street N.W.
Washington D.C. 20520

**24. Regular Work Day**
Begins 6:30 ☒ AM ☐ PM    Ends 3:00 ☐ AM ☒ PM

**25. Number of Hours Worked Per Day**
8 Hrs

**26. Circle Days Paid Per Week**
S Ⓜ Ⓣ Ⓦ Ⓣ Ⓕ S

**27. Date and Hour of Injury** (mo., day, year)
10/16/86 7:40 ☒ AM ☐ PM APPROX

**28. Date Reporting Office Received Notice of Injury** (mo., day, year)
10/16/86

**29. Date and Hour Stopped Work** (mo., day, year)
10/16/86 7:40 AM (APPROX)
Pay Rate $ 13.29 per Hr

**30. If Pay Has Been Terminated, Give Date** (mo., day, year)
—

**31. 45 Day Period Begins** (mo., day, year)
10/16/86

**32. Employee's Grade and Step on Date of Injury**
Grade WG-11 Step 5

**33. Date and Hour Employee Returned to Work** (mo., day, year)
☐ AM ☐ PM

**34. Name of Supervisor at Time of Injury**
Ronald L. Stalnaker

**35. Was Employee in Performance of Duty At The Time of Injury?** ☒ Yes ☐ No. If No, furnish a detailed explanation or attach copy of Employing Agency's Investigation Report.

**36. Was Injury Caused By Willful Misconduct, Intoxication or Intent To Injure Self of Another?**
☐ Yes ☒ No.    If Yes, Furnish Detailed Report.

**37. Was Injury Caused By Third Party?** ☐ Yes ☒ No.    If Yes, Furnish Name and Address of Party Responsible.

**38. Date Employee First Obtained Medical Care for the Injury** (mo., day, year)
10/16/86

**39. Name and Address of Physician First Providing Medical Care**
Emergency Room
George Washington Hospital
23rd Street N.W.
Washington D.C.

**40. Do Medical Reports Show Employee Is Disabled For Work?**
☐ Yes ☐ No

**41. Does Your Knowledge of The Facts About This Injury Agree With The Statements of The Employee And/Or Witness?**
☒ Yes ☐ No. If No, Furnish A Detailed Explanation.

**42. Does The Employing Agency Controvert Continuation of Pay?** ☐ Yes ☐ No.    If Yes, Give Full Explanation for Basis of Controversion
(See Item 6 of Instruction Sheet). Attach Additional Sheets If More Space Is Needed.

**43. Filing Instructions:**
☐ No Lost Time and No Medical Expense. Place This Form In Employee's Official Personnel Folder.
☐ Medical Expense Incurred or Expected. Forward This Form To OWCP.
☐ Lost Time Covered By Leave, LWOP, or COP. Forward This Form To OWCP.

**44. All Information Requested On This Form Has Been Furnished. If Not, It Will Be Submitted By**

_____ (Fill in Date)

**45. Signature of Supervisor**
Ronald L. Stalnaker

**46. Title and Office Phone Number** 647-2542
Elevator Machanic Foreman

**47. Date** (mo., day, year)
10/17/86

**PENALTY PROVISIONS:** An immediate superior who hinders the filing of any compensation claim or report may be punished by a fine of not more than $500 or imprisoned not more than one year, or both — 18 U.S.C. 1922. A supervisor who knowingly certifies to any false statement, misrepresentation, or concealment of fact in respect to this claim may also be subject to appropriate

EXH. 6.7  # 9

INSTRUCTIONS FOR COMPLETING FEDERAL EMPLOYEE NOTICE OF TRAUMATIC INJURY AND CLAIM FOR CONTINUATION OF PAY/COMPENSATION

**IMPORTANT:** The employee and official superior (supervisor) should read all of the following instructions before completing this form.

1. The employee, or someone acting on his/her behalf, shall complete items 1 through 16 and give the form to the employee's supervisor for completion of items 21 through 47. The employing agency shall ensure that all evidence bearing on the injury is submitted to OWCP and that such additional evidence is submitted with the notice of injury or within the time indicated in Item 44.

2. Upon receiving the completed form the supervisor shall complete "Receipt of Notice of Injury" at the bottom of this page, detach the page and give it to the employee. The supervisor is also responsible for obtaining the witness information in items 17 through 20.

3. Upon completion of items 21 through 47, the supervisor should advise the employee whether pay will continue or will be controverted and terminated. If pay is controverted and stopped, the supervisor shall explain to the employee the basis for the action.

4. Where pay is continued, the employing agency may require medical evidence, via Form CA-17, Duty Status Report, as often as circumstances indicate.

5. Form CA-1, fully completed, shall be forwarded to the appropriate OWCP District Office within two working days following receipt by the supervisor if:

   a. The injury causes disability for work beyond the day or shift it occurred, or

   b. It appears that the injury will result in prolonged treatment, permanent disability or serious disfigurement of the head, face, or neck, or

   c. The injury has resulted, or appears it will result, in a charge for medical or other related expenses.

If none of the above occurs or appears likely, the form shall be retained in the employee's official personnel file.

6. **NOTE:** The employing agency may properly controvert and terminate the employee's pay if:

   a. Disability results from an occupational disease or illness; or

   b. The employee is excluded by 5 USC 8101 (1) B or E; or

   c. The employee is neither a citizen nor a resident of the United States or Canada; or

   d. The injury occurred off the employing agency's premises and the employee was not involved in official "off premise" duties; or

   e. The injury was caused by the employee's willful misconduct, intent to bring about injury or death of self or another person,

   or was proximately caused by employee's intoxication; or

   f. The injury was not reported on Form CA-1, within 30 days following the injury; or

   g. Work stoppage first occurred six months or more following the injury; or

   h. The employee initially reported the injury after his/her employment has terminated; or

   i. The employee is enrolled in the Civil Air Patrol, Peace Corps, Youth Conservation Corps, Work Study Programs or other similar groups.

7. If additional space is required to explain or clarify any point, attach a supplemental statement to the form.

### PRIVACY ACT

In accordance with the Privacy Act of 1974 (Public Law No. 93-579, 5 U.S.C. 552a), you are hereby notified that: (1) The Federal Employees' Compensation Act, as amended (5 U.S.C. 8101, et seq.) is administered by the Office of Workers' Compensation Programs of the U.S. Department of Labor. In accordance with this responsibility, the Office receives and maintains personal information on claimants and their immediate families. (2) The information will be used to determine eligibility for and the amount of benefits payable under the Act. (3) The information may be used by other agencies or persons in handling matters relating, directly or indirectly, to the subject matter of the claim, so long as such agencies or persons have received the consent of the individual claimant, or have complied with the provisions of 20 CFR 10. (4) Failure to furnish all requested information may delay the process, or result in an unfavorable decision or a reduced level of benefits (disclosure of a social security number is voluntary; the failure to disclose such number will not result in the denial of any right, benefit or privilege to which an individual may be entitled).

THIS NOTICE SHOULD BE RETAINED FOR YOUR INFORMATION

RECEIPT OF NOTICE OF INJURY

THIS ACKNOWLEDGES RECEIPT OF NOTICE OF INJURY SUSTAINED BY _Steven Allen Warren_
(Name of injured employee)

WHICH OCCURRED ON _10/16/86_ AT _State Department of State_ Street
(Mo., day, year)

SIGNATURE OF OFFICIAL SUPERIOR _T. H. Zoll_    TITLE _Bldg Mgr_ _10/16/86_

EXHIBIT # 4

Standard Form 50-B
Rev. 1985
U.S. Office of Personnel Management
FPM Chapter 296

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|---|

## FIRST ACTION

| 5-A. Code | 5-B. Nature of Action |
|---|---|
| 5-C. Code | 5-D. Legal Authority |
| 5-E. Code | 5-F. Legal Authority |

## SECOND ACTION

| 6-A. Code | 6-B. Nature of Action |
|---|---|
| 6-C. Code | 6-D. Legal Authority |
| 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number |
|---|

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Salary | 13. Pay Basis |
|---|---|---|---|---|---|

| 14. Name and Location of Position's Organization |
|---|

| 15. TO: Position Title and Number |
|---|

| 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|

| 22. Name and Location of Position's Organization |
|---|

## EMPLOYEE DATA

| 23. Veteran Preference | | |
|---|---|---|
| 1 - None    3 -10-Point/Disability    5 -10-Point/Other | | |
| 2 - 5-Point    4 -10-Point/Compensable    6 -10-Point/Compensable/30% | | |

| 24. Tenure | 25. Agency Use | 26. Veteran Preference for RIF |
|---|---|---|
| 0 - None    2 - Conditional | | YES    NO |
| 1 - Permanent    3 - Indefinite | | |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per |
|---|---|---|---|
| | | F - Full-time    I - Intermittent    J - INT Seasonal | |
| | | P - Part-Time    G - FT Seasonal    H - FT On-Call | Biweekly Pay Period |
| | | Q - PT Seasonal    R - PT On-Call | |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 - Competitive Service    3 - SES General | E - Exempt | | |
| 2 - Excepted Service    4 - SES Career Reserved | N - Nonexempt | | |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|

| 45. Remarks |
|---|

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | |

TURN OVER FOR IMPORTANT INFORMATION
5 PART    50-314

1 - Employee Copy - Keep for Future Reference

Editions Prior To 4/87 Are Unusable After 9/30/88
NSN 7540-01-249-1911

Injured Worker's Rehabilitation
Status Report

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

| 1. Injured Worker's Name *(First, Middle, Last)* | 2. Date of Injury | 3. Carrier's No. *(LHWCA)* | 4. OWCP No. |
|---|---|---|---|
| Steven Hewitt | 10/16/86 | X | A25-294698 |

5. Check the injured worker's status and status dates. Check special information when required by the status, for closures and as appropriate. Justify each status change or extension in the comments section.

| STATUS | SPECIAL INFORMATION |
|---|---|
| From 9/4/87   To 10/30/87 | |

**REFERRAL**

| | |
|---|---|
| ☐ Early (Check a) | ☐ a. Date compensation file screened _____ |
| ☐ Other (Check a) | ☐ b. Date OWCP-6 or 13 sent _____ |
| ☒ Initial Interview Held By OWCP Rehabilitation Specialist (Check d) | ☐ c. Date OWCP-10 or 11 sent _____ |
| | ☒ d. Date of initial interview by RS   9/4/87 |
| | ☐ e. Other (See Comments) |

**ACTIVE**

| | |
|---|---|
| ☐ Plan Development (Check a or b and c) | ☐ a. Testing required (☐ Yes   ☐ No) |
| ☐ Medical Rehabilitation | ☐ b. Testing Waived (See Comments) |
| ☐ Training (Check d, e, or f) | ☐ c. Work evaluation required (☐ Yes   ☐ No) |
| ☐ Self-Employment | ☐ d. Pre-vocational training |
| ☐ Placement-New Employer | ☐ e. Vocational Training |
| ☐ Placement-Previous Employer | ☐ f. On-the-job training |
| ☐ Employed (Check g) | ☐ g. Date employed _____ (See Comments) |
| ☐ Service Interrupted | ☐ h. Reopened (See Comments) |
| ☐ Post-Employment Service | ☐ i. Other (See Comments) |

**CLOSED**

| | | |
|---|---|---|
| ☐ Referral | ☐ a. Returned to work | ☐ i. Poor job market |
| ☐ Other | ☐ b. No permanent disability | ☐ j. Refused to cooperate |
| ☐ Post-Employment | ☐ c. Compensation terminated | ☐ k. Job offer declined |
| | ☐ d. No change since last referral | ☐ l. Settled case |
| | ☐ e. Did not respond to letters | ☐ m. Chose retirement |
| | ☐ f. Not interested | ☐ n. Transferred (To _____) |
| | ☐ g. Refused services | ☐ o. Other (See Comments) |
| | ☐ h. Limited vocational abilities | |

6. Vocational Rehabilitation Counselor *(Complete item 6a when referring to a new VRC)*

| a. Name | b. Professional hours approved for the status *(See item 5)* |
|---|---|
| | |

c. The VRC's proposed status is ☐ Accepted   ☐ Modified   ☐ Rejected   *(See Comments)*

7. Comments:   I discussed the availability of vocational rehabilitation services with Mr. Hewitt.  He will be meeting with his doctor shortly, and will let me know if he is released for work.  He appears very motivated to return to work, and believes that the work restrictions from his doctor will allow him to return to work.

I am keeping his case in a pending status, until he has had a chance to speak with his doctor and his employer.

Note:   Mr. Hewitt did not receive my first letter, and called immediately at the receipt of the OWCP-10.

cc:  Steven Hewitt
     Dept. of State Personnel
     Comp File, Rehab. File

| 8. OWCP Rehabilitation Specialist | 9. Telephone No. | 10. Date |
|---|---|---|
| Sheila W. Hackett | 724-0705 | 9/8/87 |

**Copy Distribution:** WHITE — Carrier/Employer   GOLDENROD — Worker/Attorney   PINK — Dist. R-File   Form OWCP-3
CANARY — Comp. File   GREEN — VR Counselor   BLUE — Nat. R-File   Rev. March 1984

U. S. GOVERNMENT PRINTING OFFICE: 1984-421-499/2012

EXhibit #6

| Injured Worker's Rehabilitation Status Report | U.S. Department of Labor |
|---|---|
| | Employment Standards Administration |
| | Office of Workers' Compensation Programs |

| 1. Injured Worker's Name *(First, Middle, Last)* | 2. Date of Injury | 3. Carrier's No. *(LHWCA)* | 4. OWCP No. |
|---|---|---|---|
| Steven A. Hewitt | 10/16/86 | | A25-294698 |

5. Check the injured worker's status and status dates. Check special information when required by the status, for closures and as appropriate. Justify each status change or extension in the comments section.

| STATUS | SPECIAL INFORMATION |
|---|---|

From  12/15/87        To   1/31/88

**REFERRAL**

- ☐ Early (Check a)
- ☒ Other (Check c)
- ☒ Initial Interview Held By OWCP Rehabilitation Specialist (Check d)

- ☒ a. Date compensation file screened _____
- ☒ b. Date OWCP-6 or 13 sent _____
- ☐ c. Date OWCP-10 or 11 sent _____
- ☒ d. Date of initial interview by RS   9/4/87
- ☐ e. Other (See Comments)

**ACTIVE**

- ☐ Plan Development (Check a or b and c)
- ☐ Medical Rehabilitation
- ☐ Training (Check d, e, or f)
- ☐ Self-Employment
- ☐ Placement-New Employer
- ☐ Placement-Previous Employer
- ☐ Employed (Check g)
- ☐ Service Interrupted
- ☐ Post-Employment Service

- ☐ a. Testing required (☐ Yes    ☐ No)
- ☐ b. Testing Waived (See Comments)
- ☐ c. Work evaluation required (☐ Yes    ☐ No)
- ☐ d. Pre-vocational training
- ☐ e. Vocational Training
- ☐ f. On-the-job training
- ☐ g. Date employed _____ (See Comments)
- ☐ h. Reopened (See Comments)
- ☐ i. Other (See Comments)

**CLOSED**

- ☐ Referral
- ☐ Other
- ☐ Post-Employment

- ☐ a. Returned to work
- ☐ b. No permanent disability
- ☐ c. Compensation terminated
- ☐ d. No change since last referral
- ☐ e. Did not respond to letters
- ☐ f. Not interested
- ☐ g. Refused services
- ☐ h. Limited vocational abilities
- ☐ i. Poor job market
- ☐ j. Refused to cooperate
- ☐ k. Job offer declined
- ☐ l. Settled case
- ☐ m. Chose retirement
- ☐ n. Transferred (To _____)
- ☐ o. Other (See Comments)

6. Vocational Rehabilitation Counselor *(Complete item 6a when referring to a new VRC)*

a. Name

b. Professional hours approved for the status *(See item 5)*

c. The VRC's proposed status is ☐ Accepted    ☐ Modified    ☐ Rejected    *(See Comments)*

7. Comments:

The current medical reports indicate that Mr. Hewitt a continuing conservative treatment.  I am recontacting Mr. Hewitt to follow-up the discussion regarding vocational rehabilitation.

cc:  Steven Hewitt'
       Dept. of State
       Comp File
       Rehab File

| 8. OWCP Rehabilitation Specialist | 9. Telephone No. | 10. Date |
|---|---|---|
| SHEILA W. HACKETT | (202) 724-0705 | 12/15/87 |

Exhibit II-8

| Injured Worker's Rehabilitation Status Report | U.S. Department of Labor |
|---|---|
| | Employment Standards Administration<br>Office of Workers' Compensation Programs |

| 1. Injured Worker's Name *(First, Middle, Last)*<br><br>Steven Hewitt | 2. Date of Injury<br><br>10/16/86 | 3. Carrier's No. *(LHWCA)* | 4. OWCP No.<br><br>A25-204698 |
|---|---|---|---|

5. Check the injured worker's status and status dates. Check special information when required by the status, for closures and as appropriate. Justify each status change or extension in the comments section.

| STATUS | SPECIAL INFORMATION |
|---|---|
| From 1/11/88 To 3/31/88 | |

**STATUS**

From 1/11/88   To 3/31/88

### REFERRAL

- ☐ Early (Check a)
- ☐ Other (Check a)
- ☐ Initial Interview Held By OWCP Rehabilitation Specialist (Check d)

**SPECIAL INFORMATION**

- ☐ a. Date compensation file screened _____
- ☐ b. Date OWCP-6 or 13 sent _____
- ☐ c. Date OWCP-10 or 11 sent _____
- ☐ d. Date of initial interview by RS _____
- ☐ e. Other (See Comments)

### ACTIVE

- ☒ Plan Development (Check a or b and c)
- ☐ Medical Rehabilitation
- ☐ Training (Check d, e, or f)
- ☐ Self-Employment
- ☐ Placement-New Employer
- ☐ Placement-Previous Employer
- ☐ Employed (Check g)
- ☐ Service Interrupted
- ☐ Post-Employment Service

- ☒ a. Testing required ☒ Yes   ☐ No)
- ☐ b. Testing Waived (See Comments)
- ☐ c. Work evaluation required (☐ Yes   ☐ No)
- ☐ d. Pre-vocational training
- ☐ e. Vocational Training
- ☐ f. On-the-job training
- ☐ g. Date employed _____ (See Comments)
- ☐ h. Reopened (See Comments)
- ☐ i. Other (See Comments)

### CLOSED

- ☐ Referral
- ☐ Other
- ☐ Post-Employment

- ☐ a. Returned to work
- ☐ b. No permanent disability
- ☐ c. Compensation terminated
- ☐ d. No change since last referral
- ☐ e. Did not respond to letters
- ☐ f. Not interested
- ☐ g. Refused services
- ☐ h. Limited vocational abilities
- ☐ i. Poor job market
- ☐ j. Refused to cooperate
- ☐ k. Job offer declined
- ☐ l. Settled case
- ☐ m. Chose retirement
- ☐ n. Transferred (To _____)
- ☐ o. Other (See Comments)

6. Vocational Rehabilitation Counselor *(Complete item 6a when referring to a new VRC)*

| a. Name<br><br>Diane Wilson | b. Professional hours approved for the status *(See item 5)*<br><br>15 |
|---|---|

c. The VRC's proposed status is ☐ Accepted   ☐ Modified   ☐ Rejected   *(See Comments)*

7. Comments:

I discussed vocational rehabilitation services with Mr. Hewitt and he expressed a strong interest in reviewing his options for returning to work. I am referring the case to Diane Wilson to develop an appropriate vocational plan with Mr. Hewitt, the treating physician, and the previous employer. The counselor should include vocational testing in her evaluation and present a plan for training or selective placement if the previous employer is unable to provide a modified duty assignment. Update work restrictions are needed.

cc: Steven Hewitt
Diane Wilson
State Dept.
Comp File
Rehab File

| 8. OWCP Rehabilitation Specialist<br><br>SHEILA W. HACKETT | 9. Telephone No.<br><br>(202) 724-0705 | 10. Date<br><br>1/11/88 |
|---|---|---|

Copy Distribution: **WHITE — Carrier/Employer    GOLDENROD — Worker/Attorney    PINK — Dist. R-File**
**CANARY — Comp. File    GREEN — VR Counselor    BLUE — Nat. R-File**

Form OWCP-3
Rev. March 1984

EXHIBIT #6

| Injured Worker's Rehabilitation Status Report | **U.S. Department of Labor** Employment Standards Administration Office of Workers' Compensation Programs |
|---|---|

| 1. Injured Worker's Name *(First, Middle, Last)* | 2. Date of Injury | 3. Carrier's No. *(LHWCA)* | 4. OWCP No. |
|---|---|---|---|
| Steven Hewitt | 10/10/86 | | A25-294598 |

**5.** Check the injured worker's status and status dates. Check special information when required by the status, for closures and as appropriate. Justify each status change or extension in the comments section.

| | **STATUS** | **SPECIAL INFORMATION** |
|---|---|---|
| | From 6/2/89   To 6/30/89 | |

| | | |
|---|---|---|
| **REFERRAL** | ☐ Early (Check a) ☐ Other (Check a) ☐ Initial Interview Held By OWCP Rehabilitation Specialist (Check d) | ☐ a. Date compensation file screened _____ ☐ b. Date OWCP-6 or 13 sent _____ ☐ c. Date OWCP-10 or 11 sent _____ ☐ d. Date of initial interview by RS _____ ☐ e. Other (See Comments) |
| **ACTIVE** | ☒ Plan Development (Check a or b and c) ☐ Medical Rehabilitation ☐ Training (Check d, e, or f) ☐ Self-Employment ☐ Placement-New Employer ☐ Placement-Previous Employer ☐ Employed (Check g) ☐ Service Interrupted ☐ Post-Employment Service | ☐ a. Testing required (☐ Yes    ☐ No) ☐ b. Testing Waived (See Comments) ☐ c. Work evaluation required (☐ Yes    ☐ No) ☐ d. Pre-vocational training ☐ e. Vocational Training ☐ f. On-the-Job training ☐ g. Date employed _____ (See Comments) ☐ h. Reopened (See Comments) ☐ i. Other (See Comments) |
| **CLOSED** | ☐ Referral ☐ Other ☐ Post-Employment | ☐ a. Returned to work       ☐ i. Poor job market ☐ b. No permanent disability   ☐ j. Refused to cooperate ☐ c. Compensation terminated   ☐ k. Job offer declined ☐ d. No change since last referral  ☐ l. Settled case ☐ e. Did not respond to letters   ☐ m. Chose retirement ☐ f. Not interested        ☐ n. Transferred (To _____) ☐ g. Refused services       ☐ o. Other (See Comments) ☐ h. Limited vocational abilities |

**6. Vocational Rehabilitation Counselor** *(Complete item 6a when referring to a new VRC)*

| a. Name | b. Professional hours approved for the status *(See item 5)* |
|---|---|
| | |

c. The VRC's proposed status is ☐ Accepted    ☐ Modified    ☐ Rejected    *(See Comments)*

**7. Comments:**
I spoke to Mr. Hewitt on 6/2/89. He requested clarification of a deadline
on implementing vocational rehabilitation services. He indicates that
he has been ill with what appears to be walking pneumonia. He has
been advised to provide a note from his doctor to the counselor, since
this has caused a delay in planning.
I explained to Mr. Hewitt that I would expect a vocational plan to
be finalized by the end of June, 1989. Dr. Davidson has
advised that Mr. Hewitt is partially disabled and able to work at least
four hours per day. If a plan is not finalized by 6/30/89 for training
and/or placement, the counselor should provide a final report, indicating
jobs suitable and available in his commuting area.

cc: State Dept. Personnel/ Rehab/Comp/ Debbie Moreau/ Steven Hewitt

| 8. OWCP Rehabilitation Specialist | 9. Telephone No. | 10. Date |
|---|---|---|
| Shela W. Hackett | *(202) 724-0705 | 6/5/89 |

Copy Distribution: **WHITE** — Carrier/Employer    **GOLDENROD** — Worker/Attorney    **PINK** — Dist. R-File    Form OWCP-3
**CANARY** — Comp. File    **GREEN** — VR Counselor    **BLUE** — Nat. R-File    Rev. March 1984

U. S. GOVERNMENT PRINTING OFFICE-1984-421-499/2012

Exhibit #C

Injured Worker's Rehabilitation Status Report

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

| 1. Injured Worker's Name *(First, Middle, Last)* | 2. Date of Injury | 3. Carrier's No. *(LHWCA)* | 4. OWCP No. |
|---|---|---|---|
| Steven Hewitt | | | A25 - 294698 |

5. Check the injured worker's status and status dates. Check special information when required by the status, for closures and as appropriate. Justify each status change or extension in the comments section.

| STATUS | SPECIAL INFORMATION |
|---|---|
| From 6/24/89  To 10/15/90 | |

**REFERRAL**

- ☐ Early (Check a)
- ☐ Other (Check a)
- ☐ Initial Interview Held By OWCP Rehabilitation Specialist (Check d)

- ☐ a. Date compensation file screened _____
- ☐ b. Date OWCP-6 or 13 sent _____
- ☐ c. Date OWCP-10 or 11 sent _____
- ☐ d. Date of initial interview by RS _____
- ☐ e. Other (See Comments)

**ACTIVE**

- ☐ Plan Development (Check a or b and c)
- ☐ Medical Rehabilitation
- ☒ Training (Check d, e, or f)
- ☐ Self-Employment
- ☐ Placement-New Employer
- ☐ Placement-Previous Employer
- ☐ Employed (Check g)
- ☐ Service Interrupted
- ☐ Post-Employment Service

- ☐ a. Testing required (☐ Yes  ☐ No)
- ☐ b. Testing Waived (See Comments)
- ☐ c. Work evaluation required (☐ Yes  ☐ No)
- ☐ d. Pre-vocational training
- ☒ e. Vocational Training
- ☐ f. On-the-job training
- ☐ g. Date employed _____ (See Comments)
- ☐ h. Reopened (See Comments)
- ☒ i. Other (See Comments)

**CLOSED**

- ☐ Referral
- ☐ Other
- ☐ Post-Employment

- ☐ a. Returned to work
- ☐ b. No permanent disability
- ☐ c. Compensation terminated
- ☐ d. No change since last referral
- ☐ e. Did not respond to letters
- ☐ f. Not interested
- ☐ g. Refused services
- ☐ h. Limited vocational abilities
- ☐ i. Poor job market
- ☐ j. Refused to cooperate
- ☐ k. Job offer declined
- ☐ l. Settled case
- ☐ m. Chose retirement
- ☐ n. Transferred (To _____)
- ☐ o. Other (See Comments)

6. Vocational Rehabilitation Counselor *(Complete item 6a when referring to a new VRC)*

a. Name

b. Professional hours approved for the status *(See item 5)*

c. The VRC's proposed status is ☒ Accepted   ☐ Modified   ☐ Rejected   *(See Comments)*

7. Comments:

I am approving the rehabilitation program for Steven Hewitt at TESST Electronics from June 24, 1989 to October 15, 1990. He will be employed at completion as an electronics technician DOT 003.161-014. His salary will be $17,000 to $28,000 per year to start. The jobs selected will be available with job openings at completion. Mr. Hewitt understands that he must maintain regular attendance and average grades for continuation of the program, under sponsorship by the Department of Labor.

cc: Dept. of State/ Comp/Rehab/ Steven Hewitt/ Deborah Moreau

| 8. OWCP Rehabilitation Specialist | 9. Telephone No. | 10. Date |
|---|---|---|
| Sheila W Hackett | (202) 724-0105 | 7/25/89 |

Copy Distribution:  WHITE — Carrier/Employer   GOLDENROD — Worker/Attorney   PINK — Dist. R-File   Form OWCP-3
CANARY — Comp. File   GREEN — VR Counselor   BLUE — Nat. R-File   Rev. March 1984

Exhibit # 6

Injured Worker's Rehabilitation
Status Report

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

| 1. Injured Worker's Name (First, Middle, Last) | 2. Date of Injury | 3. Carrier's No. (LHWCA) | 4. OWCP No. |
|---|---|---|---|
| Steven Hewitt | 10/16/86 | | A25-294698 |

5. Check the injured worker's status and status dates. Check special information when required by the status, for closures and as appropriate. Justify each status change or extension in the comments section.

| | STATUS | SPECIAL INFORMATION |
|---|---|---|
| | From 09/05/89   To 10/25/90 | |
| **REFERRAL** | ☐ Early (Check a)<br>☒ Other (Check a)<br>☐ Initial Interview Held By OWCP Rehabilitation Specialist (Check d) | ☐ a. Date compensation file screened _____<br>☐ b. Date OWCP-6 or 13 sent _____<br>☐ c. Date OWCP-10 or 11 sent _____<br>☐ d. Date of initial interview by RS _____<br>☒ e. Other (See Comments) |
| **ACTIVE** | ☐ Plan Development (Check a or b and c)<br>☐ Medical Rehabilitation<br>☐ Training (Check d, e, or f)<br>☐ Self-Employment<br>☐ Placement-New Employer<br>☐ Placement-Previous Employer<br>☐ Employed (Check g)<br>☐ Service Interrupted<br>☐ Post-Employment Service | ☐ a. Testing required (☐ Yes   ☐ No)<br>☐ b. Testing Waived (See Comments)<br>☐ c. Work evaluation required (☐ Yes   ☐ No)<br>☐ d. Pre-vocational training<br>☐ e. Vocational Training<br>☐ f. On-the-job training<br>☐ g. Date employed _____ (See Comments)<br>☐ h. Reopened (See Comments)<br>☐ i. Other (See Comments) |
| **CLOSED** | ☐ Referral<br>☐ Other<br>☐ Post-Employment | ☐ a. Returned to work   ☐ i. Poor job market<br>☐ b. No permanent disability   ☐ j. Refused to cooperate<br>☐ c. Compensation terminated   ☐ k. Job offer declined<br>☐ d. No change since last referral   ☐ l. Settled case<br>☐ e. Did not respond to letters   ☐ m. Chose retirement<br>☐ f. Not interested   ☐ n. Transferred (To _____)<br>☐ g. Refused services   ☐ o. Other (See Comments)<br>☐ h. Limited vocational abilities |

6. Vocational Rehabilitation Counselor (Complete item 6a when referring to a new VRC)

| a. Name | b. Professional hours approved for the status (See item 5) |
|---|---|

c. The VRC's proposed status is ☐ Accepted   ☐ Modified   ☐ Rejected   (See Comments)

7. Comments:

Memo to CE:

I am approving the training program for Mr. Hewitt at TESS Electronics from 07/24/89 to 10/15/90. This plan will enable Mr. Hewitt to earn completion of the 15 month program and enable him to compete for full time technician positions at a salary range of $17,000 to $28,000 per year. The counselor will be providing follow-up counseling and job placement toward the end of training.

Mr. Hewitts' tuition, books, supplies and maintenance of $10.66 per day, (3 times a week) have been approved. The counselor should insure that Mr. Hewitt forwards the maintenance certificates on a 4 week basis. Mr. Hewitt will be required to maintain average grades. The counselor should obtain official transcripts and forward them to the compensation file. The training will lead to a Electronic Technician DOT#003-161-014.   CC: CE, VR, Mr. Hewitt, D. Moreau, State Dept.

| 8. OWCP Rehabilitation Specialist | 9. Telephone No. | 10. Date |
|---|---|---|
| SHEILA W. HACKETT | (202) 724-0705 | 09/05/89 |

Copy Distribution: **WHITE** — Carrier/Employer     **GOLDENROD** — Worker/Attorney     **PINK** — Dist. R-File     Form OWCP-3
**CANARY** — Comp. File     **GREEN** — VR Counselor     **BLUE** — Nat. R-File     Rev. March 1984

Exhibit #6

5122 Baltimore Avenue
Hyattsville, Maryland 20781

TEST ELECTRONICS SCHOOL
ACADEMIC TRANSCRIPT

1400 Duke Street
Alexandria, Virginia 22314

DATE  November 8, 1990

NAME   Steven Hewitt

ADDRESS   1258 Cronin Drive

SSN   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

DATE OF BIRTH   July 2, 1955

Woodbridge, Virginia 22191

PROGRAM OF STUDY:   ELECTRONICS AND COMPUTER TECHNOLOGY

| SEMESTER DATES | SEMESTER TITLE | CLOCK HOURS | SEMESTER CREDIT HOURS | FINAL GRADE | GRADE POINT AVERAGE (GPA) | CUMULATIVE GPA | ATTENDANCE |
|---|---|---|---|---|---|---|---|
| 7/24/89 - 10/12/89 | PRACTICAL ELECTRICITY | 144 | 7 | A | 3.75 | | 36/36 |
| 10/16/89 - 01/19/90 | BASIC ELECTRONICS | 144 | 7 | B+ | 3.50 | | 35/36 |
| 01/22/90 - 04/12/90 | VIDEO SYSTEMS & SERVICING | 144 | 7 | B+ | 3.50 | | 34/36 |
| 04/16/90 - 07/19/90 | DIGITAL ELECTRONICS | 144 | 7 | A | 3.75 | | 33/36 |
| 07/23/90 - 10/11/90 | COMPUTER SERVICING | 144 | 7 | A | 3.75 | 3.65 | 33/36 |

GRADUATION DATE:   10/11/90

| | GRADE | GPA |
|---|---|---|
| 95-100 | A+ | 4.0 |
| 90-95 | A | 3.75 |
| 85-89 | B+ | 3.5 |
| 80-84 | B | 3.0 |
| 75-79 | C+ | 2.5 |
| 70-74 | C | 2.0 |
| 65-69 | D+ | 1.5 |
| 60-64 | D | 1.0 |
| BELOW 60 | E | 0 |

NATS

Accredited School
National Association of
Trade and Technical Schools

_(signature)_
Director

INCOMPLETE = I
WITHDRAWAL = W

TRANSCRIPTS ARE OFFICIAL ONLY WHEN SCHOOL SEAL IS AFFIXED HEREON.

Exhibit #7



## Quality Career Education Since 1967

December 11, 1990

To Whom It May Concern,

This is to verify Mr. Steven Hewitt graduated from TESST Electronics & Computer Institute with a diploma in Electronics and Computer Technology on October 11, 1990. Mr. Hewitt completed 720 hours of training (35 semester credit hours) of theory and practical laboratory training. While in attendance Steven maintained a 3.65 grade point average and 95% attendance.

Based on Mr. Hewitts performance he should be able to adapt to a variety of electronic areas, installing servicing or repairing. Those areas should include audio, video, digital, computer, medical, security and office equipment as well as serving as a bench technician capable of trouble shooting to the component level.

Steven's instructors indicate he has potential to be an excellent technician if he is given a chance.

If any further information is required please call me at (703) 548-4800.

Sincerely,

Clete E. Mehringer

CEM:clb

NATTS

5122 BALTIMORE AVENUE, HYATTSVILLE, MARYLAND 20781   (301) 864-5750   FAX (301) 779-3189
1400 DUKE STREET, ALEXANDRIA, VIRGINIA 22314   (703) 548-4800   FAX (703) 683-2765

Exhibit #7

## MT. VERNON ORTHOPEDIC ASSOCIATES. LTD.

8101 HINSON FARM ROAD
SUITE 301
ALEXANDRIA. VIRGINIA 22306

JOHN A. BRUNO. JR.. M.D.
STUART L. DAVIDSON. M.D.
MANFREDS MUNTERS. M.D.. F.A.C.S.

(703) 765-4321

September 19, 1988

U.S. Dept of Labor
1100 L Street  #9404
Washington, D.C.  20211

RE:  Steven Hewitt
EMP: Dept of State

PROGRESS REPORT

The patient is seen back in follow up.  Over the weekend he had a severe exacerbation
of his pain, having difficulty in getting up out of bed.  Now walking with a cane.
He had severe leg pain but the leg pain has subsided now.  The back pain remains
severe.  He will go home on some Percodan for pain and some Valium as a muscle
relaxant and if not substantially improved in a day or 2 we may consider placing him
in the hospital for more significant conservative treatment of bed rest, traction, PT
and more intense pain medication and neurosurgical re-evaluation.

Sincerely yours,

Stuart L. Davidson, M.D.

SLD/acw
CURRENT STATEMENT ATTACHED
dictated but not read

Exhibit # 8

# *Rehabilitation Perspectives, Inc.*

P.O. BOX 11432

BURKE, VA 22009

TELEPHONE (703) 912-6960

June 17, 1991

Dr. Stuart Davidson
8101 Hinson Farm Road
#301
Alexandria, VA  22306

                    Re:  Steven Hewitt
                    #:   A25-294698

Dear Dr. Davidson:

I received your response regarding the motor vehicle operator
position.  I do realize that the driving job will not utilize Mr.
Hewitt's electronics skills, however, it is the only physically
appropriate job that is currently available.  Once Mr. Hewitt
becomes re-employed with the State Department he can then apply
for the computer repair positions as they become available.  This
driving job affords him the opportunity to return to the work
force.  Mr. Hewitt has been unemployed since 10-16-86, the date
of his injury.

I would like to bring to your attention the letter from Ms. Anita
Brown, which was attached to the position description.  She states
that the position as motor vehicle operator has been modified to
accommodate the client's current disability.  This position
requires only minor bending and lifting (no more than fifty
pounds) and would allow for intermittent standing, sitting and
walking.  These are the same restrictions that you provided us
when you completed Mr. Hewitt's OCWP 5 on 11/28/90.  The only
difference is that the driving position is full time.  All of the
jobs Mr. Hewitt has recently applied for in the Federal government
are full-time positions, therefore, I believe Mr. Hewitt feels
that he is able to work an eight hour day at this time.

I would appreciate it if you would once again review the position
description along with the letter from Ms. Brown and provide us
with your opinion regarding Mr. Hewitt's ability to perform this
job from a strictly medical viewpoint.

Thank you for your assistance and I look forward to your response.

                    Sincerely,

                    *Debbie Moreau*
                    Debbie Moreau, CRC, CIRS
                    Rehabilitation Supervisor

cc:  Regina Mack-Abney
     Anita Brown

Exhibit # 9

Work Restriction Evaluation

OMB No.: 1215-0103
Expires 09-30-88

U.S. Department of Labor
Employment Standards Administration
Office of Workers' Compensation Programs

| 1. Injured workers' name *(First, middle, last)* | 2. OWCP No. |
|---|---|
| Adiennu Newell | |

**3. Check the frequency and number of hours a day the worker is able to do the following specific types of activities.**

| ACTIVITY | FREQUENCY | | NUMBER OF HOURS A DAY | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Continuous | Intermittent | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| a. Sitting | | | | | | | ✓ | | | | |
| b. Walking | | ✓ | | ✓ | | | | | | | |
| c. Lifting | ✓ | | | | ✓ | | | | | | |
| d. Bending | | ✓ | | ✓ | | | | | | | |
| e. Squatting | | ✓ | | | | | | | | | |
| f. Climbing | | ✓ | | | ✓ | | | | | | |
| g. Kneeling | | ✓ | | ✓ | | | | | | | |
| h. Twisting | ✓ | | | ✓ | | | | | | | |
| i. Standing | ✓ | | | | | | | | ✓ | | |

**4. Check the lifting restriction.**
☐ 0–10 lbs.   ☐ 10–20 lbs.   ☒ 20–50 lbs.   ☐ 50–75 lbs.   ☐ 75 & above lbs.

**5a. Hand restrictions?**
☒ No   ☐ Yes — *(Check b, c, and d.)*

**5b. Simple grasping?**
☒ Yes   ☐ No

**5c. Pushing and pulling?**   ☐ Yes   ☒ No

**5d. Fine manipulation?**   ☒ Yes   ☐ No

**6. Can the worker reach or work above the shoulder?**   ☒ Yes   ☐ No

**7. Can the worker use his/her feet to operate foot controls or for repetitive movement?**   ☐ Yes   ☒ No

**8. Can the worker operate a car, truck, crane, tractor, or other type of motor vehicle?**   ☒ Yes   ☐ No   *But no heavy equip*

**9. Are there cardiac, visual, or hearing limitations?**
☒ No   ☐ Yes — *(Describe)*

**10. Are there restrictions concerning heat, cold, dampness, height, temperature changes, high speed working, or exposure to dust, fumes or gases?**   ☐ No   ☒ Yes — *(Describe)*   *Avoid cold + damp*

**11. Are interpersonal relations effected because of a neuropsychiatric condition?**
☒ No   ☐ Yes -- Describe *(Ability to give and take supervision, meet deadlines, etc.)*

**12a. Can the individual work eight hours a day?**
☐ Yes   ☒ No — *(Indicate when)* *indeterminate*

**12b. If not eight hours, how many and when?**
*4-6 — now*

**13. Do you anticipate the worker will need vocational rehabilitation services such as testing, counseling, training, or placement to return to work?**   ☒ Yes   ☐ No

**14. Has the worker reached maximum improvement?**
☐ Yes *(Indicate when)*   ☒ No *(Indicate when)* *indeterminate*

**15. Remarks:** *(Restrictions from medication or other limitations)*

| 16. Name | 17. Signature |
|---|---|
| STUART L. DAVIDSON, M.D. | |
| 18. Address | 19. Telephone No. | 20. Date |
| 8101 Hinson Farm Rd., Suite 301 Alexandria, Virginia 22306 (703) 765-4821 | | 5-12-89 |

*Copy Distribution: WHITE -- Carrier/Employer     YELLOW -- OWCP Case File     PINK -- OWCP Rehab. File*

GPO 861 948

Form OWCP-5
Rev. Nov. 1986

Exhibit # 10

**ARTMENT OF STATE, U.S.A.**
WASHINGTON, D. C. 20520
_____

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

**AN EQUAL OPPORTUNITY EMPLOYER**

*[handwritten notes]*
Aug 23 '91
Received on Oct 3, '91
Filed Dec 2, 1991

**Mr. Steven A. Hewitt**
**1258 Cronin Drive**
**Woodbridge, VA   22191**

Exhibit # 11

Standard Form 52
Rev. 8/66
U.S. Office of Personnel Management
FPM Chapter 296

# REQUEST FOR PERSONNEL ACTION

| PART A—Requesting Office | (Also complete Part B, Items 1, 7-22, 32, 33, 36 and 39.) | |
|---|---|---|
| 1. Actions Requested | | 2. Request Number |
| Return to Duty | | |
| For Additional Information Call (Name and Telephone Number) | | 4. Proposed Effective Date |
| Debbie Duckett 647-8326 | | 08/27/91 |
| 5. Action Requested By (Typed Name, Title, Signature, and Request Date) | 6. Action Authorized By (Typed Name, Title, Signature, and Concurrence Date) | |
| Deborah Duckett  Management Analyst, A/EX/PMD | Deborah A. Duckett  Management Analyst, A/EX/PMD  DAD 8/23/91 | |

| PART B—For Preparation of SF 50 | (Use only codes in FPM Supplement 292-1. Show all dates in month-day-year order.) | | |
|---|---|---|---|
| 1. Name (Last, First, Middle)  Hewitt, Steven A. | 2. Social Security Number  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 | 3. Date of Birth  07-02-55 | 4. Effective Date  08/27/91 |

| First Action | | Second Action | |
|---|---|---|---|
| 5-A. Code  292 | 5-B. Nature of Action  RTD | 6-A. Code | 6-B. Nature of Action |
| 5-C. Code  Q3K | 5-D. Legal Authority  5 CFR, Part 353 | 6-C. Code | 6-D. Legal Authority |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | | | | | | 15. TO: Position Title and Number  M-00502-00  Motor Vehicle Operator |
|---|---|---|---|---|---|---|

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Salary | 13. Pay Basis | 16. Pay Plan  WG | 17. Occ. Code  05703 | 18. Grade or Level  06 | 19. Step or Rate  05 | 20. Salary/Award  $11.85 | 21. Pay Basis  PH |
|---|---|---|---|---|---|---|---|---|---|---|---|

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization  220920  A/OPR/FMSS/GS  Domestic Fleet Mgmt & Operations Branch |
|---|---|

### Employee Data

| Veterans Preference  1 | 1—None  2—5 Point | 3—10 Point/Disability  4—10 Point/Compensable | 5—10 Point/Other  6—10 Point/Compensable/30% | 24. Tenure  1 | 0—None  1—Permanent | 2—Conditional  3—Indefinite | 25. Agency Use  21 | 26. Veterans Preference for RIF  YES  XX NO |
|---|---|---|---|---|---|---|---|---|
| 27. FEGLI  B | Waived | | | 28. Annuitant Indicator  9 | | | | 29. Pay Rate Determinant  0 |
| 30. Retirement Plan  1 | | 31. Service Comp. Date (Leave)  05-19-77 | | 32. Work Schedule  F | F—Full-time  P—Part-time | I—Intermittent  G—PT Seasonal  Q—PT Seasonal | J—INT Seasonal  H—FT On Call  R—PT On Call | 33. Part-Time Hours  Per Biweekly Pay Period |

### Position Data

| 34. Position Occupied  1 | 1—Competitive Service  2—Excepted Service | 3—SES General  4—SES Career Reserved | 35. FLSA Category  N | E—Exempt  N—Nonexempt | 36. Appropriation Code  4519.0-8640 | | 37. Bargaining Unit Status  7777 |
|---|---|---|---|---|---|---|---|
| 38. Duty Station Code  110010001 | | | 39. Duty Station (City—County—State or Overseas Location)  Washington, DC | | | | |
| 40. Agency Data  DOG  08/91 | 41. WGI DUE  CCC | 42. | 43. | 44.  FPL - WG-06 | | |
| 45. Educational Level | 46. Year Degree Attained | 47. Academic Discipline | 48. Functional Class | 49. Citizenship  1—USA  8—Other | 50. Vietnam Era Vet  V—Yes  N—No | 51. Supervisory Status |

| PART C—Reviews and Approval | (Not to be used by requesting office.) | | | | |
|---|---|---|---|---|---|
| A. Office/Function | Initials/Signature | Date | D. Office/Function | Initials/Signature | Date |
| PER/CSP | | | E. | | |
| PER/CSP | | | | | |
| PER/EX/IM | | | F. | | |

Approval: I certify that the information entered on this form is accurate and that the proposed action is in compliance with statutory and regulatory requirements.

| Signature | Approval Date |
|---|---|

CONTINUED ON REVERSE SIDE

52-118

Editions Prior To 4/5" Are Unusable After 9/30/88  NSN 7540-01-316-0046

Exhibit I 12



United States Department of State

*Washington, D.C. 20520*

AUG   9 1991

Mr. Steven Hewitt
1258 Cronin Drive
Woodbridge, Virginia 22191

Dear Mr. Hewitt:

The Bureau of Administration is offering you the full-time
permanent position of Motor Vehicle Operator at the WG-6
step 5 level with a per annum salary of $24,730.95.  This
position is located in the General Services Division, Office
of Facilities Management and Support Services.

In accordance with medical documentation pertaining to your
injury, you are currently disabled from performing certain
types of work involving lifting, bending and twisting.  The
enclosed position description identifies work assignments as
well as the physical effort required.

The position of Motor Vehicle Operator is within the
physical limitations outlined by your physician, Dr. Stuart
Davidson.  The office will allow you to stop driving
intermittently and to do stretching exercises for your back
as specified by Dr. Davidson.

Please sign the appropriate line at the bottom of this
letter and return to this office by August 22, 1991.  If you
have any further questions, please contact Joanne Nelligan
of my staff on 202-647-6481.

Sincerely,

*Joseph H. McGuire*

Joseph H. McGuire, Chief
Personnel Management Division
Bureau of Administration

Enclosure:
  Position Description

_Steven G. Hewitt_                         _8/27/91_
I accept your offer of employment              Date


_____                    _____
I decline your offer of employment             Date

Exhibit 4 #12

Standard Form 50-B
Rev. 8/88
U.S. Office of Personnel Management
FPM Chapter 296

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name *(Last, First, Middle)* | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | WG | | 06 | 05 | $11.85 | PH |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | GENERAL SERVICES DIVISION |

## EMPLOYEE DATA

| 23. Veteran Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1 - None   3 -10-Point/Disability   5 -10-Point/Other   2 - 5-Point   4 -10-Point/Compensable   6 -10-Point/Compensable/30% | 0 - None   2 - Conditional   1 - Permanent   3 - Indefinite | | YES   NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| CIVIL SERVICE | 05-19-77 | F - Full-time   I - Intermittent   J - INT Seasonal   P - Part-time   G - FT Seasonal   H - FT On-Call   Q - PT Seasonal   R - PT On-Call | |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 - Competitive Service   3 - SES General   2 - Excepted Service   4 - SES Career Reserved | E - Exempt   N - Nonexempt | | 7777 |

| 38. Duty Station Code | 39. Duty Station *(City - County - State or Overseas Location)* |
|---|---|

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|

45. Remarks

3/24.75

10/17/86    8/26/91

ACTION PROCESSED BY (PERSONNEL) 11:22

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| | DIRECTOR OF PERSONNEL |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date |
|---|---|---|

| TURN OVER FOR IMPORTANT INFORMATION | 1 - Employee Copy - Keep for Future Reference | Editions Prior To 4/87 Are Unusable After 9/30/88   NSN 7540-01-249-1911 |
|---|---|---|
| 5 - PART   50-314 | | |

Exhibit # 12

# POSITION DESCRIPTION *(Please Read Instructions on Back)*

B-502

| | | 3 Service | 4 Employing Office Location | 5 Duty Station | 6 CSC Certification |
|---|---|---|---|---|---|
| Reconstruction New | | Dept X Field | WASHINGTON, D. C. | WASHINGTON, D. C. | |
| Redescription | Other | | 7 Fair Labor Standards Act | 8 Employment Financial Disclosure Required | Subject to IA Act |
| Evaluation *(Show any positions replaced)* | | | Exempt X Nonexempt | Yes X No | Yes No |

In lieu of M-327, WG-5703-6

| 10 Position Status | 11 Position | 12 Sensitivity | 13 Competitive Level |
|---|---|---|---|
| X Competitive | Supervisory X | Critical X | 5703.00 |
| Excepted *(Specify)* | Managerial | Noncritical | 14 Agency Use |
| | X Neither | Noncritical X Nonsensitive | sc: 9910 |

| 15 Classified/Graded by | Official Title of Position | Pay Plan | Occupational Code | Grade | Initials | Date |
|---|---|---|---|---|---|---|
| a. U.S. Civil Service Commission | | | | | | |
| b. Department, Agency, or Establishment | Motor Vehicle Operator | WG | 5703 | 06 | SML | 12/10/80 |
| c. Bureau | MOTOR VEHICLE OPERATOR | WG | 5703 | 6 | SA | |
| d. Field Office | | | | | | |
| e. Recommended by Supervisor or Initiating Office | MOTOR VEHICLE OPERATOR | WG | 5703 | 6 | JM | 5/29/ |

16 Organizational Title of Position *(if different from official title)*

17 Name of Employee *(if vacant, specify)*

| 18 Department, Agency, or Establishment | c. Third Subdivision  OFFICE OF FACILITIES MANAGEMENT |
|---|---|
| DEPARTMENT OF STATE | & ADMINISTRATIVE SERVICES |
| a. First Subdivision | d. Fourth Subdivision |
| BUREAU OF ADMINISTRATION | GENERAL SERVICES DIVISION |
| b. Second Subdivision  OFFICE OF THE DEPUTY ASSISTANT | e. Fifth Subdivision |
| SECRETARY FOR OPERATIONS | MOTOR TRANSPORT BRANCH |

19 Employee Review. This is an accurate description of the major duties and responsibilities of my position

Signature of Employee *(optional)*

Supervisory Certification. I certify that this is an accurate statement of the major duties and responsibilities of this position and its organizational relationships, and that the position is necessary to carry out Government functions for which I am responsible. This certification is made with the knowledge that this information is to be used for statutory purposes relating to appointment and payment of public funds, and that false or misleading statements may constitute violations of such statutes or their implementing regulations.

| a. Typed Name and Title of Immediate Supervisor | b. Typed Name and Title of Higher-Level Supervisor or Manager *(optional)* |
|---|---|
| JAMES E. THOMPSON | PHYLLIS A. BUCSKO |
| MOTOR TRANSPORT SPECIALIST | CHIEF, A/EX/FMD |
| Signature     Date 18-26-1980 | Signature *Phyllis A. Bucsko*     Date 8/29/80 |

20 Classification/Grading Certification. I certify that this position has been classified/graded as required by Title 5, U.S. Code, in conformance with standards published by the Civil Service Commission or, if no published standards apply directly, consistently with the most applicable published standards.

Typed Name and Title of Official Taking Action

J. E. Melton, Director, PER/PPM

Signature     for   Date 12/16/80

| 22 Standards Used in Classifying/Grading Position |
|---|
| WG-5703, Nov. 1968 |

Information for Employees. The standards and information on their application are available in the personnel office. The classification of the position may be reviewed and corrected by the agency or the Civil Service Commission. Information on classification/job grading appeals, and complaints on exemption from FLSA, is available from the personnel office or the Commission.

| 23 Position Review | Initials | Date | Initials | Date | Initials | Date | Initials | Date | Initials | Date |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Employee *(optional)* | | | | | | | | | | |
| b. Supervisor | | | | | | | | | | |
| c. Classifier | | | | | | | | | | |

24 Remarks

Description of Major Duties and Responsibilities *(see attached)*

5008-105

☆ GPO : 1977 O - 241-530 (3051)

Optional Form 8 (Rev 8-77)
U.S. Civil Service Commission, FPM Chapter 295

Exhibit #12

MOTOR VEHICLE OPERATOR
WG-5703-6

INTRODUCTION

This position is located in the Motor Transport Branch, General Services Division.  The incumbent is assigned to service in a Motor Pool.

DUTIES

Operates sedans and trucks (sedan/deliveries, panels and vans) ranging in size from one-half to one and one-half tons, as required.

Transports passengers which include top-ranking officials in the Department, Cabinet members, Ambassadors, members of Congress and Department employees, involved in the conduct of official government business.

Operates a two-way radio performed in a manner to remain alert while driving in traffic.

As required, delivers classified messages and documents from the Department to the White House, Congress and other government agencies.

Serves as substitute driver for any one of seven principal chauffeurs, transporting Under Secretaries of State, Ambassadors-at-large, and foreign dignitaries.

Selects choice of routes based on the size and limitations of the vehicle and laws restricting the use of some roads.

Makes independent judgements concerning loading and unloading vehicles, cargo clearances, turning radius, and weights and balance of both vehicles and cargo.

Transports mail, equipment and/or supplies making regularly scheduled delivery trips to airports, other government agencies and embassies.  Signs for classified mail and items of value and obtains receipts for their delivery and receives cash from the imprest fund cashier and purchases items from various vendors for government use, as directed..

Loads and unloads trucks, operating hydraulic lift gates and assures that cargo is evenly distributed.

Processes vehicles through the D. C. Department of Motor Vehicle inspection.

Exhib.4 #12

Maintains vehicles as follows:  inspects assigned vehicle to assure that it is received in excellent condition, free of scratches, dents, etc., and immediately reports any such findings to the supervisor; cleans the vehicle as often as necessary; inspects vehicle for mechanical defects and reports them as they occur; checks for sufficient gas, oil, water, tire pressure, battery level, etc.; performs minor repairs, as required (changing flat tires, etc.); and maintains daily vehicle reports.

Applies energy efficiency driving techniques.

SKILL AND KNOWLEDGE

-- Knowledge of the operation of Two-way radios and mobile telephones.

-- Knowledge of the Metropolitan and outlying areas, including the location of various government office buildings, etc.

-- Knowledge of traffic regulations and parking restrictions.

-- Knowledge of the operation of the various automotive equipment in the Motor Pool.

-- Must possess a valid State and U.S. Government operator's permit.

-- Must be able to recognize the Department's Principals and certain other government officials.

-- Knowledge and skill of energy efficiency driving requirements.

RESPONSIBILITY AND SUPERVISION

The incumbent is under the general supervision of the Branch Chief and the immediate supervision of the Motor Transport Specialist, who makes assignments and gives instructions. When incumbent serves as chauffeur to the Principals, he/she receives specific instructions from the assigned Principal or his/her office. When operating mail trucks and performing those duties involved, the OC mail supervisor makes assignments, giving specific instructions and spot-checks for promptness and accuracy of mail delivery.

GUIDELINES

Procedures are administratively established for vehicle maintenance and checklists are issued and reviewed daily.  Priorities are pre-established.  The incumbent however, uses judgement in expediting assignments and/or deliveries to avoid undue delay.  Mail distribution points and delivery schedules are pre-established and are updated frequently with changes in organizations and location.

Exhibit #12

COMPLEXITY

The incumbent assumes primary responsibility for the effective and
efficient chauffeuring of the particular top-ranking Department
official assigned, other passengers which include foreign dignitaries,
cabinet members, members of Congress, Ambassadors, etc. Exceptional
dependability, tact, judgement and an outstanding degree of
knowledge, skill and ability in the performance of these duties
are prerequisites.

SCOPE AND EFFECT

Safe driving practices, dependability and reliability in the
performance of duties are essential in the Branch, and for the
safety of the passengers.

PERSONAL CONTACTS

Contacts are with co-workers, department offices, top-ranking
officials of the Department, other government agencies and foreign
dignitaries, embassy employees and various vehicle service and
repair facilities.

PURPOSE OF CONTACTS

To exchange documents, official material, repair, etc. for delivery
or safekeeping to conduct government business.

PHYSICAL EFFORT

Reaching, bending, turning and moving hands, arms, feet and legs to
load and unload trucks and operate hydraulic lift gates. Handling
and delivery of classified mail, luggage, baggage and packages
require lifting of various weights up to 50 pounds or more. Driving
various distances in the vehicle assigned.

WORKING CONDITIONS

Incumbent is required to work outside and is occasionally exposed to
inclement weather conditions while loading and unloading vehicles.
He/she drives in all types of traffic and weather and is exposed
to the possibility of serious accidents.

Exhibit #12

**United States Department of State**

*Washington, D.C.  20520*

September 3, 1991

Mr. Stuart Glassman
District Director
Office of Workers' Compensation Programs
1100 L. St. N.W., Rm. 9404
U.S. Department of Labor
Washington, D.C.  20211

Dear Mr. Glassman,

Please be advised that Mr. Steven Hewitt, A25-294698, reported back to duty at the Department of State on August 27, 1991. Enclosed for your records is a copy of Mr. Hewitt's acceptance of our job offer.

Under Title 5, U.S.C. 8115, Mr. Hewitt is still entitled to Loss of Wage Earning Capacity (LWEC) as his previous salary as Elevator Mechanic paid him at a rate of WG-11/5, $31,388. His current salary as Motor Vehicle Operator is $24,730.95. Please adjust Mr. Hewitt's compensation to reflect LWEC payments only.

If you have any questions, or need further information please contact Ms. Anita Brown, of my staff, on 703-516-1664. Thank you for your cooperation in this matter.

Sincerely,

Sheldon Yuspeh
Program Manager
Workers' Compensation Program
Office of Employee Relations

Exhibit # 13

United States Department of State

*Washington, D.C. 20520*

**OCT 2 4 1991**

**MEMORANDUM**

TO:        PER/ER/CSD/CS – Mr. Robert Russum

FROM:     A/EX/PMD – Joseph H. McGuire

SUBJECT:  Request for Removal of Steven A. Hewitt

The Bureau of Administration requests the removal of
Mr. Steven A. Hewitt from our roles, for non-disciplinary
reasons.  Mr. Hewitt occupies position number M-00502-00 Motor
Vehicle Operator in the Fleet Management Office, Office of
Facilities Management and Support Services.  Mr. Hewitt was
injured on the job in 1986, and was subsequently awarded a
claim under the Federal Employees Compensation Act.  He was
carried in leave without pay status from October 17, 1986 until
August 26, 1991.  Approval of the claim provided Mr. Hewitt
with all the rights and privileges provided to injured
employees under the Federal Employees Compensation Act.

Due to his injury Mr. Hewitt was not able to return to his
previous Elevator Mechanic position.  Mr. Hewitt reluctantly
accepted the Motor Vehicle Operator position offered and was
cleared by the Department of Labor to return to duty on August
27, 1991.  On September 16, 1991 he informed his supervisor
that he would not be able to work due the pain he is still
experiencing from the injury sustained in October 1986.
Mr. Hewitt provided medical documentation and requested that he
be placed on leave without pay from September 16, 1991 until
October 28, 1991 when he would be reevaluated by his physician
for fitness for duty.

It is apparent that Mr. Hewitt's availability for regular and
reliable attendance at work is unlikely.  Given the need to
fill the Motor Vehicle position with someone who is able and
available to work, it is requested that appropriate steps be
taken to remove Mr. Hewitt from the Bureau of Administration's
rolls.

Exhibit # 14

- 2 -

I have discussed this case with Sheldon Yuspeh, the Chief of
the Employment/Disability Programs Division who concurs with
this course of action.

Your immediate attention to this action would be greatly
appreciated.


cc: A/OPR/FMSS/GS/FMO - J. Silva


Clearance:  PER/ER/EPD - S. Yuspeh/*$*

Exhibit #14

United States Department of State

*Washington, D.C. 20520*

NOV 18 1991

Mr. Steven A. Hewitt
1258 Cronin Drive
Woodbridge, VA 22191

Dear Mr. Hewitt:

This is to inform you that the Department of State proposes to remove you from your employment as a Motor Vehicle Operator, WG-6, in the Bureau of Administration, not earlier than thirty (30) calendar days from the date you receive this notice.  This action is being taken for non-disciplinary reasons in order to promote the efficiency of the service in accordance with Chapter 752, Title 5, of the Code of Federal Regulations.

<u>Reason:</u>  Your physical inability to perform the duties of your positions.

<u>Specification:</u>

On October 16, 1986, you sustained a non-surgical back injury while employed as an elevator mechanic in the Bureau of Administration (enclosure 1-2).  You were placed in a leave without pay status from October 17, 1986 to August 27, 1991 (enclosure 3).  During this time you were placed on the long-term compensation rolls of the Department of Labor.  While on leave without pay for 4 1/2 years, you were retrained as an electronic technician and graduated from TESST Electronics and Computer Institute on October 11, 1990 (enclosure 4).

In a letter to Dr. Stuart Davidson, dated June 17, 1991, Ms. Debbie Moreau, Rehabilitation Supervisor, inquired as to your ability to perform the duties of a motor vehicle operator (enclosure 5).  It was noted that while the driving job would not utilize your electronic skills, it was the only physically appropriate job currently available.  Consequently, the Bureau of Administration offered you a full-time permanent position of Motor Vehicle Operator within the physical limitations outlined by Dr. Davidson (enclosure 6).

You returned to work on August 27, 1991, as a Motor Vehicle Operator (enclosures 7-8).  On September 16, 1991, you provided A/EX with medical certification indicating that you were totally incapacitated and unable to perform the duties of your position (enclosure 9).

The Department can not continue to maintain you in a LWOP status and without any indication that you will be able to return to work and physically perform the duties of your position.  We regret having to take this action.  However, it

Exhibit # 15

- 2 -

is necessary for the Bureau of Administration to have someone perform the duties of your position if you are unable to do so. On October 24, 1991, your Executive Office referred the matter to this office for appropriate administrative action (enclosure 10).

You should continue to receive applicable benefits from the Office of Worker's Compensation Programs (OWCP), regardless of my proposal to remove you from your employment with the Department of State. However, you may file for Disability Retirement under the Civil Service Retirement System. Any questions you have regarding retirement should be addressed to Mr. Daniel Webber, Chief, Retirement Division, Room 1251, Main State, Telephone (202) 647-9315. Should you decide to pursue disability retirement under the Civil Service system, you must do so within one year from the date of your separation from the Department. If the disability retirement is approved, you may not simultaneously receive payments from both the Civil Service Retirement System and from OWCP.

The material relied upon to support the reason for this proposal is enclosed. If there is anything in this notice or about the proposed removal that you do not understand or wish explained, you may contact Mr. Robert E. Russum, Chief, Conduct, Suitability, and Discipline Division, on (703) 516-1671. You may answer the notice personally and/or in writing to me and you may submit affidavits in support of your answer. Your written response should be addressed to the Department of State, Office of Employee Relations, PER/ER, 2201 C Street, N.W., Washington, D.C. 20520. You will be allowed ten (10) calendar days fromthe date on which you receive this notice to submit your written and/or personal answer. Should you wish to answer personally, I will hear the response in my office at a time to be determined upon receipt of your request. My telephone number is (703) 516-1657, and I am located in room 431, 1701 N. Fort Meyer Drive, Rosslyn, Virginia (SA-6).

You may be represented by an attorney or other representative whose designation would not creat a conflict-of-interest or conflict-of-position as prohibited by Federal regulations. As soon as possible after your answer is received or after completion of the ten (10) day period, if your do not answer, you will be issued a written decision on this proposal.

Sincerely,

George F. Haas
Director,
Office of Employee Relations

Exhibit #15

- 3 -

Enclosures:
1.  Supervisor's Report of Accident dated October 17, 1986.
2.  CA-1 dated October 17, 1986.
3.  Notification of Personnel Action (LWOP) effective October 17, 1986.
4.  Letter from TESST dated December 11, 1990.
5.  Letter from Ms. Moreau to Dr. Davidson dated June 17, 1991.
6.  Letter from Mr. McGuire to Mr. Hewitt dated August 9, 1991.
7.  Notification of Personnel Action (RTD) effective August 27, 1991.
8.  Letter from Mr. Yuspeh to Mr. Glasman dated September 3, 1991.
9.  Medical Certifications dated September 30 and October 9, 1991.
10. Memo dated October 24, 1991, from Mr. McGuire to Mr. Russum.

Exhibit #15

DEPT. OF LABOR/OWCP
1100 L ST., NW ROOM 9404
WASHINGTON, DC

## HEALTH INSURANCE CLAIM FORM

FORM APPROVED
OMB NO. 0938-0008

(CHECK APPLICABLE PROGRAM BLOCK BELOW)

| MEDICARE (MEDICARE NO) | MEDICAID (MEDICAID NO) | CHAMPUS (SPONSOR'S SSN) | CHAMPVA (VA FILE NO) | FECA BLACK LUNG (SSN) | X | OTHER (CERTIFICATE SSN) |
|---|---|---|---|---|---|---|

## PATIENT AND INSURED (SUBSCRIBER) INFORMATION

| 1. PATIENT'S NAME (LAST NAME, FIRST NAME, MIDDLE INITIAL) | 2. PATIENT'S DATE OF BIRTH | 3. INSURED'S NAME (LAST NAME, FIRST NAME, MIDDLE INITIAL) |
|---|---|---|
| STEVEN A HEWITT | 07 \| 02 \| 55 | US DEPARTMENT OF LABOR |

| 4. PATIENT'S ADDRESS (STREET, CITY, STATE, ZIP CODE) | 5. PATIENT'S SEX | 6. INSURED'S ID NO. (FOR PROGRAM CHECKED ABOVE, INCLUDE ALL LETTERS) |
|---|---|---|
| 1258 CRONIN DR WOODBRIDGE, VA 22191 | MALE [X]  FEMALE [ ] | |

| | 7. PATIENT'S RELATIONSHIP TO INSURED | 8. INSURED'S GROUP NO. (OR GROUP NAME OR FECA CLAIM NO) |
|---|---|---|
| PATIENT SSN: | SELF [X]  SPOUSE [ ]  CHILD [ ]  OTHER [ ] | EMP: DEPT OF STATE |

| 9. OTHER HEALTH INSURANCE COVERAGE (ENTER NAME OR POLICYHOLDER AND PLAN NAME AND ADDRESS AND POLICY OR MEDICAL ASSISTANCE NUMBER) | 10. WAS CONDITION RELATED TO | INSURED IS EMPLOYED AND COVERED BY EMPLOYER HEALTH PLAN |
|---|---|---|
| | A. PATIENT'S EMPLOYMENT  YES [ ]  NO [ ] | ATTN: WORK COMP. DEPT. 1100 L STREET,NW #9404 WASHINGTON, DC 20211 |
| | | TELEPHONE NO. |
| | B. ACCIDENT  AUTO [ ]  OTHER [X] | 11a. CHAMPUS SPONSOR'S |
| | | STATUS  ACTIVE DUTY [ ]  DECEASED [ ]  BRANCH OF SERVICE  RETIRED [ ] |

| 12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE (READ BACK BEFORE SIGNING) | 13. I AUTHORIZE PAYMENT OF MEDICAL BENEFITS TO UNDERSIGNED PHYSICIAN OR SUPPLIER FOR SERVICE DESCRIBED BELOW |
|---|---|
| I AUTHORIZE THE RELEASE OF ANY MEDICAL INFORMATION NECESSARY TO PROCESS THIS CLAIM. I ALSO REQUEST PAYMENT OF GOVERNMENT BENEFITS EITHER TO MYSELF OR TO THE PARTY WHO ACCEPTS ASSIGNMENT BELOW. SIGNED SIGNATURE ON FILE   DATE 09/07/83 | SIGNATURE ON FILE  SIGNED (INSURED OR AUTHORIZED PERSON) |

## PHYSICIAN OR SUPPLIER INFORMATION

| 14. DATE OF: 10/16/86 | ILLNESS (FIRST SYMPTOM) OR INJURY (ACCIDENT) OR PREGNANCY (LMP) | 15. DATE FIRST CONSULTED YOU FOR THIS CONDITION 10/20/86 | 16. IF PATIENT HAS HAD SAME OR SIMILAR ILLNESS OR INJURY, GIVE DATES 10/16/86 | 16a. IF EMERGENCY CHECK HERE |
|---|---|---|---|---|

| 17. DATE PATIENT ABLE TO RETURN TO WORK | 18. DATES OF TOTAL DISABILITY  FROM   THROUGH | DATES OF PARTIAL DISABILITY  FROM   THROUGH |
|---|---|---|

| 19. NAME OF REFERRING PHYSICIAN OR OTHER SOURCE (e.g., PUBLIC HEALTH AGENCY) REDDING, RICHARD J. | 20. FOR SERVICES RELATED TO HOSPITALIZATION GIVE HOSPITALIZATION DATES  ADMITTED   DISCHARGED |
|---|---|

| 21. NAME & ADDRESS OF FACILITY WHERE SERVICES RENDERED (IF OTHER THAN HOME OR OFFICE) | 22. WAS LABORATORY WORK PERFORMED OUTSIDE YOUR OFFICE?  YES [ ]  NO [X]   CHARGES |
|---|---|

23. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY. RELATE DIAGNOSIS TO PROCEDURE IN COLUMN D BY REFERENCE NUMBERS 1, 2, 3, ETC. OR DX CODE

1. 722.10   HNP LUMBAR
2.
3.
4.

| B. EPSDT | YES [ ] | NO [ ] |
|---|---|---|
| FAMILY PLANNING | YES [ ] | NO [ ] |

PRIOR AUTHORIZATION NO.

| 24. DATE OF SERVICE FROM | TO | B. PLACE OF SERVICE | C. PROCEDURE CODE (IDENTIFY) | FULLY DESCRIBE PROCEDURES, MEDICAL SERVICES OR SUPPLIES FURNISHED FOR EACH DATE GIVEN (EXPLAIN UNUSUAL SERVICES OR CIRCUMSTANCES) | D. DIAGNOSIS CODE | E. CHARGES | F. DAYS OR UNITS | G. TOS | H. LEAVE BLANK |
|---|---|---|---|---|---|---|---|---|---|
| 091988 | 091988 | 3 | 90060 | OFFICE VISIT, RE-EXAM, COMP W/REPORT | 1 | 50.00 | 1 | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

| 25. SIGNATURE OF PHYSICIAN OR SUPPLIER (INCLUDING DEGREE(S) OR CREDENTIALS) (I CERTIFY THAT THE STATEMENTS ON THE REVERSE APPLY TO THIS BILL AND ARE MADE A PART THEREOF) STUART LANE DAVIDSON, M.D.   09/22/88 | 26. ACCEPT ASSIGNMENT (GOVERNMENT CLAIMS ONLY) (SEE BACK)  YES [ ]  NO [X] | 27. TOTAL CHARGE 50.00 | 28. AMOUNT PAID | 29. BALANCE DUE 50.00 |
|---|---|---|---|---|
| | 30. YOUR SOCIAL SECURITY NO. 018443578 | 31. PHYSICIAN'S SUPPLIERS OR GROUP NAME, ADDRESS, ZIP CODE AND TELEPHONE NO.  MOUNT VERNON ORTHOPEDIC ASSOC 8101 HINSON FARM ROAD 301 ALEXANDRIA, VA 22306 | | |

| 32. YOUR PATIENT ACCOUNT NO. 3807 | 33. YOUR EMPLOYER ID NO. 541061024 | ID NO. |
|---|---|---|

* PLACE OF SERVICE AND TYPE OF SERVICE (T.O.S.) CODES ON BACK
REMARKS

APPROVED BY AMA COUNCIL ON MEDICAL SERVICE 6/83

FORM HCFA-1500 (1-84) FORM OWCP-1500
FORM CHAMPUS-501 (1-84) FORM RRB-1500
FORM AMA OP-503

Exhibit # 16



# THE NORTHERN VIRGINIA CENTER FOR MAGNETIC RESONANCE IMAGING
5856 Leesburg Pike • Bailey's Crossroads, VA 22041

PATIENT_____
     last           first     MI

DATE OF
BIRTH:_____ AGE _____ SEX: m  f
    mo- day- year

_____ ___S ___M ___W ___D
   social security no.          marital status

_____
address           street          Apt. #

_____
city              state     zip

PHONE: _____ _____
        home           work

REFERRING
PHYSICIAN _____
      please give full name

PRIMARY
PHYSICIAN _____

WHAT PART ARE WE TO SCAN TODAY? _____

PLEASE DESCRIBE YOUR SYMPTOMS RELATING TO THIS MRI:

_____

WHEN DID THIS CONDITION BEGIN? _____
If your doctor gave you a prescription (written order), please give it to the receptionist so we can review it prior to your scan. Thank you.

## FOR OFFICE USE ONLY

DATE OF EXAM (S) _____

WP   H   MD   OD _____

_____ Outpatient
_____ Inpatient Admit Date: _____
_____ ALEX   _____ ARL   _____ NVDH
_____ NOH   _____ DOM   _____ P.W.
_____ HMO   _____ CC   _____ GWUHP _____ P

| PROCEDURE | CODE | CHARGE |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

_____ Cash      Charge(s) 250.00
_____ Check      Amt. Paid 0
_____ Charge Card    Bal Due 250.00

MAKE CHECKS PAYABLE TO:
NORTHERN VIRGINIA IMAGING ASSOCIATES
   5856 LEESBURG PIKE
   BAILEY'S CROSSROADS, VA 22041
   (703) 931-1177
   (TAX ID 54-1379182)

## INSURANCE INFORMATION/PAYMENT METHODS

**PERSON RESPONSIBLE FOR PAYMENT/POLICY HOLDER'S RELATIONSHIP TO PATIENT:**

SELF ____ SPOUSE ____ PARENT ____ GUARDIAN ____ OTHER:_____

Name: _____ Phone: (_____) _____

Employer: _____

Address: _____

**PRIMARY INSURANCE:** POLICY HOLDER _____

      CARRIER NAME: _____

      POLICY # _____ GROUP # _____
      Carrier's
      Address: _____

**SECOND INSURANCE:** POLICY HOLDER _____

      CARRIER NAME: _____

      POLICY # _____ GROUP # _____
      Carrier's
      Address: _____ Exhibit #16

**WORKERS' COMPENSATION- CLAIM #** _____    DOI _____



United States Department of State

*Washington, D.C. 20520*

December 2, 1991

Mr. Steven A. Hewitt
1258 Cronin Drive
Woodbridge, VA  22191

Dear Mr. Hewitt:

Mr. Haas' notice dated November 18, 1991, informed you of a proposal to remove you for non-disciplinary reasons from employment with the Department as a Motor Vehicle Operator, WG-6, in the Bureau of Administration.  This notice provided you ten (10) calendar days from the date of your receipt of the notice to respond to the reason contained therein.  You did not respond.

I have reviewed the available evidence.  I find that the reason and specification contained in Mr. Haas' notice of November 18, 1991, are fully supported by the evidence and warrant your removal to promote the efficiency of the service.  Therefore, it is my decision that you be removed, effective Tuesday, December 31, 1991.

You will continue to receive all applicable benefits from the Office of Workers' Compensation Programs (OWCP), regardless of my decision to remove you from your employment with the Department of State.  However, you may file for Disability Retirement under the Civil Service Retirement System.  Any questions you have regarding retirement should be addressed to Mr. Daniel Webber, Chief, Retirement Division, Room 1251, Main State, telephone (202) 647-9315.  Should you decide to pursue disability retirement under the Civil Service Retirement System, you must do so within one year from the date of your separation from the Department.  If the disability retirement is approved, you may not simultaneously receive payments from both the Civil Service Retirement System and OWCP.

You may appeal this action to the Merit Systems Protection Board no later than twenty (20) calendar days after the effective date of the removal action.  An appeal to the Merit Systems Protection Board should be addressed to:  Chief Appeals Officer, Washington Regional Office; Suite 1109, 5203 Leesburg Pike; Falls Church, Virginia 22041.  A copy of the Board's appeal form is enclosed for your information should you elect to file such an appeal.

Sincerely,

Kenneth Hunter
Deputy Assistant Secretary
  for Personnel

Enclosure:
  MSPB Appeal Form.

Exhibit #17

ADA information    10:00 Am to 6 PM
800 - 514 - 0301

The executive branch continues
to be covered by title V(5)
of the Rehabilitation Act of 1973

Equal Employment OPPortonity Cowisso
Questions — 800 669 - 4000

Presidents Committee on Employment
of People with Disabilities
202 376 - 6200

US Department of Justice
Civil Rights Division
Disabilities Rights
Section PO Box 66738
Washington DC. 20035 - 6738

Exhibit #18

U.S.  EEOC
1801 L. Street NW
Washington Dc  20507

EXECUTIVE ORDER  13217

Title II  of the ADA

Pursuant to 28 CFR □ 35.172
Compliance  28 CFR ☐ 35.173
Title I  29 CFR Part 1630.2(o)
S. Rep. No. 101-116, 101 Cong 1st Sess
129-130 (1989)

Exhibit # 18

202  275-7377

Sec      501
EEOC  →  202 663-4900

~~Deidre Davis~~
202  647-9294
          ↓
Tom Williams

---

OSC        Special      ~~202 247-3377~~
Office  of  ~~General~~  Council
    Vermont  Ave.
Goto  OPM  Office
      202  653-2253  ←
or→Rehab    Center

OSC      Office  of  Special  Council
         1730  M  Street
         NW  WASH  DC.
         202  653-2253

Exhibit # 10

202  663 - 4599

Office of Federal Operations

Attorney  Bismark  Myrick

---

E.EO  State  Dept.
   Office for  Civil Rights  Div.
   202 - 647 - 9294
   202 - 647 - 9295

10/4/06

Jacquline  Canton

10/17/06 Talked with Gloria Cunningham   case sent to →

Sheliq Shelia  Clemons   301-464-2171

Nov.
~~Oct.~~
Leaving 24th   1 800  688 - 9889
   Fed  info.

talked with 10/10/06
Gloria Cunningham

Exhibit # 18

**U.S. Department of Labor**
**March 19, 1992**

Employment Standards Administration
Office of Workers' Compensation Programs
Washington, D.C. 20210

File Number:

### A25-294698

Steven A. Hewitt
1258 Cronin Drive
Woodbridge, Virginia  22191

Dear Mr. Hewitt:

I am writing in reference to your compensation claim filed with
this Office.

On August 27, 1991, you returned to work with the US Department of
State as a Motor Vehicle Operator.  The position was found to be
within the physical limitations outlined by your physician Dr.
Stuart Davidson.  You stopped working in this acceptable position
on September 16, 1991.  You must provide your detailed reason(s)
as to why you stopped working in the position offered.

Your response within thirty (30) day's from the date of this letter
is needed.  Failure to respond could effect your claim with this
Office.

*Richard Gant*

Richard Gant
Claims Examiner


CC: File

---

A25-294698

TELEPHONE: (703) 765-6321

**MOUNT VERNON**
**ORTHOPEDIC ASSOCIATES, LTD.**
8101 HINSON FARM ROAD
SUITE 301
ALEXANDRIA, VIRGINIA 22306

NAME _Steven Hewitt_

ADDRESS _____ DATE _2/18/92_

℞ To whom it may concern.
Mr. Hewitt stopped working
in the position as a Motor Vehicle
Operator because the activity
severely aggravated his symptoms.
He stopped working at
my recommendation after
a review of his activity
at this position.

Voluntary formulary permitted          Dispense as written

*Exhibit # 19*

# FEHB
**Federal Employees
Health Benefits Program**

## Notice of Change in Health Benefits Enrollment

### Part A - Identifying Information

| 1. Name *(Last, first, middle initial)* | 2. Date of birth | 3. Social Security Number |
|---|---|---|
| Hewitt, Steven A. | 07-02-55 | 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 |

| 4. Address *(including ZIP Code)* | 5. Payroll Office Number | 6. Enrollment Code Number |
|---|---|---|
| 1258 Cronin Drive<br>Woodbridge, VA 22191 | 19-00-9999 | 311 |

| | 7. SF 2811 Report No. | 8. Date this action becomes effective |
|---|---|---|
| | | 07-07-87 |

Only the item that is checked below affects your enrollment. Read that item carefully and follow any pertinent instructions. Keep this form for your records.

### Part B - Termination

[ ] Your enrollment terminates on the date in Part A, item 8, above. However, your coverage is temporarily extended for 31 days after that date.

*Important Notice:* **You have the right to convert to an individual (nongroup) contract with the carrier of your plan. You also may have the right to temporarily continue your group coverage.** See Part B - Termination on the back of this form for information about 31-day extension of coverage, conversion, and temporary continuation of coverage.

### Part C - Transfer Out

[X] This enrollment continues but is transferred to the new Payroll Office (or Retirement System) shown below. See Part C on the back of this form for more information.

U.S. Department of Labor
Office of Workers' Compensation
Programs
Washington, DC 20211

### Part D - Transfer In

[ ] The new Payroll Office (or Retirement System) shown in Part I below has accepted transfer of this enrollment and will continue it.

### Part E - Reinstatement

[ ] Your enrollment has been reinstated effective on the date in Part A, item 8, above.

### Part F - Change in Name of Enrollee

[ ] The name under which this enrollment is carried has been changed to:

| Name | Date of birth |
|---|---|
| | |

Address (including ZIP Code) if different from Part A, item 4, above.

### Part G - Change in Enrollment - Survivor Annuitant

[ ] Your enrollment has been changed from family coverage to self only. Your plan will send you a new identification card. Your new enrollment code number is shown below.
**(Note: This item is completed by Retirement Systems only.)**

**New Enrollment Code Number** ⟶

### Part H - Remarks

SF-2810 processed late due to administrative oversight.

### Part I - Date of Notice

*(Note: Instructions for Employing Offices are on the back of Copy 4 of this form.)*

| Name and address of agency *(including ZIP Code)* | |
|---|---|
| U.S. Department of State<br>A/EX/PMD, Room 3800<br>2201 C Street, N.W<br>Washington, DC 20520 | |

| Signature of authorized agency official    *Deborah H. Duckett*<br>Deborah A. Duckett, Management Analyst | Date<br>11/21/91 |
|---|---|

U.S. Office of Personnel Management
FPM Supplement 890-1
NSN 7540-01-232-1234          2810-102          Copy 1 - To Enrollee

Standard Form 2810
Revised January 1990
Previous editions are not usable

*Exhibit # 20*



**United States Department of State**

*Washington, D.C.   20520*

October 2, 1992

Mr. Steven A. Hewitt
1258 Cronin Drive
Woodbridge, Virginia

)

Dear Mr. Hewitt:

I regret the delay in returning your application for disability retirement which you forwarded to Dorothy Blacker, PER/RET and which was in turn sent to A/EX/PMD, Debbie Duckett.  Your phone call this week alerted my staff to the fact that the application had not been returned to you.

Please be advised that once you were separated from our rolls, your application for disability retirement has to be submitted directly to the Office of Personnel Management (OPM).  This application must be filed within one year following the date of separation.  Given this time restriction, I encourage to you to submit your application to OPM without delay.

If your have any questions or need further assistance, do not hesitate to call me or Patricia A. Johnson on (202) 647-8326.

Cathie P. Roberts

Personnel Management Divison
Bureau of Administration
Department of State

Exhibit # 21

File Number: 25-0294698
Employee: STEVEN A. HEWITT
CSA Number:
Date of Birth: 07/02/1955
Social Security Number: 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

I, _Steven A. Hewitt I_ , hereby elect:  (check one)

(X)  FEDERAL EMPLOYEES' COMPENSATION ACT (FECA) benefits in preference to
any benefits to which I and/or my minor children may be entitled under
either the Civil Service Retirement Act (CSRA) or the Federal Employees'
Retirement System Act (FERS), except for benefits payable by the Thrift
Savings Plan which I can receive concurrently with FECA benefits.

If my election of FECA benefits is retroactive to include a period during
which I received CSRA/FERS benefits, I understand that OWCP will withhold
from my retroactive FECA benefits an amount equal to the OPM benefits
paid, including any lump-sum payment made as part of an alternative
annuity under CSRS, or as part of the death benefit under FERS.


(_)  CIVIL SERVICE RETIREMENT SYSTEM (CSRS) or FEDERAL EMPLOYEES'
RETIREMENT SYSTEM (FERS) benefits in preference to any benefits to which I
and/or my minor children may be entitled under the Federal Employees'
Compensation Act (FECA).

The effective date of my election is: _12/12/94_ .
(Insert a date; for FECA benefits, this date may be any date forward from
the first date of the "period of entitlement" found at the top of the
accompanying letter (CA1102) to the date you sign this form.)

I understand that I am not entitled to receive FECA benefits and CSRS/FERS
benefits concurrently (except for a schedule award).

I have ( ) have not (X) received a lump-sum annuity from the Office of
Personnel Management as part of an alternative annuity under CSRS, or as
part of the death benefit under FERS.

_Steven a Hewitt_
SIGNATURE

_1258 CRONIN DR._
ADDRESS

_WoodBridge_  _VA._ _22191_          _12/26/94_
CITY           STATE  ZIP CODE        DATE

EXhibit 4 21

**U.S. Department of Labor**

Employment Standards Administration
Office of Workers' Compensation Programs
Division of Federal Employees' Compensation
Room 800
800 North Capitol Street, N.W.
Washington, D.C. 20211



CA1105-0992

File Number: 25-0294698
Employee: STEVEN A. HEWITT
CSA Number:
Date of Birth: 07/02/1955
Social Security Number: 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

I, Steven A. Hewitt II                    , hereby elect: (check one)

( ) FEDERAL EMPLOYEES' COMPENSATION ACT (FECA) benefits in preference to
any benefits to which I and/or my minor children may be entitled under
either the Civil Service Retirement Act (CSRA) or the Federal Employees'
Retirement System Act (FERS), except for benefits payable by the Thrift
Savings Plan which I can receive concurrently with FECA benefits.

If my election of FECA benefits is retroactive to include a period during
which I received CSRA/FERS benefits, I understand that OWCP will withhold
from my retroactive FECA benefits an amount equal to the OPM benefits
paid, including any lump-sum payment made as part of an alternative
annuity under CSRS, or as part of the death benefit under FERS.

(X) CIVIL SERVICE RETIREMENT SYSTEM (CSRS) or FEDERAL EMPLOYEES'
RETIREMENT SYSTEM (FERS) benefits in preference to any benefits to which I
and/or my minor children may be entitled under the Federal Employees'
Compensation Act (FECA).

The effective date of my election is: 5/1/95                    .
(Insert a date; for FECA benefits, this date may be any date forward from
the first date of the "period of entitlement" found at the top of the
accompanying letter (CA1102) to the date you sign this form.)

I understand that I am not entitled to receive FECA benefits and CSRS/FERS
benefits concurrently (except for a schedule award).

I have ( ) have not (X) received a lump-sum annuity from the Office of
Personnel Management as part of an alternative annuity under CSRS, or as
part of the death benefit under FERS.

SIGNATURE    Steven a Hewitt

ADDRESS   1258 CRONIN DR.

CITY Woodbridge    STATE VA    ZIP CODE 22191    DATE 3/6/95

*Working for America's Workforce*

Exhibit #21

**U.S. Department of Labor**

Employment Standards Administration
Office of Workers' Compensation Programs
Division of Federal Employees' Compensation
Room 800
800 North Capitol Street, N.W.
Washington, D.C. 20211

May 4, 1995

File Number:

File Number: 25-0294698
Employee: STEVEN A. HEWITT
CSA Number:
Date of Birth: 07/02/1955
Social Security Number: 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
Effective Date of Election: 05/01/1995

OFFICE OF PERSONNEL MANAGEMENT
EMPLOYEE SERVICE RECORDS CTR
P.O. BOX 45
BOYERS, PA.   16017

Dear Sir or Madam:

Steven Hewitt has elected to receive benefits provided by the U.S. Civil Service
Retirement Act in lieu of compensation benefits. A copy of the election form is
enclosed for your file.  Please take action as indicated below:

1.   Commence monthly annuity payments.

Sincerely,

LORNA SYED
Claims Examiner

STEVEN  A. HEWITT
1258 CRONIN DRIVE
WOODBRIDGE, VA.   22191

US DEPARTMENT OF STATE
CTP: ANITA A BROWN
PER/ER/EPD ROOM 431 SA6
WASHINGTON DC 20522

*Working for America's Workforce*

CA1107-1083

Exhibit H 21

STEVEN, HEWITT
PROGRESS REPORT                                    6/23/94
U. S. Department of Labor/OWCP
800 N. Capitol Street, N.W., Room 800
Washington, D.C.  20211

The patient is seen back in follow-up. He is still having fairly extreme amounts of discomfort from his episode of misstepping for which he was seen on 6/8/94. It was almost severe enough to require hospitalization but he basically stayed in bed for seven days and now is beginning to get up and walk around although he is using a cane. What

is worrisome about this is in addition to his back and usual left leg pain, he is also experiencing right leg pain and now he is standing with a sciatic scoliosis. He has a markedly positive straight leg raising and I think that he may have caused some further worsening of his degenerative disc disease in the lower lumbar spine.   The patient basically has been considered disabled all of this time and his disability continues. He is 100 percent disabled.  He may, if his severe symptoms persist, be recommended to repeat the MRI scan and if it does show some worsening of the condition, we may give some strong consideration to proceeding with a discectomy. For now he wishes to continue to be treated conservatively. We will allow him to continue with relative rest, increase activities as symptoms allow and pain medication as needed. He has in the past been

allowed to be considered for four to six hours of work per day if he meets the restrictions according to the work restriction evaluation form OWCP-5 but these are fairly severe restrictions and I would doubt whether any sedentary position could be found for him at this time which would allow him to do the work activities without exacerbating his symptoms. For now he remains in this disabled state and I will see him back in follow-up in four weeks time, earlier if his symptoms worsen.  SLD:kbd

AUG 0 8 1994

EXhibit # 22



**United States**
# Office of
**Personnel Management**    Washington, D.C.  20415-0001

CSA 3 401 201

Steven A. Hewitt, I
1258 Cronin Drive
Woodbridge, VA  22191

Dear Mr. Hewitt:

This is in reply to your letter dated December 26, 1996, requesting reconsideration of the initial decision concerning an overpayment of annuity.

A review of our records shows that the issues involved, including an overpayment, have been resolved.  No further collection action will be taken with respect to this debt and your records have been so noted.

Therefore, the matter of your request is moot and no further consideration need be given. This is the final decision of the Office of Personnel Management.  If you have any questions regarding your case, please call me at, 202-606-0574.

Sincerely,

Joseph E. Miller, Jr.
Benefits Specialist
Disability, Reconsideration and Appeals Division

Exhibit # 23

To: Office of Personal Management    !2/26/96

It is with much distress that I am having this letter typed for your review today. On November 11, 1996. I received a letter from the OPM informing me that my Health Benefits enrollment would change. This was done at my request because I had noticed an error on the part of OPM which was in effect not taking the proper amount out of my annuity for my Health Benefits for the enrollment code of 312 which I have always been covered under since the birth of my son. This error was made back on May 2, 1995. when I was turned over to the OPM rolls to receive my annuity. Through the years my son and I have always been covered under the 312 plan. I called GEHA and verified that indeed we were under the Family plan 312 and that this error was on the part of OPM. That is when I called OPM to alert them of this error and to make the proper adjustment of withdraw. I was told that I probably would not be held accountable for the mistake since the error was not on my part.

That is why I am sending you this letter today. Enclosed is a copy of the letter that I received on November 11,1996 informing me that I will have to pay back the overpayment. I am asking you to please reconsider this action, because if this is done my son who is five years old, and I will surely loose our home and will have to move out because of the deduction from my annuity in (4) payments of $231.43. I will not be able to survive on this lowering of my annuity. I am asking you to please grant me a waiver of this $925.75 amount and that this burden be lifted from my shoulders.

I am the only one my son has left to support him after his mother left us when he was only two and a half years old. We have struggled to make it for a very long time now coping with my disability and surviving on what we have. In my life I have always tried to do the right thing and I believe that I did the right thing by informing you of this mistake by being honest, and I pray that you will grant my request of a waiver in this matter so that my son and I will not be put out because of my inability of being able to pay the rent.

Please help me in this matter.

Sincerely,

Steven A Hewitt    Case # CSA34012010
1258 Cronin Dr.
Woodbridge Va. 22191

Exhibit # 23

# CERTIFICATE OF SERVICE

I, Steven A. Hewitt, Plaintiff in case No. <u>07-1097 RWR</u> do hereby certify that on this <u>5th</u> day of November, 2007 that a copy of this foregoing Complaint's Motion in Opposition to Dismiss or, in the Alternative, For Summary Judgement, Motion for Court Appointed Counsel, Motion for leave to Motion Pleadings, Affidavit of Statement of Truth, has been sent to the Defendant via U.S. Postal Pre-paid, by Certified/Registered, Return Receipt to the Assistant U.S. Attorney Oliver W. McDaniel, Civil Division, 555 Fourth Street, N.W. Washington, D.C. 20530.

PH 202-616-0739

Date: <u>11/5/07</u>                    Respectfully,

Steven A. Hewitt

*Steven a. Hewitt*

P.O. Box 401
Cobb Island, MD. 20625
301-259-2032

# AFFIDAVIT STATEMENT OF FACTS AND CAUSE OF ACTION IN TRUTH BY STEVEN A. HEWITT

I, Steven A. Hewitt, the Plaintiff in case No. <u>07-1097 RWR</u>, do hereby being of sound mind, declare that all of the foregoing statements are the whole truth to the best of my knowledge. I understand that any false statements are punishable under the penalty of law as perjury and I swear under oath that all the evidence, official documents, notations, written statements, and all copy's are identified as true as is stipulated for this on going Judicial Preceding, in this complete presentation before the U.S. District Court of the District of Columbia. So help me God...

Steven A. Hewitt,

P.O. Box 401

Cobb Island, MD. 20625

301-259-2032

Alice Marie Pearson

Witnessed by:

Duly Sworn Before:

Notary:

SUBSCRIBED AND SWORN TO BEFORE ME
THIS 5 DAY OF NOV 2007,
BY K B Colby
KEVIN B COLBURN
Cala Exp. 5/11