# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Steven A. Hewitt,
13270 Main Avenue,
P.O. Box 401,
Cobb Island, MD 20625,
301-259-2032,
**COMPLAINANT**

VS.    :   CIVIL ACTION NO. <u>07-1097 RWR</u>

Condoleezza Rice,
　Secretary,
Department of State,
2201 C Street N.W.
Washington, DC 20520
**DEFENDANT**

## PLAINTIFF'S RESPONSE TO THE DEFENDANT'S REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGEMENT, AND A MOTION TO INCLUDE A SUPPLEMENTAL AFFIDAVIT

**Comes now,** the Plaintiff in the abovementioned Civil Action No. with the Honorable Judge Richard W. Roberts presiding. The Plaintiff takes issue with what counsel for the Defense for the Department of State (hereinafter referred to as the Department) has stated in their Reply Memorandum, claiming that there is no genuine issue of material fact and that judgement should be in favor for the Defendant, and that the Defendant is entitled to judgement as a matter of Law. The Defendant asserts that the Plaintiff's claims are flawed both procedurally and substantively.

RECEIVED
FEB - 4 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## **POINTS IN DISPUTE**

(1). The US Attorney on page 1 in his Reply has made a totally unfounded claim that the Plaintiff is not a qualified individual with a disability.

- The Plaintiff has 25 years of Medical evidence that proves unequivocally that the Plaintiff has a life altering disability. The Plaintiff's Doctor Stuart Davidson, has stated that he will produce documentation in any form that the court requires, to include testimony in person before the judicial body. See attached Supplemental Affidavits to be labeled Exhibits #25 & #26 & Tape recording Exhibit #27 for further detail.

(2). The US Attorney on page 2 claims that the Plaintiff is dissatisfied with the terms of the disability retirement that the Plaintiff chose.

- After being terminated due to his disability, that is clearly defined in Exhibit #2, the plaintiff tried to get work in the private sector. Many applications presented and interviews held to get a job in the area that he was trained for in Computer Technologies. In every interview conducted, I was required to give an explanation of why I was fired from the Federal Government after having so many years of Federal Service. Not one interviewer seemed to understand the reasoning for my being fired. One interviewer made a comment, that in order for a Federal Civil Servant with the years of my Tenure to be fired, I must have committed some kind of Federal Offense. After every interview I was getting very discouraged because I had to tell the truth about why I was fired. It was a humiliating experience that was starting to take a toll on me after being rejected by so many people for jobs that I was very well qualified for.

Page 2

- On my last interview for a Computer Electronics job, the interviewer actually called in his supervisor and made me tell him why I was fired, I told him why and then went on to explain that it was always my understanding that you cannot sue the government. I told him that in 1981 under the Reagan Administration the Air Traffic Controllers were fired so I figured that the Government can fire whom ever they wanted at anytime. He made a remark to me, and he stated that it was always his understanding that it practically took an act of Congress to fire a Federal Employee and laughed and walked out of the interview room. The interviewer said, that he was sorry but there must be more to my being fired that I am not telling them. I left the building having never been so humiliated in my life. What the Department had done to me was nothing short of being Criminal, because they had ruined me for life in the work force in every area for which I was trained, to include Elevators my life long career. The conduct of the Department destroyed my ability to rebuild my reputation as a qualified and dedicated employee. This is nothing less than a **DERIVATIVE TORT** because of the insult added to my injury that was now a matter of my permanent employment history that no one believed. I then realized that the Degradation, Humiliation, Disgrace and the Dishonor that was imposed upon me, had injured me for life7 I did not attempt to apply for another job and was forced to file for disability retirement because of my record of employment. I have not held a job for 16 years as a result of the Departments illegal, immoral, unfair, and unethical actions against me for no reason. I did nothing wrong to deserve to be fired.

Page 3

(3) The US Attorney has stated on page 2, that the Plaintiff has submitted as an exhibit of certification from the Plaintiff's physician establishing that the Plaintiff was not able to perform the duties of the position. Then goes on to state that my application for Disability retirement also supports this conclusion.

- Under exhibit #8, it shows that I was taking 10/650 Percodan for pain relief and 10 mg's of Valium for muscle spasms. No person under any State law permits anyone to drive in any capacity, who is under the influence of Narcotics, or is allowed to drive any type of vehicle under these conditions. This job would hardly be considered a *Reasonable Accommodation*. As stated before in my Complaint, I never applied for the driving job, I was threatened into taking this job that if I did not I would be downgraded to a WG-6 through OWCP and that, would be the pay I would receive. This was a violation under the:

  **29 CFR § 1630.12(b)** Retaliation and coercion.

  (b) *Coercion, interference or intimidation.* It is unlawful to coerce, intimidate, threaten, harass or interfere with any individual in the exercise or enjoyment of, or because that individual aided or encouraged any other individual in the exercise of, any right granted or protected by this part.

  The reason that my doctor took me out of this shuttle bus driving position, was because I was endangering not only my life, but the passengers lives, that I was transporting while being on these very strong Narcotics Drugs.

- As for the Plaintiff's applying for disability retirement. One does not apply for disability retirement and then get approved unless he is a <u>Qualified Disabled Individual</u>. The US Attorney is not a doctor and has no expertise in evaluating as to whether the Plaintiff has a Qualified Disability or being an individual with a disability. I would argue that the Plaintiff has more than substantively proven that he has a valid claim with 25 years of Medical Evaluations and Documentation explicitly defining my Disability and my current condition.

(4)   On page 2 the US Attorney has made reference to the Plaintiff's *post hoc* attempt to justify his late-life decision to advance his claim and states that my claim is old and stale.

?   **POST HOC ERGO PROPTER HOC**— Lat: after this, therefore because of this; a maxim setting forth the false logic that because one event occurs after another event, it was caused by the prior event.

- This defines exactly what has happened to the Plaintiff and is the reason why this needs to be addressed before a trier of the facts, (a jury).

- (1)   The Plaintiff was never given *<u>Reasonable Accommodation</u>* in his life long employment as an elevator mechanic adjustor as is outlined under **§ 1630.4 Discrimination Prohibited**.

(b) <u>Hiring</u>, upgrading, promotion, award of tenure, <u>demotion</u>, <u>transfer</u>, layoff, <u>termination</u>, <u>right of return from layoff, and rehiring;</u>

Page 5

(c) <u>Rates of pay or any other form of compensation and changes in compensation</u>;

(d) <u>Job assignments</u>, <u>job classifications</u>, organizational structures, <u>position descriptions</u>, <u>lines of progression</u>, and <u>seniority lists</u>;

The term *Discrimination* includes, but is not limited to, the acts described in §§ 1630.5 through §§ 1630.13 of this part.

- (2) The Plaintiff was threatened into taking this Shuttle Bus Driving Job that endangered both his life and the lives of anyone he was transporting along the I-95 corridor.
- (3) The Plaintiff being fired due of his Disability.
- (4) The Plaintiff's employment record utterly destroyed by the actions taken against him as a permanent record of his Employment History.
- (5) The Plaintiff being forced to retire after not being afforded the privilege of gaining essential employment to maintain his home and support his only child in his custody.
- (6) The Plaintiff being forced to sell his home after nineteen years of ownership because of his disability income that was not sufficient enough to obtain any quality of life and still pay the bills.
- (7) The Plaintiff being forced to file for Federal Bankruptcy Protection after having an outstanding credit score of 850, having never been late on any loan, credit card, house mortgage, etc, etc, etc.

Page 6

- (9) The Plaintiff having been degraded to the point of having to rent a 10X10 room for himself and his now 17 year old son to share.

The Plaintiff would boldly claim that, the Non-Compliance with the Code of Federal Regulations by the Department of State and the Degrading of the Plaintiff's Civil Rights is **PROOF BEYOND REASONABLE DOUBT** that all of these events happened because of the Departments negligence in simply making *Reasonable Accommodation* for the Plaintiff in his Elevator Mechanic Adjustor Job as was required by the FCR.

(5) On page 9 of the Defendants Motion to Dismiss, he claims that I contacted Dorothy Blacker of the Retirement Division

- (1) This may be true, but I had gotten Ms. Blacker's name from the OPM office, from Kathy Parrot of the Office of Personnel It makes no sense that I would be contacting the Retirement Division when I had just graduated from computer school with outstanding grades of a 3.65 GPA and I would be contacting the Retirement Division to retire.

- (2) Secondly I did as Ms Blacker advised me and contacted Congressman James Moran's Office to file a Grievance like I was told to do. When Congressman Moran's office contacted the Department, that in and of itself should have triggered a conflict that needed to be addressed but no one contacted me. I was told by Congressman Moran's that they contacted the Departments EEO office and that there was nothing they could do. This was before I even took the job as a Shuttle Bus Driver.

Page 7

All of the above were violations to the Plaintiff's Civil Rights under the Code of Federal Regulations; **Title 29: Labor** <u>**PART 1630—REGULATIONS TO IMPLEMENT THE EQUAL EMPLOYMENT PROVISIONS OF THE AMERICANS WITH DISABILITIES ACT**</u> are in the Plaintiff's favor and this Honorable Court should **GRANT,** the Plaintiff's Complaint to go forward to be heard before a Jury Trial.

## UNWARRANTED DISCRIMINATION

Under <u>**TITLE 5**</u> > <u>**PART III**</u> > <u>**Subpart D**</u> > <u>**CHAPTER 55**</u> > <u>**SUBCHAPTER IX**</u> > § 5596

# § 5596. Back pay due to unjustified personnel action

(a) For the purpose of this section, "agency" means—

(1) an Executive agency;

(2) the Administrative Office of the United States Courts, the Federal Judicial Center, and the courts named by section **610** of title **28**;

(3) the Library of Congress;

(4) the Government Printing Office;

(5) the government of the District of Columbia;

(6) the Architect of the Capitol, including employees of the United States Senate Restaurants; and

(7) the United States Botanic Garden.

(b) (1) An employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee—

(A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect— (i) an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period; and

(ii) reasonable attorney fees related to the personnel action which, with respect to any decision relating to an unfair labor practice or a grievance processed under a procedure negotiated in accordance with chapter 71 of this title, or under chapter 11 of title I of the Foreign Service Act of 1980, shall be awarded in accordance with standards established under section 7701 (g) of this title; and

(B) for all purposes, is deemed to have performed service for the agency during that period, except that—

(i) annual leave restored under this paragraph which is in excess of the maximum leave accumulation permitted by law shall be credited to a separate leave account for the employee and shall be available for use by the employee within the time limits prescribed by regulations of the Office of Personnel Management, and

(ii) annual leave credited under clause (i) of this subparagraph but unused and still available to the employee under regulations prescribed by the Office shall be included in the lump-sum payment under section 5551 or 5552 (1) of this title but may not be retained to the credit of the employee under section 5552 (2) of this title.

(2) (A) An amount payable under paragraph (1)(A)(i) of this subsection shall be payable with interest. (B) Such interest—

(i) shall be computed for the period beginning on the effective date of the withdrawal or reduction involved and ending on a date not more than 30 days before the date on which payment is made;

(ii) shall be computed at the rate or rates in effect under section 6621(a)(1) of the Internal Revenue Code of 1986 during the period described in clause (i); and

(iii) shall be compounded daily.

(C) Interest under this paragraph shall be paid out of amounts available for payments under paragraph (1) of this subsection.

(3) This subsection does not apply to any reclassification action nor authorize the setting aside of an otherwise proper promotion by a selecting official from a group of properly ranked and certified candidates.

(4) The pay, allowances, or differentials granted under this section for the period for which an unjustified or unwarranted personnel action was in effect shall not exceed that authorized by the applicable law, rule, regulations, or collective bargaining agreement under which the unjustified or unwarranted personnel action is found, except that in no case may pay, allowances, or differentials be granted under this section for a period beginning more than 6 years before the date of the filing of a timely appeal or, absent such filing, the date of the administrative determination.

(5) For the purpose of this subsection, "grievance" and "collective bargaining agreement" have the meanings set forth in section 7103 of this title and (with respect to members of the Foreign Service) in sections 1101 and 1002 of the Foreign Service Act of 1980, "unfair labor practice" means an unfair labor practice described in section 7116 of this title and (with respect to members of the Foreign Service) in section 1015 of the Foreign Service Act of 1980, and "personnel action" includes the omission or failure to take an action or confer a benefit.

(c) The Office of Personnel Management shall prescribe regulations to carry out this section. However, the regulations are not applicable to the Tennessee Valley Authority and its employees, or to the agencies specified in subsection (a)(2) of this section.

## **SUPPLEMENTAL AFFIDAVIT**

On page 12 of the Defendants Motion for Dismissal he states,

    2. **Plaintiff was Not A "Qualified Person" Since He Had Been Terminated and Was Not A Job Applicant**

If the Court will take Notice of the Supplemental Affidavit attached hereto, there are three Elements that give further Merit to my Cause of Action as is indicated below.

(1) Exhibit #25 shows that I have an injury that occurred on October 12, 1083 verified by the General Services Administration on March 12. 1985.

(2) Exhibit #26 shows that a progress report dated 6/23/94 addressed to the U.S. Department of Labor/OWCP, from my doctor, states unequivocally that I am a Disabled Individual and that before I was Degraded to the position of a Shuttle Bus Driver I was approved to work for at least 4 to 6 hours a day, to which my doctor would have re-evaluated after I was assigned to the Computer position promised. It was stamped as received on Aug, 08 1994.

(3) The Plaintiff has a tape recording in his possession left on his answering machine from Ms. Clemons, stating that she had gotten a call from her case manager and that her case manager had noticed in my file that I had contacted my Congressman about getting me into a computer job and she wanted to know if this was true, and for me to call her as soon as possible so she can turn in her report. This tape is admissible as evidence because Ms. Clemons new she was being recorded.

Page 12

- The Plaintiff called her the next day and told yes I had contacted my Congressman at the recommendation of Ms. Dorothy Blacker. Ms. Clemons responded that she was going to have to go back and change her report. This tape recording seriously repudiates the Declarations made of both JACQUELINE CANTON and JAMES FORRBE as to my file being destroyed as stated.

## CONCLUSION

Wherefore, the Court should Deny the Defendants Motion for Summary Judgement and should hereby Grant the Plaintiff's Complaint of Unlawful Discrimination and Firing due to my Disability. The Defendants case has not presented one piece of evidence to back up any claims that he has made except case law, which does not give Merit to his defense in this case. Case Law is used to substantiate the Elements of the case which he has not presented anything to this Honorable Court to justify his request his for Dismissal or Summary Judgement.

I, Steven A. Hewitt, do solemnly swear all the statements hereto to be true and accurate to the best of my knowledge so help me God.

Respectfully,

Date; 2/4/08

*Steven A. Hewitt*

Steven A. Hewitt
P.O. Box 401
Cobb Island, MD 20625
301-259-2032

## **CERTIFICATE OF SERVICE**

I, Steven A Hewitt do hereby certify that, on this 4th day of February, 2008 a true copy of the foregoing Plaintiff's Complaint against the Department of State was sent via U.S. Certified Prepaid, Postal Return Receipt to the Defendant, as Follows;

OLIVER McDANIEL,

Assistant United States Attorney

Civil Division

555 Fourth Street, N.W.

Washington D.C. 20530

202-616-0739

Date; 2/4/08                     Steven A Hewitt

                                 _[signature]_

                                 P.O. Box 401

                                 Cobb Island, MD 20625

                                 301-259-2032

General Services Administration, Region 6
1500 East Bannister Road
Kansas City, MO 64131



Date : MAR 12 1985

Reply to
Attn of : Chief, National Payroll Center (6BCY)

Subject : Leave buy back

To : Mr. Steven A. Hewitt
1258 Cronin Drive
Woodbridge, VA 22191

In response to your request to buy back leave used in conjunction with your job related injury of October 12, 1983, General Services Administration has received a check in the amount of $1,095.72 from the Department of Labor, Office of Workers' Compensation. This check represented their share of the total repurchase cost of $1,745.45. Your share of the cost is $649.73 and is due at this time. Details on the buy back are attached for your review.

Your check in the amount of $649.73 made payable to General Services Administration should be mailed to the National Payroll Center, P. O. Box 277, Kansas City, MO 64141. You may also repay this amount through bi-weekly payroll deductions should this be your preference, however, leave will not be recredited until the entire amount has been repaid.

Please note that any leave above the maximum carryover of 240 hours at leave year end must be forfeited and cannot be restored.

If you should have any questions, please contact Margaret Fell at FTS 926-5126.

TYREE VARNADO
Chief, National Payroll Center



Exhibit #25

STEVEN HEWITT                                    6/23/94
PROGRESS REPORT
U. S. Department of Labor/OWCP
800 N. Capitol Street, N.W., Room 800
Washington, D.C. 20211

The patient is seen back in follow-up. He is still having fairly extreme amounts of discomfort from his episode of misstepping for which he was seen on 6/8/94. It was almost severe enough to require hospitalization but he basically stayed in bed for seven days and now is beginning to get up and walk around although he is using a cane. What

is worrisome about this is in addition to his back and usual left leg pain, he is also experiencing right leg pain and now he is standing with a sciatic scoliosis. He has a markedly positive straight leg raising and I think that he may have caused some further worsening of his degenerative disc disease in the lower lumbar spine. The patient basically has been considered disabled all of this time and his disability continues. He is 100 percent disabled. He may, if his severe symptoms persist, be recommended to repeat the MRI scan and if it does show some worsening of the condition, we may give some strong consideration to proceeding with a discectomy. For now he wishes to continue to be treated conservatively. We will allow him to continue with relative rest, increase activities as symptoms allow and pain medication as needed. He has in the past been

allowed to be considered for four to six hours of work per day if he meets the restrictions according to the work restriction evaluation form OWCP-5 but these are fairly severe restrictions and I would doubt whether any sedentary position could be found for him at this time which would allow him to do the work activities without exacerbating his symptoms. For now he remains in this disabled state and I will see him back in follow-up in four weeks time, earlier if his symptoms worsen.    SLD:kbd

AUG 08 1994

EXhibit # 28